## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE and MISSISSIPPI STATE CONFERENCE OF THE NAACP <br><br> Plaintiffs, <br> v. <br><br> X.AI CORP. and MZX TECH LLC <br><br> Defendants. | Civil Case No.   3:26-cv-74-MPM-JMV |

## COMPLAINT

Plaintiffs the National Association for the Advancement of Colored People ("NAACP") and the NAACP Mississippi State Conference (collectively, the "Plaintiffs") hereby file this Complaint against Defendants xAI Corp. and MZX Tech LLC (collectively, the "Defendants") and state the following:

### I.    INTRODUCTION

1.      "Move fast and break things" is the unofficial motto of the tech industry. As the motto promises, artificial intelligence company Defendant X.AI Corp. ("xAI") and its subsidiaries broke Clean Air Act requirements that protect public health when rushing to build gas power plants for their "Colossus" data centers in the greater Memphis area.

2.      xAI even boasts on its website about the speed of construction "outpacing every estimate." Indeed, xAI and its subsidiaries have tried to outrun the Clean Air Act by repeatedly building gas power plants for these data centers—in communities in the greater Memphis area with significant Black populations—without obtaining mandatory permits.

1

3.      Failure to get a permit has serious public health consequences. Power plants like these emit significant amounts of dangerous pollutants that are harmful to human health. Accordingly, Congress specified that permits for new major pollution sources require implementation of the best available pollution controls.

4.      And yet, between August and December 2025, Defendants xAI and its wholly owned subsidiary MZX Tech LLC ("MZX Tech") installed and began operating twenty-seven polluting gas turbines (the "Colossus Gas Plant") in Southaven, Mississippi, which is in DeSoto County, without an air permit or regard for the health and safety of people living nearby.

5.      Tens of thousands of people, including members of Plaintiffs NAACP and NAACP Mississippi State Conference ("NAACP MS"), live, worship, study and work in the homes, churches, and schools that immediately surround the Colossus Gas Plant, and hundreds of thousands more live in the greater Memphis area. A much larger share of this population is Black than that of the country's population as a whole.

6.      Defendants' Colossus Gas Plant powers xAI's nearby Colossus 2 data center, which in turn powers the chatbot "Grok."

7.      The Colossus Gas Plant emits significant amounts of harmful pollutants, including nitrogen oxides ("$NO_x$") and formaldehyde, which are tied to increases in asthma, respiratory diseases, heart problems, and certain cancers in persons exposed to them. These emissions do not stop at the Mississippi state line; Tennessee residents are also exposed.

8.      Together, the twenty-seven unpermitted turbines have the potential to emit over 1,700 tons of smog-forming $NO_x$, likely making the Colossus Gas Plant the largest industrial source of $NO_x$ in the greater Memphis area.

9.      A Clean Air Act permit for a pollution source as large as the Colossus Gas Plant would require determination of the best available control technology ("BACT") to reduce emissions, and then application of those controls during the entirety of the plant's operation. Had Defendants obtained a permit, they would have been held to this standard. By simply not applying for—or receiving—a permit, xAI and MZX Tech have avoided subjecting these twenty-seven unpermitted turbines to a BACT determination.

10.      This is not the first time that, in their rush to build and power data centers in the greater Memphis area, xAI and one of its wholly owned subsidiaries have constructed and operated gas turbines without Clean Air Act permits.

11.      About a year ago, fewer than ten miles away from the Colossus Gas Plant in Northern Mississippi's Southaven, the nearby historically and majority Black community in Memphis's Boxtown neighborhood fought back against unpermitted air pollution from turbines powering xAI's Colossus 1 data center. Now xAI is planning a third data center ("Colossus 3") even closer to the Colossus Gas Plant.

12.      The NAACP and NAACP MS believe that no one is above the law, and the NAACP and NAACP MS seek declaratory and injunctive relief ordering xAI and MZX Tech to: cease operating the Colossus Gas Plant unless and until they obtain the required permits; to apply the necessary pollution controls; and to pay appropriate civil penalties for each day of violation.

13.      Absent an appropriate order from this Court, xAI and MZX Tech will continue to emit illegal air pollution as described in this Complaint, which will continue to harm members of the NAACP and NAACP MS.

## II.    JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over the Clean Air Act claims set forth in this Complaint against Defendants pursuant to 42 U.S.C. § 7604(a) and 28 U.S.C. § 1331.

15.    On February 13, 2026, in compliance with 42 U.S.C. § 7604(b) and 40 C.F.R. § 54.2, Plaintiffs provided notice of the Clean Air Act violations specified in this Complaint by sending a letter to Defendants, the State of Mississippi, and the Administrator of EPA. *See* Exhibit A, Letter from Patrick Anderson, S. Env't Law Ctr., et al., to Elon Musk, xAI, RE: Notice of Intent to Sue for Violations of the Clean Air Act at the Gas Turbines Power Plant Located at 2875 Stanton Road South, Southaven, MS, that Powers xAI's Colossus II Data Center (Feb. 13, 2026).

16.    This Court is authorized to award the requested declaratory and injunctive relief and apply any appropriate civil penalties. 42 U.S.C. § 7604 (Clean Air Act); 28 U.S.C. §§ 2201-02; and 28 U.S.C. § 1355.

17.    Venue is proper in the Northern District of Mississippi because the source of the violations alleged herein is located within this judicial district. 42 U.S.C. § 7604(c); 28 U.S.C. § 1391(b).

## III.    PARTIES

*Plaintiffs*

18.    Plaintiffs NAACP and NAACP MS are non-profit organizations with members who live, work, worship, matriculate, and/or recreate near the Colossus Gas Plant and are adversely impacted by illegal air pollution from the facility.

19.    Plaintiff NAACP MS is a subsidiary organization of the NAACP.

4

20.     NAACP MS consists of 112 units, which include branches, college chapters, and youth councils, and a revolving membership of over 12,000 members across the state, including over 140 members in DeSoto County, Mississippi.

21.     NAACP MS has been active since the 1940s and has been on the frontline of all the major battles of the civil rights movement in Mississippi since that time, conducting work aimed at securing equal rights under the law for all citizens of the state.

22.     Clean air is of paramount importance to the health and well-being of the members of NAACP MS, and it has an established history of environmental justice advocacy across Mississippi.

23.     NAACP MS is a "person" within the meaning of 42 U.S.C. §§ 7602(e) and 7604(a).

24.     Founded in 1909, Plaintiff NAACP is the nation's oldest and largest civil rights organization. It is a non-profit with units throughout the country, including state conferences, local branches, college chapters, and youth councils.

25.     Membership in a state conference, branch, or other unit constitutes membership in the national NAACP.

26.     The NAACP's principal objectives are to ensure the political, educational, social, and economic equality of all citizens; to eliminate racial prejudice; to remove all barriers of racial discrimination through democratic processes; to seek enactment and enforcement of federal, state, and local laws securing civil rights; and to inform the public of the continued adverse effects of racial discrimination.

27.     The NAACP recognizes that environmental and climate issues are civil rights issues. The NAACP's work involves fighting the disproportionate risks faced by Black and

5

frontline communities to risks from pollution exposure, including through the NAACP's Center for Environmental and Climate Justice.

28. The NAACP has members in most states, including Mississippi.

29. In addition to NAACP's Mississippi members who live near the Colossus Gas Plant, NAACP has over 2,500 members just in Shelby County, which includes Memphis and communities just across the state line from the gas turbines in Southaven.

30. Plaintiff NAACP is a "person" within the meaning of 42 U.S.C. §§ 7602(e) and 7604(a).

31. The NAACP and NAACP MS have members who breathe in pollution from the Colossus Gas Plant, and they are concerned about the effects of those unpermitted emissions on their health, the health of their families, their ability to safely spend time outdoors in their neighborhoods, and their property values.

32. Since learning about the unpermitted turbines, members have changed their behavior to avoid exposure, including by spending less time outdoors than they otherwise would and inviting friends and family with health vulnerabilities over less than they would like.

33. For example, a registered nurse who rents a home less than one mile from the turbines is a member of NAACP and the NAACP MS. She is a young Black woman, and she breathes pollutants from the turbines daily, including when she is outdoors watering plants, sitting on her patio or in her garage, and going for walks in her neighborhood. At her home, she can hear the turbines operating whether she is indoors or outside, particularly at night. She also encounters pollution from the turbines when volunteering with her church and with the NAACP in the south Memphis area, handing out care bags at local soup kitchens and engaging in door-to-door evangelism.

34. This member is concerned about how her regular exposure to pollution from the turbines will affect her body and health, increasing the risk that she will develop respiratory illnesses like asthma or lung disease. Those concerns limit her ability to enjoy her time at home and in her community the way she otherwise would. This spring, she has suffered from seasonal allergies, which she knows can be exacerbated by exposure to air pollution. She has also had to wear earplugs at night to prevent the noise from the turbines from interrupting her sleep.

35. If the Colossus Gas Plant reduced or ceased its unlawful air pollution, this member's health concerns would be reduced and she would more enjoy her time outdoors at her home and in her neighborhood, as well as when volunteering and evangelizing throughout south Memphis.

36. As another example, spouses who own a home approximately five-and-a-half miles from the turbines are also both members of NAACP and the NAACP MS. They are both Black and middle aged, and their outdoor lifestyle exposes them to pollution from the turbines on a regular basis, including when they are working in their Wi-Fi enabled outdoor gazebo, tending their garden, walking their dog in the neighborhood, and dining outside.

37. These members worry about the effects of that added exposure to pollution on their health. They are particularly concerned about how it could contribute to one spouse's respiratory issues, which have led to previous hospitalizations.

38. These members have deep roots in the south Memphis area and are concerned about the health of other family members who live near the Colossus Gas Plant, especially given the pollution that their loved ones were already exposed to from xAI's first gas-fired power plant, which operates just across the border in Shelby County, Tennessee. Their concerns are

most acute for family members uniquely vulnerable to negative health effects from pollution, like their young nieces and nephews, and one spouse's mother, who is a lifelong asthmatic.

39.     These members' concerns interfere with their ability to enjoy the outdoor spaces they have cultivated at their home and the outdoor culture that they consider to be part of life in their Southaven community. Since learning about the turbines, they have second-guessed how much time they should spend outside. They have tried to limit their exposure, including using their gazebo less often than they would have liked. They host family members less because of fear for their health. When they do have family visit, they feel compelled to stay indoors, even though their preference would be to entertain outside. Their health concerns have even made them talk about whether they should move away from the turbines' location, even though they otherwise had no intention of ever moving from their home, which has been in their family for more than 20 years.

40.     If the Colossus Gas Plant reduced or ceased its unlawful air pollution, these members' health concerns would be reduced, they would more enjoy their time outdoors at home and in their community neighborhood, and they would be more inclined to host family members at their home.

41.     Another member of the NAACP and NAACP MS lives on a three-acre lot approximately 5 miles from the turbines with his wife and daughter, when she is home from college. Currently retired, he spends most of his time working outside on his own property and the adjoining three acres his brother owns.

42.     This member, who is also Black, worries that exposure to pollution from the turbines will worsen his health by aggravating pre-existing conditions that can be exacerbated by

fumes and smoke. These concerns limit his ability to enjoy the time he spends outdoors the way he otherwise would.

43. In addition to concerns for his own health, this member is also very concerned about the health of his family, friends, and fellow community members. He is aware that many in Mississippi lack adequate healthcare, and he is extremely concerned about the health of others in his community declining because of exposure to more pollution from the turbines.

44. If the Colossus Gas Plant reduced or ceased its unlawful air pollution, this member's health concerns for himself and others would be reduced and he would more enjoy his time outdoors.

***Defendants***

45. Defendant MZX Tech is a limited liability company incorporated in the state of Wyoming and with a principal place of business in Texas.

46. MZX Tech is the owner of the property located at 2875 Stanton Road South in Southaven, Mississippi.

47. MZX Tech owns and operates the Colossus Gas Plant located at 2875 Stanton Road South in Southaven, Mississippi.

48. MZX Tech is a "person" within the meaning of 42 U.S.C. §§ 7602(e) and 7604(a).

49. MZX Tech is a wholly owned subsidiary of xAI.

50. Defendant X.AI Corporation is incorporated in the state of Nevada with a principal place of business in California, doing business as xAI.

51. On information and belief, xAI was acquired by SpaceX in the first quarter of 2026, and is now a wholly owned subsidiary of SpaceX.

9

52. xAI is an operator of the Colossus Gas Plant.

53. xAI is a "person" within the meaning of 42 U.S.C. §§ 7602(e) and 7604(a).

54. At all times relevant to the Complaint, Defendants owned and/or operated the Colossus Gas Plant.

IV.    STATUTORY FRAMEWORK

55. The Clean Air Act is a broad remedial statute that Congress enacted to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and productive capacity of its population." 42 U.S.C. § 7401(b)(1).

A.    Criteria Pollutants

56. The Clean Air Act requires the Environmental Protection Agency ("EPA") to regulate emissions of air pollutants that "cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. §§ 7408, 7409.

57. These are referred to as "criteria pollutants," and include $NO_x$, fine particulate matter ("$PM_{2.5}$"), carbon monoxide ("CO"), and ozone. 40 C.F.R. §§ 50 *et. seq.*

58. EPA sets National Ambient Air Quality Standards ("NAAQS") to limit concentrations of criteria pollutants to levels "requisite to protect the public health." 42 U.S.C. § 7409(b)(1).

59. Each state, in turn, must develop a State Implementation Plan ("SIP") setting forth how the NAAQS will be achieved and maintained within the state.

60. SIPs must be submitted to and approved by the EPA. 42 U.S.C. § 7407(a).

61. Once approved by EPA, a SIP is federally enforceable under the Clean Air Act. *See* 42 U.S.C. §§ 7413, 7604.

62. EPA has approved the Mississippi SIP. *See* 40 C.F.R. § 52.1270(c) – Table 1.

10

63. The Clean Air Act includes permitting requirements for stationary sources of criteria pollutants.

64. Sources that are subject to New Source Performance Standards ("NSPS") under Section 111, 42 U.S.C. § 7411, of the Clean Air Act are stationary sources. 42 U.S.C. § 7550(10); *see also* 40 C.F.R. § 1068.30.

65. NSPS are federally enforceable, technology-based emission standards that apply to stationary sources for controlling criteria pollutants. These standards set the floor for emissions controls on certain types of sources.

66. Stationary combustion turbines with a heat input of 10 MMBtu/hr or greater are subject to a NSPS under Section 111 of the Clean Air Act. *See* 40 C.F.R. Pt. 60, Subpart KKKK ("NSPS KKKK").

67. NSPS KKKK defines "stationary" in the context of gas combustion turbines to mean "the combustion turbine is not self-propelled or intended to be propelled while performing its function. It may, however, be mounted on a vehicle for portability." 40 C.F.R. § 60.4420.

### 1. *New Source Review and Prevention of Significant Deterioration Programs*

68. Congress amended the Clean Air Act in 1977 to create the New Source Review program.

69. The central premise of New Source Review is that no one can build or expand a major source of air pollution without getting a permit and applying the best possible pollution controls.

70. As part of the New Source Review program, the Clean Air Act requires that each SIP include a permit program to regulate the construction of any new major stationary source of air pollution. 42 U.S.C. § 7410(a)(2).

71.     The Clean Air Act and its regulations include two sets of provisions governing construction of major new sources, which, together, are referred to as New Source Review: the Prevention of Significant Deterioration ("PSD") program, which applies to areas in attainment with air quality standards (i.e., the NAAQS); and the Nonattainment New Source Review program, which applies to areas out of attainment with air quality standards. 42 U.S.C. §§ 7470-7492.

72.     The PSD program applies in this case because the Colossus Gas Plant is located in DeSoto County, Mississippi, which is designated as an area in attainment with federal air quality standards.

73.     The key purposes of the PSD program are to "protect public health and welfare," and to assure that any increase in air pollution, and a state's decision to permit it, "is made only after careful evaluation of all the consequences of such a decision and after adequate procedural opportunities for informed public participation in the decisionmaking process." 42 U.S.C. § 7470(1), (3), (5).

74.     Mississippi's SIP incorporates the federal PSD regulations at 40 C.F.R. § 52.21. 11 Pt. 2 Ch. 5 Miss. Code R. 5.2 (2024) (adopting and incorporating the Prevention of Significant Deterioration regulations, 40 C.F.R. § 52.21, as of December 27, 2023, as official regulations of Mississippi and enforceable as such).

75.     The PSD program prohibits the construction of a "major emitting facility" unless "a permit has been issued for such proposed facility." 42 U.S.C. § 7475(a)(1); 11 Pt. 2 Ch. 2 Miss. Code R. 2.1 D (2) (2013); 11 Pt. 2 Ch. 5 Miss. Code R. 5.2 (2024).

76.     A "major emitting facility," as relevant here, is any source "with the potential to emit two hundred and fifty tons per year or more of any air pollutant." 42 U.S.C. § 7479(1).

12

EPA regulations implementing the PSD program defines a "major stationary source" as one that "emits, or has the potential to emit, 250 tons per year or more of a regulated NSR pollutant." 40 C.F.R. § 51.166(b)(1)(i); *see also* 11 Pt. 2 Ch. 5 Miss. Code R. 5.2 (2024).

77. The term "regulated NSR pollutant" includes, among other things, any pollutant for which a NAAQS has been promulgated. 40 C.F.R. § 52.21(b)(50)(i).

78. $NO_x$ is a regulated NSR pollutant.

79. EPA has established a NAAQS for $NO_x$. 40 C.F.R. § 50.11.

80. The NAAQS for $NO_x$ is measured using as an indicator $NO_2$, one of the primary components of $NO_x$. 40 C.F.R. § 50.11.

81. $NO_x$ is a key precursor for ozone. 40 C.F.R. § 52.21(b)(50)(i)(B)(1).

82. EPA has established a NAAQS for ozone. 40 C.F.R.§§ 50.9; 50.10; 50.15.

83. A major source for $NO_x$ emissions is also a major source for ozone. 40 C.F.R. § 52.21(b)(1)(ii).

84. $NO_x$ is also a key precursor to fine particulate matter, or $PM_{2.5}$. 40 C.F.R. § 52.21(b)(50)(i)(B)(3).

85. EPA has established a NAAQS for $PM_{2.5}$. 40 C.F.R. § 50.18, 50.20, 50.23.

86. CO is a regulated NSR pollutant.

87. EPA has established a NAAQS for CO. 40 C.F.R. § 50.8.

88. No PSD permit may be issued unless the owner or operator of the facility can demonstrate through air modeling that its construction or operation will not cause or contribute to air pollution in excess of the NAAQS. 42 U.S.C. § 7475(a)(3); *see also* 40 C.F.R. § 51.166(k)(1).

89.     Pursuant to the Mississippi SIP, new major stationary sources in areas with concentrations of criteria pollutants in excess of the NAAQS, regardless of the area's attainment designation status, must obtain emissions offsets prior to construction. 11 Pt. 2 Ch. 2 Miss. Code R. 2.5 (D) (4) (2013).

90.     The Mississippi SIP provides that information about applications for permits to construct a new major stationary source must be made available to the public for review and comment. 11 Pt. 2 Ch. 2 Miss. Code R. 2.4 A, C (2013).

91.     PSD permits also must impose emission limits that reflect the maximum degree of reduction achievable through the use of stringent pollution controls on an ongoing basis. In attainment areas, this standard is known as BACT. 42 U.S.C. § 7475(a)(4) (prohibiting construction of a major emitting facility unless it is subject to BACT, among other requirements); *see also* 40 C.F.R. §§ 51.166(b)(12), (j)(2).

92.     The Clean Air Act defines BACT as "an emission limitation based on the maximum degree of reduction of each pollutant . . . which the permitting authority, on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs, determines is achievable for such facility." 42 U.S.C. § 7479(3).

93.     An emission limitation "limits the quantity, rate, or concentration of emissions of air pollutants on a continuous basis" during the operation of a source. 42 U.S.C. § 7602(k).

94.     After construction, a permitted facility must continuously comply with the emissions limits established as BACT.

### 2.     *Mississippi SIP Requirements for Preconstruction and Operating Permits for Stationary Sources*

95.     Pursuant to the federally-enforceable Mississippi SIP, new stationary sources of criteria pollutants—whether above or below the major source threshold of the New Source

14

Review Program—must obtain permits to construct prior to construction and operation unless specific, enumerated exemptions apply. 11 Pt. 2 Ch. 2 Miss. Code R. 2.1 D (2013).

96.     Specifically, subsection D of Rule 2.13 includes fifteen categorical exclusions for the requirement to obtain a permit to construct and operate, such as exclusions for "recreational heaters" and equipment used to prepare food for retail sale. 11 Pt. 2 Ch. 2 Miss. Code R. 2.13 D (2013).

97.     Subsection D of Rule 2.13 does not identify a categorical exclusion based on duration, i.e., for "temporary" use.

98.     Subsection D of Rule 2.13 exempts "[m]obile sources," which are regulated separately from stationary sources under the federal Clean Air Act. *See* 40 C.F.R. §§ 85.501 – 85.2401 ("Control of Air Pollution from Mobile Sources").

99.     The Clean Air Act uses the term "[m]obile sources" to refer to motor vehicles and similar sources of air pollution that operate while in motion, such as passenger cars, trucks, and motorcycles, as well as trains, airplanes, and construction equipment.

100.     "Stationary source" is defined in the Mississippi SIP as "any building, structure, facility, or installation which emits or may emit a regulated air pollutant." 11 Pt. 2 Ch. 2 Miss. Code R. 2.1 C (28) (2013).

101.     Pursuant to the Mississippi SIP, applicants for permits to construct must specify in their application the rate of air emission reasonably anticipated from operation of their proposed source. 11 Pt. 2 Ch. 2 Miss. Code R. 2.2 B (8) (2013).

102.     In the final permit to construct, the Mississippi Permit Board either approves and incorporates the applicant's stated emissions rate or sets a more stringent one based on Clean Air

15

Act requirements. In either case, the rate in the permit to construct becomes the limitation on the source's operation. 11 Pt. 2 Ch. 2 Miss. Code R. 2.2 B (10) (2013).

103. A permit applicant may only begin operations after providing a certification of construction to the Mississippi Permit Board, and it may only do so under the terms of its permit to construct until the application to operate is due. 11 Pt. 2 Ch. 2 Miss. Code R. 2.5 D (1), (4) (2013); *see also* 11 Pt. 2 Ch. 2 Miss. Code R. 2.5 D (5) (2013) (regarding applications for operational permits).

104. Eventual issuance of any permit from the Mississippi Permit Board "does not release the permittee from liability for constructing or operating air emissions equipment in violation of any applicable statute, rule or regulation of state or federal environmental authorities." 11 Miss. Admin. Code, Pt. 2, R. 2.2 B (7) (2013).

**B.      Hazardous Air Pollutants**

105. Section 112 of the Clean Air Act requires EPA to issue emissions standards for categories of stationary sources and a list of approximately 190 hazardous air pollutants (or "HAPs") determined by Congress and EPA to be particularly harmful to human health even in very limited concentrations. 42 U.S.C. § 7412.

106. For each pollutant, Section 112 requires EPA to identify the sources of—and set emissions standards for—the pollutants. 42 U.S.C. §§ 7412(a)(6), (b).

107. Formaldehyde is classified under the Clean Air Act as a HAP. 42 U.S.C. § 7412(b)(1).

108. In this part of the Clean Air Act, a "major source" is one that emits or has the potential to emit at least 10 tons per year of any single hazardous air pollutant or 25 tons per year

16

of total aggregate hazardous air pollutant emissions. 42 U.S.C. § 7412(a)(1); *see also* 40 C.F.R. § 63.2.

109.    Under Section 112 of the Clean Air Act, "no person may construct or reconstruct any major source of hazardous air pollutants unless the [EPA] Administrator (or the State) determines that the maximum achievable control technology emissions limitation . . . for new sources will be met." 42 U.S.C. § 7412(g)(2)(B); *see also* 40 C.F.R. § 63.5(b)(3)(i).

110.    Likewise, a source must submit an "application for approval of construction" prior to commencing construction of a new major source of hazardous air pollutants. 40 C.F.R. § 63.5(d)(1)(i).

111.    Sources may also satisfy the foregoing requirements by obtaining state-level preconstruction approval if it is sufficiently similar to the federal requirements. 40 C.F.R. § 63.5(f).

112.    Most major sources of HAPs are subject to EPA standards known as National Emission Standards for Hazardous Air Pollutants ("NESHAPs"). Each NESHAP is specific to a particular kind of air pollution source and establishes limits for each listed hazardous air pollutant emitted by the relevant kind of source, as well as related monitoring, recordkeeping, and reporting requirements. 42 U.S.C. § 7412(d)(1)-(3).

113.    EPA has identified stationary combustion turbines as a substantial source of hazardous air pollutants such as formaldehyde, toluene, benzene, and acetaldehyde, and it has promulgated a NESHAP—40 C.F.R. Part 63, Subpart YYYY—for these turbines. 40 C.F.R. §§ 63.6080–63.6175.

114. Subpart YYYY defines stationary combustion turbines subject to the standard as such: "[s]tationary means that the combustion turbine is not self propelled or intended to be propelled while performing its function." 40 C.F.R. § 63.6175.

115. Operators of stationary combustion turbines subject to NESHAP Subpart YYYY are required to install control equipment (typically catalytic oxidation systems) and comply with other requirements in order to reduce hazardous air pollutants, including formaldehyde.

116. Subpart YYYY requires turbines to comply with a maximum achievable control technology emission limit for formaldehyde emissions, to conduct initial and periodic emissions testing, to continuously monitor operations, to make various reports and notifications, and to undertake recordkeeping. *See* 40 C.F.R. § 63.6100; Table 1 to Subpart YYYY; *see also* 40 C.F.R. §§ 63.6110, 63.6115, 63.6125(a)–(b), 63.6145, 63.6150, 63.6155, 63.6160.

## C. Citizen Suit Enforcement Provisions

117. The Clean Air Act's citizen suit provision authorizes citizens to sue for violations of an "emission standard or limitation under this chapter." 42 U.S.C. § 7604(a)(1).

118. The statute defines "emission standard or limitation under this chapter" in part as any standard established "under any applicable State implementation plan approved by the [EPA]" and "any requirement to obtain a permit as a condition of operations." 42 U.S.C. § 7604(f)(4).

119. The statute provides that an "emission standard or limitation under this chapter" also includes an "emission limitation, standard of performance or emission standard." 42 U.S.C. § 7604(f)(1).

120. The requirement to limit emissions to levels that are achievable when utilizing Best Available Control Technology is an "emission limitation," "standard of performance," and

18

an "emission standard" which is set forth under the Clean Air Act and adopted and incorporated into the federally approved Mississippi SIP. 11 Pt. 2 Ch. 5 Miss. Code R. 5.2 (2024) (adopting and incorporating by reference federal PSD program regulations, including BACT requirements).

121. An "emission standard or limitation under this chapter" is further defined to include "any requirement under section 7411 or 7412 of this title (without regard to whether such requirement is expressed as an emission standard or otherwise)." 42 U.S.C. § 7604(f)(3). Section 7412 sets out requirements for major sources of hazardous air pollutants.

122. The Clean Air Act authorizes citizens to sue "any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under part C of subchapter I (relating to significant deterioration of air quality)." 42 U.S.C. § 7604(a)(3). This provision provides for citizen enforcement of failure to obtain a PSD permit.

123. An action under Section 304, subsection (a)(1), may proceed after a 60-day notice period, unless the EPA or State "has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order" whose violation has been alleged. 42 U.S.C. § 7604(b)(1).

124. An action under subsection (a)(3), for a claim of construction of a major emitting facility without a PSD permit may proceed immediately, without a notice period.

125. In a citizen suit, federal district courts may enforce emission standards or limitations, and apply appropriate civil penalties for each day of violation. 42 U.S.C. §§ 7604(a), 7413(b).

126. Federal regulations provide that a penalty of $124,426 per day of violation may be imposed. 42 U.S.C. § 7413(b); 40 C.F.R. § 19.4.

## V.    FACTUAL BACKGROUND

### A.    xAI and MZX Tech Construct the Colossus Gas Plant in Southaven, Mississippi

127.    The Colossus Gas Plant is located in Mississippi's DeSoto County at 2875 Stanton Road South, Southaven.

128.    MZX Tech acquired the Colossus Gas Plant property located at 2875 Stanton Road South in Southaven, Mississippi in July 2025.

129.    At all times relevant to this Complaint, MZX Tech was the owner and an operator of the Colossus Gas Plant.

130.    At all times relevant to this Complaint, xAI was an operator of the Colossus Gas Plant based on its involvement in managing, directing, or conducting operations and decision-making related to pollution for the Colossus Gas Plant.

131.    For instance, a senior employee of xAI was responsible for decision-making about environmental compliance at the Colossus Gas Plant and communicated with the state regulatory agency about operations at the Colossus Gas Plant.

132.    In July 2025, Brent Mayo, holding himself out as a representative of "XAI," informed the Mississippi Department of Environmental Quality ("MDEQ") of "our plans to build energy resources at our property in DeSoto County," using combustion turbines. Exhibit B-1, Email from Brent Mayo, xAI, to Jaricus Whitlock and Chris Wells, MISS. DEP'T OF ENV'T QUALITY, RE: Determination on Portable Gas-Fired Combustion Turbines (July 25, 2025).

133.    On July 29, 2025, MDEQ responded to Brent Mayo, addressing the agency's letter to him as Vice President of Operations of "xAI." Exhibit B-2, Letter from Jaricus Whitlock, MISS. DEP'T OF ENV'T QUALITY, to Brent Mayo, xAI, RE: Determination on Portable Gas-Fired Combustion Turbines (July 29, 2025).

20

134.    Brent Mayo is xAI's Vice President of Operations.

135.    In addition to his role(s) at xAI, Brent Mayo is also a responsible corporate officer and an authorized signatory of MZX Tech, as those terms are defined by Mississippi regulations. For example:

    a.  In accordance with the provisions of 11 Miss. Admin. Code Pt. 2, R. 2.1. C (24). and/or 11 Miss. Admin. Code Pt. 2, R. 6.1. A (26), the Chief Financial Officer for MZX Tech designated Brent Mayo as an Authorized Signatory to sign air regulatory documents.

    b.  In response to an email sent on behalf of MDEQ concerning a stormwater permit for 2875 Stanton Road South, Brent Mayo is identified as "a responsible corporate officer" of MZX Tech.

136.    Following Brent Mayo's correspondence with Jaricus Whitlock of MDEQ in July 2025, emails between consultant Trinity Consultants and MDEQ demonstrate that xAI and MZX Tech installed various types of turbines at the Colossus Gas Plant between August 1 and December 18, 2025. Exhibit C, Email Correspondence between Trinity Consultants and MDEQ.

137.    For example:

    a.  On August 18, 2025, Trinity Consultants confirmed to MDEQ that three SMT-130s were onsite. Ex. C-1.

    b.  Around that time, Trinity Consultants told MDEQ that the plan was to eventually increase to six SMT-130s and ten TM2500s. Ex. C-1.

    c.  By September 6, 2025, the plan grew to encompass seventeen total gas-fired combustion turbines: ten TM2500s and seven SMT-130s. Ex. C-2.

21

d. On September 6, 2025, Trinity Consultants represented that selective catalytic reduction ("SCR") system construction was complete on six of the seven SMT-130 units. Ex. C-2.

e. On September 10, 2025, Trinity Consultants reported that an additional turbine, an M35, would be brought onsite, increasing the total to eighteen gas-fired combustion turbines (ten TM2500s, seven SMT-130s, and one M35) with a combined total output of 400.5 megawatts ("MW"). Ex. C-3.

f. On November 5, 2025, Trinity Consultants informed MDEQ, "[a]ll Solar units are operating with SCR and oxidation catalyst. All TM2500's are operating with demin [demineralized] water." Ex. C-4.

g. On November 25, 2025, Trinity Consultants provided MDEQ, for each of the first eighteen turbines, with the first date the turbine was onsite, starting with three turbines on August 1, 2025. Ex. C-5.

h. On December 11, 2025, Trinity Consultants informed MDEQ that nine additional gas-fired combustion turbines would be brought onsite by December 18, bringing the total number turbines to twenty-seven. Ex. C-6.

i. As of December 11, 2025, Trinity Consultants represented that the first 18 gas-fired combustion turbines were operational, and that the additional nine turbines would not operate until the SMT 130s were outfitted with SCR and the TM 2500s were outfitted with water injection. Ex. C-6.

138.     As of October 31, 2025, aerial photographs confirm that there were eighteen gas-fired combustion turbines onsite.



*Figure 1. Aerial Photo of Colossus Gas Plant (Oct. 31, 2025; Steve Jones/SouthWings), Ex. D-12.*

139.     Thermal imaging captured on October 31, 2025 demonstrates that at least nine of those eighteen gas-fired combustion turbines were operating at the time, including five of the SMT-130 turbines (circular smoke stacks) and four of the TM2500 turbines (rectangular smoke stacks).



*Figure 2. Thermal Camera Image of Colossus Gas Plant (Oct. 31, 2025; Steve Jones/SouthWings), Ex. D-13.*

140.    As of January 3, 2026, there were at least twenty-seven gas-fired combustion turbines onsite. Exhibit D, Aerial Images of Colossus Gas Plant.

141.    Satellite photographs also have confirmed that at least twenty-seven gas-fired combustion turbines continued to be onsite on February 9, 2026, March 3, 2026, and April 7, 2026. Exhibits D-9 through D-11.



*Figure 3. Satellite image of xAI's Colossus Gas Plant (lower left quadrant), the Colossus 2 data center (top center building with "MACROHARD" on its roof), and the Colossus 3 data center (center, south adjacent to Colossus 2) (Apr. 7, 2026), Ex. D-11.*



*Figure 4. Close-up satellite image of Colossus Gas Plant showing twenty-seven gas-fired combustion turbines (Apr. 7, 2026), Ex. D-11.*

142. Upon information and belief, the xAI Colossus Gas Plant consists of the following turbines:

      a. fourteen SMT-130s;

      b. one M35;

      c. four Gen 6 TM 2500s;

      d. five Gen 7 TM 2500s;

      e. three Gen 8 TM 2500s.

143. These turbines have a combined generating capacity of at least 495 MW. *See* Ex. C-6. Specifically:

    a. each of the SMT-130s has a generating capacity of 13 MW;

    b. the M35 has a generating capacity of 25 MW;

    c. each of the Gen 6 TM 2500s has a generating capacity of 22 MW;

    d. each of the Gen 7 TM 2500s has a generating capacity of 25 MW;

    e. each of the Gen 8 TM 2500s has a generating capacity of 25 MW.

144. Each of these twenty-seven gas-fired combustion turbines has a heat input greater than 10 MMBtu/h.

145. Selective catalytic reduction, which has the potential to control for smog-forming pollution, is only installed on the SMT-130 turbines.

146. Selective catalytic reduction is recognizable on turbines because on a turbine, selective catalytic reduction includes a large, boxy exhaust duct and a stack that releases emissions.

147. The stacks constructed on the SMT-130s are at least the height of an approximately three-story building.

148. It takes time to install selective catalytic reduction on combustion turbines.

149. For example, as of January 8, 2026, selective catalytic reduction was not fully installed on the SMT-130 turbines that Trinity Consultants represented would be onsite as of December 18, 2025.

150. The larger TM2500 turbines and M35 turbine do not have selective catalytic reduction.

151. According to emails from Trinity Consultants to MDEQ, the TM 2500 turbines and M35 turbine have water injection systems. Ex. C-4.

152. Water injection control systems would include piping along the exterior of the turbine and parallel to fuel lines, flow meters, pumps, valves, water treatment equipment, and storage tank(s).

153. Additional construction work that has been implemented at the Colossus Gas Plant includes, but is not limited to:

    a. Laying concrete pads as support for the twenty-seven turbines;

    b. Installing selective catalytic reduction;

    c. Installing at least ten transformers between turbine rows;

    d. Installing electrical lines;

    e. Installing gas supply lines;

    f. Installing water injection lines; and

    g. Erecting two white buildings which, upon information and belief are switch houses.

154. Concrete pads are used to support turbines.

155. As compared to alternatives, such as gravel or timber mats, concrete pads are more expensive, longer term, and less prone to weather damage.

156. The extent of construction at the Colossus Gas Plant indicates that existing infrastructure will be part of the power source long term.



*Figure 5. Image of xAI's Colossus Gas Plant (March 28, 2026; Brad Zweerink/Earthjustice).*

### B.     The Colossus Gas Plant's Emissions are Harmful

157.    The emissions from the Colossus Gas Plant include $NO_x$, CO, formaldehyde, and $PM_{2.5}$.

158.    On information and belief, and using conservative estimates, collectively, these twenty-seven gas-fired combustion turbines have the potential to emit the following:

    a.   Approximately 1,700 tons of $NO_x$ per year;

    b.   Approximately 19 tons of formaldehyde per year;

    c.   Approximately 580 tons of CO per year;

    d.   Approximately 180 tons of fine particulate matter, or $PM_{2.5}$ per year.

159.    $NO_x$ reacts with other chemicals, including volatile organic compounds, in the air to form both particulate matter and ozone, and it is a primary cause of smog.

160. Ozone exposure has been linked to aggravation of lung diseases such as asthma, emphysema, and chronic bronchitis, and can increase the frequency of asthma attacks and lung infections such as making the lungs more susceptible to infection.

161. $NO_2$, a significant component of the $NO_x$ emitted by turbines, can irritate airways in the human respiratory system and can lead, in the short term, to respiratory symptoms (such as coughing, wheezing or difficulty breathing), hospital admissions and visits to emergency rooms.

162. Longer exposures to elevated concentrations of $NO_2$ may contribute to the development of asthma and potentially increase susceptibility to respiratory infections.

163. Particulate matter is a form of air pollution that consists of microscopic solids and liquids.

164. Particulate matter exposure through inhalation can impact human lungs and hearts.

165. Particulate matter exposure has been linked to premature death in people with heart or lung disease; nonfatal heart attacks; aggravated asthma; decreased lung function; and increased respiratory symptoms, such as irritation of the airways, coughing, or difficulty breathing.

166. Carbon monoxide can adversely affect health, participate in atmospheric chemical reactions that result in formation of ozone air pollution, and contribute to climate change.

167. Formaldehyde can cause irritation to human respiratory tracts and eyes and has been identified as a human carcinogen by the Department of Health and Human Services.

**C.    The Colossus Gas Plant's Harmful Emissions Pollute Communities with Existing Air Pollution Problems.**

168. The Colossus Gas Plant in Southaven, Mississippi, is one of the largest industrial sources of $NO_x$ in the Memphis Metropolitan Statistical Area, an area that includes and

surrounds Memphis and all of Mississippi's DeSoto County, spans eleven counties and portions of three states, and is home to more than one million residents.

169. Approximately 39 percent of the population in Southaven is Black, and more than 50 percent of the population of the neighboring town of Horn Lake, Mississippi is Black.

170. South Memphis, which is part of the airshed impacted by the Colossus Gas Plant, is also home to multiple historically Black communities, including Boxtown.

171. Children, pregnant people, seniors, people with pre-existing health conditions, Black people and other people of color are more vulnerable to negative health effects from air pollution.

172. The area surrounding the Colossus Gas Plant already suffers from high levels of ozone.

173. The past several years of ambient air monitoring data in DeSoto County and Memphis show that concentrations of ground-level ozone exceed the applicable federal air quality standard for ozone (the NAAQS).

174. The number of high ozone days in DeSoto County has been increasing since 2019.

175. In 2024, both DeSoto County and neighboring Shelby County, Tennessee received an "F" for their ozone pollution from the American Lung Association.

176. Memphis has been deemed an asthma capital of the nation by the Asthma and Allergy Foundation of America due to high rates of emergency room visits and deaths from asthma.

177. Within just three miles of the Colossus Gas Plant, children attend school at nine different elementary, middle, and high schools.

178. At least ten congregations attend church within the same three-mile radius from the facility.

### D. Defendants Did Not Seek—and Do Not Have—Any Clean Air Act Permit for the Colossus Gas Plant.

179. The twenty-seven turbines at the Colossus Gas Plant are stationary sources not subject to any exception under the Clean Air Act or the Mississippi SIP.

180. Neither xAI nor MZX Tech applied for a PSD permit pursuant to the Clean Air Act prior to installing and beginning to operate the twenty-seven unpermitted gas-fired combustion turbines at the Stanton Road location.

181. Neither xAI nor MZX Tech applied for a Permit to Construct pursuant to the Mississippi SIP prior to installing and beginning to operate the twenty-seven unpermitted gas-fired combustion turbines at the Stanton Road location.

182. Neither xAI nor MZX Tech applied for a Clean Air Act Title V or State Permit to Operate the twenty-seven unpermitted gas-fired combustion turbines at the Stanton Road location.

183. If applied to the turbines that lack selective catalytic reduction, BACT-level controls could reduce $NO_x$ emissions, for example, by approximately 90 percent or more.

184. On information and belief, neither xAI nor MZX Tech has obtained emissions offsets to reduce the Colossus Gas Plant's emissions.

185. Instead, in a July 25, 2025 email to MDEQ, xAI told the state agency that, in its view, installing and operating the turbines without permits was "allowed." Exhibit B-1.

186. In a July 29, 2025 letter response to xAI, MDEQ agreed that the turbines were "exempt" from permitting requirements based on two criteria: (1) that the turbines remain "'mobile' as each will remain affixed to a portable unit (i.e., a flatbed trailer)" and (2) that the

32

turbines at 2875 Stanton Road South, Southaven, Mississippi remain on-site for less than twelve months. Exhibit B-2.

187. MDEQ lacks authority to exempt stationary sources that are otherwise subject to permitting requirements under the federal Clean Air Act and Mississippi SIP.

188. The Clean Air Act treats turbines affixed to portable units as stationary sources and not as mobile sources. *See, e.g.*, 40 C.F.R. § 60.4420.

189. The Mississippi SIP has no exception to permitting requirements for sources that operate on-site for less than twelve months.

190. Because the gas turbines at issue in this case are stationary sources of air pollution not subject to any exclusions under Rule 2.13 of the Mississippi SIP, their construction and operation without permitting by the Mississippi Permit Board violated the Clean Air Act.

191. Neither the EPA Administrator nor the State is diligently prosecuting a civil action against xAI or MZX Tech for violations of emissions standards at the Colossus Gas Plant.

**E. The Colossus Gas Plant is Part of xAI's Data Center Footprint in the Memphis Area**



*Figure 6. GIS map depicting the location of and distances between the Colossus Gas Plant and the Colossus 1 data center, Colossus 2 data center, and Colossus 3 data center.*

192. There are at least three xAI-affiliated data centers in the greater Memphis area.

193. The Colossus 1 data center is located at 3231 Paul R. Lowry Road in Memphis, Tennessee, beside the historically Black community of Boxtown.

194. xAI and/or its wholly owned subsidiaries and affiliates own and operate the Colossus 1 data center.

195. CTC Property LLC, a wholly owned subsidiary of xAI, began leasing property at 3231 Paul R. Lowry Road on March 22, 2024.

34

196.    As of August 2024, sixteen gas turbines—located at 3231 Paul R. Lowry Road with a total generating capacity of approximately 105 MW and a collective potential to emit hundreds of tons of $NO_x$ per year—powered Colossus 1.

197.    Neither xAI nor CTC Property LLC applied for or received any air permits prior to constructing and beginning to operate these sixteen gas turbines.

198.    On information and belief, xAI and CTC Property LLC continued to add gas turbines to the Colossus 1 facility through March 31, 2025, at which point they had installed thirty-five turbines for a total generating capacity of 421.4 MW.

199.    Since learning about the Colossus 1 facility around 2024, neighbors and community groups in the greater Memphis area have raised concerns about the turbines' harmful emissions, as well as the lack of transparency and accountability from xAI, CTC Property LLC, and regulators.

200.    NAACP and its members, among groups such as Young, Gifted, and Green, Memphis Community Against Pollution, and Protect Our Aquifer, held and attended numerous large public meetings and town hall events, wrote hundreds of letters and public comments, and repeatedly called for action to stop the operation of the unpermitted turbines and advocated for broader reduction in harmful pollution in southwest Memphis—an area long over-burdened by industrial emitters.

201.    At one meeting attended by NAACP members, Brent Mayo said xAI would be "copying and pasting" what the company did at Colossus 1.

202.    With this comment, and despite clear community opposition, xAI indicated it would again rely on unpermitted turbines to supply power to future data centers.

35

203.    Ultimately, CTC Property LLC obtained a permit for a different configuration of gas turbines, including SMT-130s, at the Colossus 1 facility.

204.    The permit for CTC Property LLC's gas turbines at the Colossus 1 includes an emissions limit of 87 tons per year of $NO_x$.



*Figure 7. Close-up GIS map depicting the location of and distances between the Colossus Gas Plant and the Colossus 1 data center, Colossus 2 data center, and Colossus 3 data center.*

205.    xAI and/or its wholly-owned subsidiaries and affiliates own and operate the Colossus 2 data center.

206. The Colossus 2 data center is located at 5420 Tulane Road in Whitehaven, Memphis, Tennessee.

207. On information and belief, the Colossus 2 property was acquired by xAI in March 2025.

208. The Colossus 2 data center is about 1 mile away from the Colossus Gas Plant.

209. The Colossus Gas Plant supplies power to xAI's Colossus 2 data center.

210. xAI directed or managed the Colossus Gas Plant to begin providing power to Colossus 2 on a very fast timeline, which included directing the workings of the Gas Plant and the speed of acquiring and constructing the pollution-emitting turbine units.

211. After xAI and MZX Tech began constructing the Colossus Gas Plant, MZX Tech sought a permit from MDEQ for a *different* gas plant to be built at the 2875 Stanton Road South location in Southaven, Mississippi.

212. Email correspondence about the permit application between employees of the U.S. EPA and MDEQ, refers to the "rush to get this permit finalized" and a "directive from my upper management" to turn the permit application around quickly.

213. Following the rushed process, MDEQ issued MZX Tech a permit that would cover a gas plant with forty-one turbines onsite, with a 1200 MW generating capacity, and a permitted emissions limit of 423.39 tons per year of $NO_x$.

214. In contrast, the twenty-seven unpermitted turbines at the Colossus Gas Plant have a combined generating capacity of 495 MW and the potential to emit approximately 1,700 tons per year of $NO_x$.

215. None of the twenty-seven turbines at the Colossus Gas Plant are subject to the permit.

216. The permitted gas plant is comprised of entirely different makes and models of turbines.

217. xAI and/or its wholly-owned subsidiaries and affiliates own the Colossus 3 data center.

218. The Colossus 3 data center is located at 2400 Stateline Road West, Southaven, Mississippi.

219. Colossus 3 is about 0.8 miles away from the Colossus Gas Plant.

220. xAI has not publicly stated how it will provide power to the Colossus 3 data center.

## VI.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### (Construction and operation of a stationary source without a permit)

221. The preceding paragraphs are realleged and incorporated herein by reference.

222. The Colossus Gas Plant is a new stationary source of regulated air pollutants within the meaning of the Mississippi SIP. 11 Pt. 2 Ch. 2 Miss. Code R. 2.1 C (28) (2013).

223. The Colossus Gas Plant is not subject to any exemptions to stationary source permitting requirements under the Mississippi SIP or the Clean Air Act.

224. Neither xAI nor MZX Tech obtained a permit to construct prior to beginning construction of the Colossus Gas Plant on or about August 1, 2025, and they still have not obtained one for the twenty-seven gas-fired combustion turbines.

225. Neither xAI nor MZX Tech submitted a certification of construction before beginning to operate the Colossus Gas Plant on or before October 2025 and they still have not submitted one.

226. Neither xAI nor MZX Tech applied for or obtained an operating permit for the Colossus Gas Plant since beginning operations on or before October 2025.

227. xAI and MZX Tech have constructed and operated, and continue to operate, a new stationary source without a permit to construct, certification of construction, or an operating permit, in violation of the Mississippi SIP and the Clean Air Act. 11 Pt. 2 Ch. 2 Miss. Code R. 2.1 D (1)-(2), (5)-(6) (2013)

228. Unless restrained by an Order of this Court, these violations and similar violations of the Clean Air Act will continue.

229. As provided in Section 113(b) of the Clean Air Act, MZX Tech and xAI are subject to injunctive relief and civil penalties of up to $124,426 per day of violation. 42 U.S.C. § 7413(b); 40 C.F.R. § 19.4.

## SECOND CLAIM FOR RELIEF

### (Construction and Operation without a PSD Permit or BACT)

230. The preceding paragraphs are realleged and incorporated herein by reference.

231. Under the Clean Air Act, and as incorporated in the Mississippi SIP, no "major" source of criteria pollutants may be constructed without obtaining a PSD permit, making certain requisite showings about how the facility will contribute to air pollution in the area, and utilizing stringent pollution controls (BACT).

232. xAI and MZX Tech's Colossus Gas Plant is a stationary source.

233. xAI and MZX Tech's Colossus Gas Plant is a major source because it has the potential to emit $NO_x$ in an amount far greater than 250 tons per year.

234. A major source of $NO_x$ emissions is also a major source for ozone.

235. xAI and MZX Tech's Colossus Gas Plant is a major source because it has the potential to emit CO in an amount far greater than 250 tons per year.

236. The Colossus Gas Plant may also be a major source of other regulated pollutants.

237. MZX Tech owns the Colossus Gas Plant.

238. xAI and MZX Tech constructed, operated, and continue to operate their Colossus Gas Plant without a PSD Permit.

239. xAI and MZX Tech began operation of the Colossus Gas Plant without undergoing a BACT determination in contravention of the requirements of the PSD program.

240. None of the twenty-seven turbines at the Colossus Gas Plant were subject to a BACT analysis.

241. Upon information and belief, for at least thirteen of the turbines at the Colossus Gas Plant, xAI and MZX Tech failed to install and operate technology that would satisfy BACT for the control of $NO_x$ emissions in compliance with PSD regulations.

242. Upon information and belief, xAI and MZX Tech failed to install and operate BACT for the control of carbon monoxides emissions in compliance with BACT limitations at the Colossus Gas Plant.

243. None of xAI and MZX Tech's purported voluntary use of controls at the Colossus Gas Plant are equivalent to a federally enforceable requirement to operate the turbines with BACT continuously.

244. xAI and MZX Tech's construction and operation of the Colossus Gas Plant, a major emitting source, violated and continues to violate the PSD provisions and BACT requirements of the Clean Air Act and the Mississippi SIP. 42 U.S.C. § 7475(a)(1); 11 Pt. 2 Ch. 5 Miss. Code R. 5.2 (2024); 42 U.S.C. § 7475(a)(4).

40

245. Unless restrained by an Order of this Court, these violations and similar violations of the Clean Air Act will continue.

246. As provided in Section 113(b) of the Clean Air Act, xAI and MZX Tech are subject to injunctive relief and civil penalties of up to $124,426 per day of violation. 42 U.S.C. § 7413(b); 40 C.F.R. § 19.4.

### THIRD CLAIM FOR RELIEF

### (Construction and Operation of a Major Source of HAPs)

247. The preceding paragraphs are realleged and incorporated herein by reference.

248. xAI and MZX Tech's Colossus Gas Plant has the potential to emit formaldehyde, a hazardous air pollutant, in an amount greater than 10 tons per year.

249. xAI and MZX Tech's Colossus Gas Plant is therefore a major source of hazardous air pollutants, without accounting for other hazardous air pollutants that it may emit.

250. xAI and MZX Tech's Colossus Gas Plant is subject to NESHAP Subpart YYYY.

251. xAI and MZX Tech's Colossus Gas Plant has failed to comply with NESHAP Subpart YYYY, including: failing to achieve maximum achievable control technology emissions limits; failing to conduct initial and periodic emissions testing; failing to continuously monitor operations; failing to make the required reports and notifications; and failing to undertake required recordkeeping. 40 C.F.R. §§ 63.6080–63.6175.

252. None of xAI and MZX Tech's purported voluntary use of controls at the Colossus Gas Plant are equivalent to a legal requirement to operate the turbines in compliance with NESHAP Subpart YYYY.

253. xAI and MZX Tech have violated and continue to violate NESHAP Subpart YYYY.

254. Unless restrained by an Order of this Court, these violations and similar violations of the Clean Air Act will continue.

255. As provided in Section 113(b) of the Clean Air Act, xAI and MZX Tech are subject to injunctive relief and civil penalties of up to $124,426 per day of violation. 42 U.S.C. § 7413(b); 40 C.F.R. § 19.4.

## VII.   PRAYER FOR RELIEF

Plaintiffs NAACP and NAACP MS respectfully request that the Court:

a)  declare that Defendants have violated the Clean Air Act, its implementing regulations, and the Mississippi SIP;

b)  permanently enjoin Defendants from operating the Colossus Gas Plant, including operating any of the twenty-seven gas-fired combustion turbines onsite, except in accordance with the Clean Air Act and all applicable regulatory requirements;

c)  order Defendants to install and operate the best available control technology at the Colossus Gas Plant;

d)  order Defendants to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act alleged above;

e)  assess a civil penalty against Defendants of up to $124,426 per day per violation;

f)  award Plaintiffs their costs and attorneys' fees of this action, as provided by 42 U.S.C. 7604(d); and,

g)  grant such other relief as the Court deems just and proper.

Dated: April 14, 2026

Respectfully submitted,

/s/ Carroll Rhodes

Carroll Rhodes (MS Bar No. 5314)
Mississippi State Conference of the
NAACP
119 Downing St
Hazlehurst, MS 39083
crhode@bellsouth.net
Phone: 601-894-4323

Mary Rock (IL Bar No. 6332240)
*(Pro Hac Vice Forthcoming)*
Elias L. Quinn (CO Bar No. 42159)
*(Pro Hac Vice Forthcoming)*
Earthjustice
D.C. Regional Office
1250 I Street, 4th Floor
Washington, DC 20005
mrock@earthjustice.org
equinn@earthjustice.org
Phone: 202-667-4500

Lauren Godshall (LA Bar No. 31465)
*(Pro Hac Vice Forthcoming)*
Rebecca Ramirez (TX Bar No. 24126749)
*(Pro Hac Vice Forthcoming)*
Earthjustice
Gulf Regional Office
845 Texas Ave., Suite 200
Houston, TX 77002
lgodshall@earthjustice.org
rramirez@earthjustice.org
Phone: 773-828-0836

Ben Grillot (DC Bar. No. 982114)
*(Pro Hac Vice Forthcoming)*
Southern Environmental Law Center
500 New Jersey Ave., Suite 600
Washington, DC 20001
bgrillot@selc.org
Phone: 202-828-8382

Patrick Anderson (GA Bar No. 226260)
*(Pro Hac Vice Forthcoming)*
Southern Environmental Law Center
Ten 10th Street NW, Suite 1050
Atlanta, GA 30309
panderson@selc.org
Phone: 404-521-9900

Elizabeth Putfark (VA Bar No. 100358)
*(Pro Hac Vice Forthcoming)*
Southern Environmental Law Center
120 Garrett Street, Suite 400
Charlottesville, VA 22902
eputfark@selc.org
Phone: 434-977-4090

43