# ATTACHMENT 1

**11 MAC-Part 2-Chapter 2**

**MISSISSIPPI COMMISSION ON ENVIRONMENTAL QUALITY, PERMIT REGULATIONS FOR THE CONSTRUCTION AND/OR OPERATION OF AIR EMISSIONS EQUIPMENT**

**Rule 2.1      GENERAL REQUIREMENTS**

A.      Replacement of Previous Regulation.

This regulation supercedes and replaces previously adopted Title 11, Part 2, Chapter 2, "Permit Regulations for The Construction and/or Operation of Air Emissions Equipment."

B.      Title 11, Part 2, Chapter 5, "Regulations for the Prevention of Significant Deterioration of Air Quality", amended by the Commission on the date of this regulation amendment, provides in Rule 5.2. thereof for the adoption of 40 CFR 52.21 as amended and promulgated by July 1, 2004 as official Regulations of the State of Mississippi except for the exclusions and changes set forth in Title 11, Part 2, Chapter 5. Therefore, the definitions set forth in 40 CFR 52.21(b), including the definitions of "emissions unit", "major stationary source", "major modification", and "net emissions increase" as used in this Title 11, Part 2, Chapter 2 are incorporated by reference and shall have the same definition in this Regulation, except for the exclusions and changes set forth in Rules 5.2 and 5.3. of Title 11, Part 2, Chapter 5 and except for changes noted herein.

C.      Definitions

(1) "Applicable rules and regulations."  Any Commission regulation concerning and/or affecting air emissions and air quality established pursuant to State Law.

(2) "Building, structure, facility, or installation." All the pollutant-emitting activities which belong to the same industrial grouping, are located on one or more contiguous or adjacent properties, and are under the control of the same person (or persons under common control) except the activities of any vessel. Pollutant-emitting activities shall be considered as part of the same industrial grouping if they belong to the same "Major Group" (i.e., which have the same first two-digit code) as described in the Standard Industrial Classification Manual, 1972, as amended by the 1977 Supplement (U.S. Government Printing Office stock numbers 4101-0066 and 003-005-00176-0, respectively).

(3) "Commission."  The Mississippi Commission on Environmental Quality.

(4) "Concentrated animal feeding operation" (CAFO).  Any facility included within the definition of that term found at 40 CFR 122.23(b)(3).

(5) "De minimis NSR modification". Any modification in which the emissions   increase of each regulated NSR pollutant is less than three-fourths of the threshold for a major modification using the same procedures for calculating the emissions increase as the procedures of 40 CFR 52.21(a)(2)(iv)(c) through (f) for calculating a significant emissions increase; and which is not one of the following types of modifications:

(a)      a major modification;

(b)     a moderate modification;

(c)     a modification involving "netting" out of PSD;

(d)     a modification involving medical waste incineration or hazardous waste incineration;

(e)     a modification meeting the definition of "constructing or reconstructing a major source of hazardous air pollutants" in Title 11, Part 2, Chapter 8, "Air Toxics Regulations,", and 40 CFR, Part 63, Subpart B and thereby requiring a case-by-case Maximum Achievable Control Technology (MACT) determination.

(6) "DEQ."  The Mississippi Department of Environmental Quality.

(7) "EPA."  The U.S. Environmental Protection Agency.

(8) "Federal Act."  The Federal Clean Air Act as amended in 1990, and any subsequent amendments.

(9) "Fixed capital cost."  The capital needed to provide all the depreciable components.

(10) "Light commercial area."  An area zoned for commercial use, or, in the absence of any local zoning ordinances, an area predominantly used for wholesale and retail trade in goods and services.

(11) "Major Title V source."  Any major stationary source as determined in the "Air Emissions Operating Permit Regulations for the Purposes of Title V of the Federal Clean Air Act", Miss. Admin Code, Title 11, Part 2, Chapter 6.

(12) "Minor stationary source." Any stationary source that is neither a major stationary source nor a moderate stationary source.

(13) "Moderate modification."  Any modification in which the source is making enforceable emissions reductions to avoid major source requirements of Title 11, Part 2, Chapter 5, "Regulations for the Prevention of Significant Deterioration of Air Quality", or Rule 2.5.E. of these regulations (i.e., "netting" out of PSD/NSR).  These modifications are often called "synthetic minor modifications."

(14) "Moderate stationary source."  Any new stationary source which makes enforceable emissions reductions to avoid major source requirements of Commission Regulation Miss. Admin. Code, Title 11, Part 2, Chapter 5, "Regulations for the Prevention of Significant Deterioration of Air Quality" or Rule 2.5.E. of these regulations (i.e., "netting" out of PSD/NSR).

(15) "Modification."  Any physical change in or change in the method of operation of a facility which increases the actual emissions or the potential uncontrolled emissions of any air pollutant subject to regulation under the Federal Act emitted into the atmosphere by that facility or which results in the emission of any air pollutant subject to regulation under the

Federal Act into the atmosphere not previously emitted. A physical change or change in the method of operation shall not include:

> (a) routine maintenance, repair, and replacement;
>
> (b) use of an alternative fuel or raw material by reason of an order under Sections 2 (a) and (b) of the Federal Energy Supply and Environmental Coordination Act of 1974 (or any superseding legislation) or by reason of a natural gas curtailment plan pursuant to the Federal Power Act;
>
> (c) use of an alternative fuel by reason of an order or rule under Section 125 of the Federal Act;
>
> (d) use of an alternative fuel or raw material by a stationary source which:
>
> > (1) the source was capable of accommodating before January 6, 1975, unless such change would be prohibited under any federally enforceable permit condition which was established after January 6, 1975, pursuant to 40 CFR 52.21 or under regulations approved pursuant to 40 CFR Part 51 Subpart I or 40 CFR 51.166; or
> >
> > (2) the source is approved to use under any permit issued under 40 CFR 52.21 or under regulations approved pursuant to 40 CFR Part 51 Subpart I or 40 CFR 51.166;
>
> (e) an increase in the hours of operation or in the production rate unless such change would be prohibited under any federally enforceable permit condition which was established after January 6, 1975, pursuant to 40 CFR 52.21 or under regulations approved pursuant to 40 CFR Part 51 Subpart I or 40 CFR 51.166; or
>
> (f) any change in ownership of the stationary source.

(16) "Modified Permit." Any permit already effective which is altered substantively as a result of the Permit Board's determination of the need for such alteration. Alterations to correct typographical errors or to clarify requirements shall not be considered substantive changes and, therefore, are not modifications for the purposes of this definition.

(17) "NSR." New source review.

(18) "Permit Board." The Mississippi Environmental Quality Permit Board.

(19) "PSD." Prevention of Significant Deterioration.

(20) "Recreational area." Recreational area means:

> (a) a national, state, county, or city park; or

(b)      an outdoor recreational area, such as a golf course or swimming pool, owned by a city, county, state, or other public agency.

(21)    "Regulated air pollutant."  Any regulated NSR pollutant, any air pollutant subject to a standard promulgated under Section 112 or other requirements established under Section 112 of the Federal Act, and any other air pollutant for which there is a duly adopted state ambient air quality standard.

(22)    "Regulated NSR pollutant."  An air pollutant defined as a regulated NSR pollutant in 40 CFR 52.21 (b)(50).

(23)    "Residential area."  Residential area means:

(a)      a group of 20 or more single family dwelling units on contiguous property and having an average density of two or more units per acre, or

(b)      a group of 40 or more single family dwelling units on contiguous property and having an average density of one or more units per acre, or

(c)      a subdivision containing at least 20 constructed houses, in which the subdivision plat is recorded in the chancery clerk's office of the appropriate county.

(24)    "Responsible Official."  Responsible Official means as follows:

(a)      for a corporation:  a president, secretary, treasurer, or vice-president of the company or corporation in charge of a principal business function, or any other person who performs similar policy- or decision-making functions for the company or corporation, or a duly authorized representative of such person if the representative is responsible for the overall operation of one or more manufacturing, production, or operating facilities employing more than 250 persons or having gross annual sales or expenditures exceeding $25 million (in 1980 dollars), if authority to sign documents has been assigned or delegated in accordance with corporate procedures;

(b)      for a partnership or sole proprietorship: a general partner or the proprietor, respectively; or

(c)      for a municipality, state, federal, or other public agency: either a principal executive officer or ranking elected official (for the purposes of these regulations, a principal executive officer of a Federal agency includes the chief executive officer having responsibility for the overall operations of a principal geographic unit of the agency (e.g., a Regional Administrator of EPA).  A principal executive officer of a military facility includes the facility commander, chief executive officer, or any other similar person who performs similar policy or decision-making functions for the institution.

(25)    "Significant minor source."  A stationary source that is (a) not a synthetic minor source; (b) is not a major Title V source and is not otherwise required to obtain a Title V Permit to Operate; and (c) is one of the following categories of sources:

11-MAC- Part 2-2

      (a)     hot-mix asphalt plants,

      (b)     cotton gins,

      (c)     medical waste incinerators, not subject to the requirements of Rule 1.2 of Miss. Admin. Code, Title 11, Part 2, Chapter 1, "Air Emission Regulations for the Prevention, Abatement, and Control of Air Pollutants".

      (d)     rendering plants, or

      (e)     Any other new stationary source deemed by the Permit Board to be a significant minor source due to (i) the source's potential to require significant air pollution control operations in order to avoid a violation of the Mississippi Air and Water Pollution Control Law or any regulation promulgated thereunder, (ii) the source's potential to require significant compliance demonstration or testing requirements, (iii) the source's potential to cause a substantial threat to public health, welfare, or the environment, or (iv) the source's potential to cause or substantially contribute to a violation of any applicable ambient air quality standard.

(26) "State Law." The Mississippi Air and Water Pollution Control Law, specifically, Miss. Code Ann. §§ 49-17-1 through 49-17-45, and any subsequent amendments.

(27) "State Permit to Operate or State Operating Permit." A permit issued under State Law to operate air emissions equipment at a significant minor source, exclusive of Title V Permits.

(28) "Stationary source." For purposes of this regulation, any building, structure, facility, or installation which emits or may emit regulated air pollutant(s).

(29) "Synthetic minor source." Any stationary source which would otherwise constitute a major source as defined by Commission Regulation APC-S-6, "Air Emissions Operating Permit Regulations for the Purposes of Title V of the Federal Clean Air Act", except that the owner or operator of the stationary source elects for federally enforceable emissions limitations which may include permit conditions restricting hours of operation, or type or amount of material stored, combusted or processed, or establishing more stringent air pollution control efficiency requirements to lower allowable emissions for air pollutants in the State Permit to Operate below applicability thresholds for a Title V major source.

(30) "Title V." The air operating permit program mandated in Title V of the 1990 amendments to the Federal Clean Air Act, codified in 42 U.S.C. § 7661.

(31) "Title V permit." Any permit or group of permits covering a Title V source that is issued, renewed, amended, or revised pursuant to Commission Regulation APC-S-6.

(32) "Title V sources." Title V sources include the following:

(a)     any major source;

(b)     any source, including an area source, subject to a standard, limitation or other requirement under Section 111 of the Federal Act;

(c)     any source, including an area source, subject to a standard or other requirement under Section 112 of the Federal Act, except that a source is not required to obtain a permit solely because it is subject to regulations or requirements under Section 112(r) of the Federal Act;

(d)     any affected source; and

(e)     any source in a source category designated by the Administrator.

D.     Permitting Requirements.

(1)     Permit Types.  The Permit Board will issue two types of air pollution control permits, a permit to construct air emissions equipment and a State Permit to Operate such equipment.  A State Permit to Operate is required for synthetic minor sources, major Title V sources, and significant minor sources.

(2)     Unless otherwise provided by Rule 2.13 and 2.15, or other provisions of these Regulations, any new stationary source or modification of a stationary source must have a permit to construct or multi-media permit incorporating such permit before beginning construction.

(3)     All applications must be submitted on the form supplied by the Permit Board and must be signed by a responsible official.

(4)     The Permit Board may require the applicant to submit any additional information which the Permit Board deems relevant to its decision on the permit application including but not limited to ambient air quality modeling.  The Permit Board may require that all other media permits for a facility be issued simultaneously with any required air permit or may issue the air permit prior to or subsequent to other permits required by the facility.

(5)     A permit issued by the Permit Board will generally be for a specific site identified in the application.  No permit application, except one for a portable facility which will be located only temporarily at a site or sites, will be processed unless the applicant controls the real property upon which the facility is located.  The applicant may demonstrate control or the legal right to operate through ownership, lease, eminent domain, easement, license and/or contract.  For portable facilities which will be located only temporarily at a site or sites, the Permit Board may issue a statewide permit or a permit for operation in multiple areas.

(6)     It is the responsibility of the applicant/permittee to obtain all other approvals, permits, clearances, easements, agreements, etc., which may be required including, but not limited to, all required local government zoning approvals or permits.  DEQ may delay processing any permit application until the applicant provides to DEQ

11-MAC- Part 2-2

information or documentation sufficient to demonstrate any approval listed in this paragraph.

(7)     The provisions of a permit are severable.  If any provision of a permit, or the application of any provision of a permit to any circumstances, is challenged or held invalid, the validity of the remaining permit provisions and/or portions thereof or their application to other persons or sets of circumstances, shall not be affected thereby.

(8)     In the event of a conflict between any of the requirements of these regulations and/or applicable requirements of any other regulation or law, the more stringent requirements shall be applied.

(9)     A stationary source which emits or causes to be emitted matter other than through a stack or a defined outlet of an air cleaning device may be classified inadequate in regard to control equipment.  Facilities which comply with emission standards which specifically address and include fugitive emissions shall be presumed adequate provided all other Applicable Rules and Regulations are complied with.

|  | Date Submitted to EPA | Date Approved by EPA | Federal Register |
|---|---|---|---|
| Original Reg: | FEB 4, 1972 | MAY 31, 1972 | 37 FR 10875 |
| 1st Revision: | MAR 16, 1978 | FEB 07, 1979 | 44 FR 7713 |
| 2nd Revision: | JUN 14, 1991 | SEP 15, 1994 | 59 FR 47258 |
| 3rd Revision: | JAN 26, 1994 | MAY 2, 1995 | 60 FR 21442 |
| 4th Revision | AUG 10, 2005 | JULY 10, 2006 | 71 FR 38773 |
| 5th Revision | NOV 21, 2016 | JUN 14, 2017 | Letter Notice |
| 6th Revision |  | FEB 21, 2020 | 85 FR 10070 |

**Rule 2.2**  **GENERAL STANDARDS APPLICABLE TO ALL PERMITS**

  A.  Except as provided for in the "Air Emissions Operating Permit Regulations for the Purposes of Title V of the Federal Clean Air Act" Miss Admin. Code, Title 11, Part 2, Chapter 6, no permit shall be issued unless the applicant has complied with applicable requirements of the Commission Air Emission Regulations for the Prevention, Abatement, and Control of Air Contaminants Miss. Admin Code, Title 11, Part 2, Chapter 1; the Commission Permit Regulations for the Construction and/or Operation of Air Emissions Equipment Miss Admin. Code, Title 11, Part 2, Chapter 2 the Commission Regulations for the Prevention of Air Pollution Emergency Episodes Miss. Admin. Code, Title 11, Part 2, Chapter 3; the Commission Ambient Air Quality Standards Miss. Admin. Code, Title 11, Part 2, Chapter 4 except as provided for in Rule 2.5.E. herein; the Commission Regulations for the Prevention of Significant Deterioration of Air Quality Miss. Admin. Code, Title 11, Part 2, Chapter 5, any amendments to these Rules and Regulations, and additional relevant Rules and Regulations promulgated by the Commission and/or Permit Board.

  B.  General Provisions.

    (1)  Any stationary source which holds a valid Title V permit shall be deemed to be in compliance with the requirements regarding a State Permit to Operate contained in Miss Admin. Code, Title 11, Part 1, Chapter 2 and State Law.

    (2)  The Permit Board may require a permittee to submit an application for a Title V permit at any time the permittee becomes subject to Title V. The Permit Board may require a permittee to submit a Title V application even though the permittee has previously submitted an application for renewal of its State Operating Permit.

    (3)  When requested by the Permit Board, an applicant shall submit information to demonstrate it has the financial resources to comply with the terms and conditions of the permit.

    (4)  When requested by the Permit Board, an applicant shall submit information on the applicant's compliance history to provide reasonable assurance that it will comply with the terms and conditions of the permit.

    (5)  The knowing submittal of a permit application with false information may serve as the basis for the Permit Board to void the permit issued pursuant thereto or subject the applicant to penalties for operating without a valid permit pursuant to State Law.

    (6)  Acceptance by the Permit Board of a permit application does not constitute a waiver of the DEQ's right to assess appropriate penalties against the applicant pursuant to State Law for constructing or operating without a valid permit.

(7)     The issuance of a permit does not release the permittee from liability for constructing or operating air emissions equipment in violation of any applicable statute, rule or regulation of state or federal environmental authorities.

(8)     Applicants for all permits to construct or operate, or to renew a State Permit to Operate, shall specify in their application the air emission rate for each air pollutant subject to regulation under the Federal Act that can be reasonably expected to be emitted into the air as a result of operations from the source.

(9)     Each application must be signed by the responsible official.  The signature of the applicant shall constitute an agreement that the applicant assumes the responsibility for any alterations, additions or changes in operation that may be necessary to achieve and maintain compliance with all Applicable Rules and Regulations.

(10)    The Permit Board may, in any permit, establish limitations and requirements on the emission of air pollutants and on other parameters of a stationary source to assure that the requirements of Applicable Rules and Regulations are met subject to Miss. Code Ann. §49-17-34(2) and (3).  Where the Permit Board does not establish limitations and requirements in a permit, the permit shall provide that the rates of emissions and other operating conditions and parameters specified in the application shall be the applicable limitations and requirements.

(11)    The Permit Board may, in any permit, establish requirements for compliance testing by emissions sampling and analysis, for emissions and operation monitoring, and for reporting of the results from such testing and monitoring.  The Permit Board shall consider factors in establishing such requirements as follows:

   (a)     Applicable Rules and Regulations which address testing, monitoring, and reporting;

   (b)     prior results of testing and monitoring at the stationary source;

   (c)     the applicant's compliance history;

   (d)     the size of the stationary source;

   (e)     the cost of the testing, monitoring, reporting; and

   (f)     the potential environmental impact of the stationary source.

(12)    The Permit Board may, in any permit, subdivide the permit requirements to facilitate their expression so as to adequately define, describe, and encompass emissions-producing units, processes, and other portions of a stationary source subject to the requirements.

(13)    The Permit Board may, in any permit to construct, require the permittee to perform special environmental monitoring for the purpose of detecting, quantifying, and determining the impact of pollutants existing prior to the date the permittee begins to emit when, during the review of the application and the public participation process, questions arise, with regard to separate environmental impacts of pollution raised by

the applicant or the Department and which cannot be determined by available scientific data and scientific methods. The Permit Board may, in any State Permit to Operate, require the permittee to perform special environmental monitoring for the purpose of detecting, quantifying, and determining the impact of pollutants emitted by the permittee when such monitoring is necessary because traditional air quality monitoring techniques will not measure the quality of the environment nor the impact of the pollutants emitted into the environment. Such special monitoring may include, but is not limited to, parameters such as ambient concentration, deposition, bio-accumulation in flora and fauna, etc.

(14)   No permit for the construction or relocation of equipment which will cause the issuance of air contaminants shall be issued when said equipment cannot comply with buffer zone requirements as follows:

(a)   All sources of air emissions must be at least 150 feet from the nearest residential or recreational area.

(b)   All sources of air emissions at asphalt plants utilizing conventional technology for the control of air contaminants must be at least 1500 feet from the nearest residential, recreational or light commercial area.

(c)   All sources of air emissions at asphalt plants utilizing best available technology for the control of air contaminants must be at least 600 feet from the nearest residential, recreational or light commercial area.

(d)   Rendering plants or other similar operations which may cause objectionable odors must be at least 1500 feet from the nearest residential, recreational or light commercial area and be located in compliance with Miss. Code Ann. § 41-51-19.

(e)   Notwithstanding (a) above, incinerators must be at least 150 feet from any dwelling or from any light commercial building not owned by the applicant.

(f)   Where buffer zone requirements cannot be met, the Permit Board will consider requests for exceptions to, or variances from, these requirements upon the applicant's submittal of sufficient proof that affected property owners within the subject buffer zone have had timely and sufficient notice of the proposed stationary source. Any comments received as a result of such notice shall be considered prior to action upon any request for exceptions to, or variances from, the buffer zone requirements.

(g)   The Permit Board may establish buffer zone requirements for facilities not included in 15(a)-(f) considering factors including but not limited to, the type of emissions, the quantity of emissions, the physical characteristics of the stationary source (such as the location) and such other factors that the Permit Board deems appropriate to protect human health, welfare, or the environment.

(15)   Each permit issued shall include the following:

11-MAC- Part 2-2

(a)     It shall not be a defense for a permittee in an enforcement action that it would have been necessary to halt or reduce the permitted activity in order to maintain compliance with the conditions of the permit unless halting or reducing activity would create an imminent and substantial endangerment threatening the public health and safety of the lives and property of the people of this state.

(b)     The permit and/or any part thereof may be modified, revoked, reopened, and reissued, or terminated for cause.  Sufficient cause for a permit to be reopened shall exist when an air emissions stationary source becomes subject to Title V.  The filing of a request by the permittee for a permit modification, revocation and reissuance, or termination, or of a notification of planned changes or anticipated noncompliance does not stay any permit condition.

(c)     The permit does not convey any property rights of any sort, or any exclusive privilege.

(d)     The permittee shall furnish to the DEQ within a reasonable time any information the DEQ may request in writing to determine whether cause exists for modifying, revoking and reissuing, or terminating the permit or to determine compliance with the permit.  Upon request, the permittee shall also furnish to the DEQ copies of records required to be kept by the permit or, for information claimed to be confidential, the permittee shall furnish such records to the DEQ along with a claim of confidentiality.  The permittee may furnish such records directly to the Administrator along with a claim of confidentiality.

C.     Permit Modification or Revocation

After notice and opportunity for hearing, the Permit Board may modify, or revoke in whole or in part any permit issued pursuant to these regulations for good cause shown including, but not limited to, the following:

(1)     persistent violation of any of the terms or conditions of the permit;

(2)     obtaining the permit by misrepresentation or failure to disclose fully all relevant facts; or

(3)     a change in federal, state or local laws or regulations that require either a temporary or permanent reduction or elimination of previously authorized air emissions.

D.  Modification of Permits Without Modification of Facilities

The terms and conditions of a previously issued permit to construct or State Permit to Operate may, upon request of the permittee, be modified if the Permit Board finds that those terms and conditions are no longer necessary to insure compliance with all Applicable Rules and Regulations or that the modifications sought by the permittee result in operating conditions that are protective of human health and the environment.

| | Date Submitted to EPA | Date Approved by EPA | Federal Register |
|---|---|---|---|
| Original Reg: | FEB 4, 1972 | MAY 31, 1972 | 37 FR 10875 |
| 1st Revision: | MAR 16, 1978 | FEB 07, 1979 | 44 FR 7713 |
| 2nd Revision: | NOV 25, 1981 | MAR 20, 1986 | 51 FR 9653 |
| 3rd Revision: | JUL 26, 1988 | NOV 13, 1989 | 54 FR 47211 |
| 4th Revision: | JUN 14, 1991 | SEP 15, 1994 | 59 FR 47258 |
| 5th Revision: | JAN 26, 1994 | MAY 2, 1995 | 60 FR 21442 |
| 6th Revision | AUG 10, 2005 | JULY 10, 2006 | 71 FR 38773 |
| 7th Revision | NOV 21, 2016 | JUN 14, 2017 | Letter Notice |
| 8th Revision | | FEB 21, 2020 | 85 FR 10070 |

**Rule 2.3**     **APPLICATION FOR PERMIT TO CONSTRUCT AND STATE PERMIT TO OPERATE NEW STATIONARY SOURCE**

   A.     All engineering plans and specifications required by DEQ must bear the signature, registration number, and seal of a professional engineer registered in the State of Mississippi.

   B.     Information Required.

      (1)     The Permit Board may require each application for a permit to construct a new stationary source be accompanied by two (2) complete sets of site drawings, construction drawings, design calculations and specifications.

      (2)     Upon request by the Permit Board, the applicant shall furnish any additional information necessary to evaluate the design adequacy of the new stationary source.

      (3)     The Permit Board may require the applicant to predict the impact of emissions on air quality using air quality models as referenced in Section V.B. herein.

|  | Date Submitted to EPA | Date Approved by EPA | Federal Register |
|---|---|---|---|
| Original Reg: | FEB 4, 1972 | MAY 31, 1972 | 37 FR 10875 |
| 1st Revision: | MAR 16, 1978 | FEB 07, 1979 | 44 FR 7713 |
| 2nd Revision: | JUN 14, 1991 | SEP 15, 1994 | 59 FR 47258 |
| 3rd Revision: | JAN 26, 1994 | MAY 2, 1995 | 60 FR 21442 |
| 4th Revision | AUG 10, 2005 | JULY 10, 2006 | 71 FR 38773 |
| 5th Revision | NOV 21, 2016 | JUN 14, 2017 | Letter Notice |
| 6th Revision |  | FEB 21, 2020 | 85 FR 10070 |

**Rule 2.4        PUBLIC PARTICIPATION AND PUBLIC AVAILABILITY OF INFORMATION**

A.    For any application for a Prevention of Significant Deterioration Permit to Construct, the DEQ will follow public information procedures specified in Commission Regulation Miss. Admin Code, Title 11, Part 2, Chapter 5, "Regulations for the Prevention of Significant Deterioration of Air Quality", and any other Applicable Rules and Regulations set forth herein.

B.    For any application for a Title V Permit to Operate, the DEQ will follow public information procedures specified in Commission Regulation Miss. Admin. Code, Title 11, Part 2, Chapter 6, "Air Emissions Operating Permit Regulations For The Purposes Of Title V Of The Federal Clean Air Act".

C.    For any application for a permit to construct a new moderate stationary source, a moderate modification, or a new major stationary source impacting a nonattainment area as defined in Rule 2.5.E., the DEQ will provide opportunity for public comment on information submitted by the owner and operator.  The public information will include the DEQ's analysis of the effect of construction or modification on ambient air quality, including the DEQ's recommendation for permit issuance or denial and shall include, as a minimum the following:

(1)    availability for public inspection in at least one location in the area affected of the information submitted by the owner or operator and of DEQ's analysis of the effect on air quality;

(2)    a 30-day period for submittal of public comment; and

(3)    a notice, by prominent advertisement in the area affected, of the location of the source information and analysis.

A copy of the notice will be sent to the Administrator of EPA through Region IV, and to all other State and local air pollution control agencies having jurisdiction in the region in which such new or modified installation will be located.  A permit to construct issued pursuant to this paragraph is federally enforceable.

D.    For any application for a new State Permit to Operate a synthetic minor source, and any application for renewal of a State Permit to Operate a synthetic minor source, the DEQ will provide opportunity for public comment on information submitted by the owner or operator.  The public information will include the application submitted, the DEQ's recommendation for permit issuance or denial (including the draft permit) and shall include, as a minimum the following:

(1)    availability for public inspection in at least one location in the area affected of the information submitted by the owner or operator and of DEQ's recommendation and the draft permit;

(2)    a 30-day period for submittal of public comment; and

(3)     a notice, by prominent advertisement in the area affected, of the location of the source information.

A copy of the notice will be sent to the Administrator of EPA through Region IV, and to all other State and local air pollution control agencies having jurisdiction in the region in which the source is or will be located.  A State Permit to Operate issued to a synthetic minor source is federally enforceable.

E.     For any request for coverage under a general permit to construct a moderate source or moderate modification, the public information procedures described in C. above will be followed except that the public information will also include the request for coverage.  A general permit to construct which covers a moderate source or moderate modification is federally enforceable.

F.     For any request for coverage under a general permit to operate a synthetic minor source, the public information procedures described in D. above will be followed except that the public information will also include the request for coverage.  A general permit to operate which covers a synthetic minor source is federally enforceable.

G.     For a multi-media permit incorporating a permit to construct a new moderate stationary source, a moderate modification, or a new major stationary source impacting a nonattainment area as defined in Rule 2.5.E., the DEQ will follow public information procedures described in C. above. The incorporated permit to construct in such a permit is federally enforceable.

H.     For a multi-media permit incorporating a State Permit to Operate a synthetic minor source, the DEQ shall follow public information procedures described in D. above. The incorporated State Permit to Operate in such a permit is federally enforceable.

I.     For a multi-media general permit incorporating a general permit to construct a moderate source or moderate modification, the DEQ shall follow public information procedures described in C. and E. above.  The incorporated general permit to construct in such a permit is federally enforceable.

J.     For a multi-media general permit incorporating a general permit to operate a synthetic minor source, the DEQ shall follow public information procedures described in D. and F. above. The incorporated general permit to operate in such a permit is federally enforceable.

K.     For any application for a PAL permit at an existing major stationary source in accordance with Rule 2.15.B. of these regulations, the DEQ shall follow public information procedures described in 40 CFR 52.21(aa)(5) except that the term "Administrator" as it appears shall mean the Permit Board.

L.     In addition to A. through F. above, the Permit Board may provide notice to the public and provide opportunity for public comment on any application for a construction permit or State Operating Permit.

M.     In addition to public hearings on PSD permits, as provided for in Commission Regulation Miss.  Admin. Code, Title 11, Part 2, Chapter 5, "Regulations for the Prevention of Significant Deterioration of Air Quality", the Permit Board may hold a public hearing on any

application for a construction permit or State Operating Permit if it determines that there is sufficient interest in the application.

| | Date Submitted to EPA | Date Approved by EPA | Federal Register |
|---|---|---|---|
| Original Reg: | FEB 4, 1972 | MAY 31, 1972 | 37 FR 10875 |
| 1st Revision: | MAR 16, 1978 | FEB 07, 1979 | 44 FR 7713 |
| 2nd Revision: | JUN 14, 1991 | SEP 15, 1994 | 59 FR 47258 |
| 3rd Revision: | JAN 26, 1994 | MAY 2, 1995 | 60 FR 21442 |
| 4th Revision | AUG 10, 2005 | JULY 10, 2006 | 71 FR 38773 |
| 5th Revision | NOV 21, 2016 | JUN 14, 2017 | Letter Notice |
| 6th Revision | | FEB 21, 2020 | 85 FR 10070 |

11-MAC- Part 2-2

**Rule 2.5**     **APPLICATION REVIEW**

A.     Standards for Approving an Application for a Permit to Construct.

   (1)     The stationary source shall be designed and constructed so as to operate without causing a violation of any Applicable Rules and Regulations.

   (2)     The stationary source shall be designed and constructed so as to operate without interfering with the attainment and maintenance of State and National Ambient Air Quality Standards.

   (3)     The stationary source shall be designed and constructed so as to operate such that the emission of air toxics does not result in an ambient concentration sufficient to adversely affect human health and well-being or unreasonably and adversely affect plant or animal life beyond the stationary source boundaries.

   (a)     The Permit Board may require the applicant to provide data necessary to evaluate the impacts of air toxics, including the predicted emission rates and ambient concentrations, when it deems necessary, considering factors that follow:

      (1)     the types of air toxics involved;

      (2)     the quantity of emissions involved;

      (3)     the physical characteristics of the stationary source (such as the location, size, etc.);

      (4)     the anticipated human health effects;

      (5)     the weight of scientific data supporting the health effects associated with the air toxics;

      (6)     the level of air pollution control equipment employed; and

      (7)     such other factors as the Permit Board deems appropriate.

   (b)     When an air toxics evaluation is required by the Permit Board, the evaluation shall consider:

      (1)     an analysis of the chronic human health risks associated with the air toxics including the lifetime excess cancer risks to the most exposed individual from air toxics which are known, probable, or possible human carcinogens calculated or determined using appropriate pathways of exposure;

      (2)     an analysis of the acute human health effects associated with the air toxics utilizing the most current health-effects data published by EPA and/or recognized public health institutions or, in its absence, other extrapolative acute health-effects data; and

(3)    where applicable, an analysis of the impacts and effects of the air toxics on plant and/or animal life beyond the boundaries of the applicant's property.

(c)    The carcinogenic risk analysis shall be considered to have satisfied applicable requirements of this regulation and Regulation Title 11, Part 2, Chapter 1 when the lifetime excess cancer risk to the most exposed individual outside the property boundary is determined to be less than $1 \times 10^{-6}$.  When the excess cancer risk is determined to be greater than $1 \times 10^{-6}$ but less than $1 \times 10^{-4}$, the Permit Board may either:

(1)    require the applicant to demonstrate that, notwithstanding the calculated risks, public health is not threatened by the proposed emissions of air toxics; or

(2)    establish permit conditions to limit or prohibit the emissions of air toxics.

When this excess cancer risk is calculated or determined to be greater than $1 \times 10^{-4}$, the applicant must demonstrate that, notwithstanding the calculated risks, public health is not threatened by the proposed emissions of air toxics.

(4)    The construction of the stationary source shall be performed in such a manner so as to reduce fugitive dust emission from construction activities to a minimum.

B.    Air Quality Models.

(1)    All estimates of ambient concentrations of air pollutants shall be based on the applicable air quality models, data-bases, and other requirements specified in the version of the "Guideline on Air Quality Models, "  40 CFR, Part 52, Appendix W, approved in 11 Miss. Admin. Code Pt. 2, Ch. 5.

(2)    Where an air quality impact model specified in the "Guideline on Air Quality Models, "40 CFR Part 52, Appendix W, is inappropriate, the model may be modified or another model substituted.  Such a modification or substitution of a model may be made on a case-by-case basis or, where appropriate, on a generic basis.  Written approval of the DEQ and the Administrator of EPA must be obtained for any modification or substitution.  In addition, use of a modified or substituted model shall be subject to public notice and opportunity for public comment.

C.    Cancellation of Permit to Construct a New Stationary Source and Notification.

(1)    The permit to construct will expire if construction does not begin within eighteen (18) months from the date of issuance or if construction is suspended for eighteen (18) months or more.

(2)    The permittee must notify DEQ in writing when construction begins within fifteen (15) days of beginning actual construction.

(3)     The permittee must notify DEQ in writing when construction does not begin within eighteen (18) months of issuance or if construction is suspended for eighteen (18) months or more.

(4)     The Permit Board may extend the permit to construct for such additional time it deems appropriate if, at the time of the extension request, the applicant can demonstrate it meets all requirements necessary to issue a new permit to construct.

D.     Certification of Construction, Beginning Operation, and Application for Permit to Operate.

(1)     Upon the completion of construction or installation of an approved stationary source or modification, the applicant shall notify the Permit Board that construction or installation was performed in accordance with the approved plans and specifications on file with the Permit Board.

(2)     The Permit Board shall be promptly notified in writing of any change in construction from the previously approved plans and specifications or permit. If the Permit Board determines the changes are substantial, it may require the submission of a new application to construct with "as built" plans and specifications. Notwithstanding any provision herein to the contrary, the acceptance of an "as built" application shall not constitute a waiver of the right to seek compliance penalties pursuant to State Law.

(3)     A new stationary source issued a Permit to Construct cannot begin operation until certification of construction by the permittee.

(4)     Except as prohibited by (7). below, after certification of construction by the permittee. The Permit to Construct shall be deemed to satisfy the requirement for a permit to operate until the date the application for issuance or modification of the Title V Permit or the application for issuance or modification of the State Permit to Operate, whichever is applicable, is due. This provision is not applicable to a source excluded from the requirement for a permit to operate as provided by Rule 2.13.G.

(5)     Except as otherwise required in (7). below, the application for issuance or modification of the State Permit to Operate or the application for issuance or modification of the Title V Permit, whichever is applicable, is due, twelve (12) months after beginning operation or such earlier date or time as specified in the Permit to Construct. The Permit Board may specify an earlier date or time for submittal of the application. Beginning operation will be assumed to occur upon certification of construction, unless the permittee specifies differently in writing.

(6)     Except as otherwise required in (7). below, upon submittal of a timely and complete application for issuance or modification of a State Permit to Operate, or application for issuance or modification of a Title V Permit, whichever is applicable, the applicant may continue to operate under the terms and conditions of the Permit to Construct and in compliance with the submitted application until the Permit Board issues, modifies, or denies the Permit to Operate.

(7)     For moderate modifications that require contemporaneous enforceable emissions reductions from more than one emission point in order to "net" out of PSD/NSR, the

applicable Title V Permit to Operate or State Permit to Operate must be modified prior to beginning operation of the modified facilities.

E.      Additional Requirements for a Construction Permit or a State Operating Permit for a New Major Stationary Source or Major Modification Significantly Impacting an Area in which a National Ambient Air Quality Standard is being exceeded or will be exceeded.

(1)      The Offset Policy is the Emission Offset Interpretive Ruling adopted by EPA in (or to be printed in) 40 C.F.R. Part 51, Appendix S, and any subsequent amendments thereto as of April 25, 1988. A copy of such ruling is attached hereto and is incorporated herein and adopted by reference as Regulations of the Commission except as follows:

(a)      Notwithstanding Appendix S, the requirements for Offsets and Lowest Achievable Emission Rate will apply to all major stationary sources and major modifications which have a significant impact on nonattainment of the applicable ambient air quality standard.

(b)      The source types specified in Section IV.B. of Appendix S of 40 CFR Part 51 will not be excepted from any conditions of the Offset Policy or any of the requirements contained herein.

(c)      All terms in Rule 2.5.E. shall have the same definitions as those contained in the Offset Policy including the term "major stationary source" which is defined differently for purposes of this paragraph than throughout the remainder of Commission Regulations Miss. Adm. Code, Title 11, Part 2, Chapter 2.

(2)      Definitions

(a)      "Nonattainment area." A geographical area of the state in which a violation of a National Ambient Air Quality Standard is occurring and which has been designated by the Commission or EPA as nonattainment with respect to that standard.

(b)      "Nonattainment Area Implementation Plan." A revision to the Commission's Implementation Plan for the Control of Air Pollution, such revision having been adopted by the Commission and approved by the U.S. Environmental Protection Agency pursuant to the Federal Act, for the purpose of attainment and maintenance of the applicable National Ambient Air Quality Standard in a nonattainment area.

(c)      "Reasonable Further Progress Schedule." An incremental reduction in total emissions of the applicable air pollutant allowed in order to provide for the attainment of the applicable National Ambient Air Quality Standard by the applicable statutory deadlines.

(d)      "Significance Levels." Concentrations of pollutants against which air quality contributions of a stationary source are compared to determine whether the stationary source significantly impacts air quality in an area. The levels are as follows:

$SO_2$    1.0 $\mu g/m^3$, annual average; 5 $\mu g/m^3$, 24-hour average; 25 $\mu g/m^3$, 3-hour average

$PM_{10}$    1.0 $\mu g/m^3$, annual average; 5 $\mu g/m^3$, 24-hour average

$NO_2$    1.0 $\mu g/m^3$, annual average

CO    0.5 $mg/m^3$, 8-hour average; 2.0 $mg/m^3$, 1-hour average

(e)    "Significant impact." Air quality impact which exceeds the significance level.

(3)    A new stationary source which is a major stationary source or major modification for the pollutant which contributes to violations of the National Ambient Air Quality Standard for which the area is nonattainment and which locates in or significantly impacts a nonattainment area must also meet the following requirements before a construction permit or a State Operating Permit is issued:

(a)    The stationary source must meet the lowest achievable emission rate for the applicable air pollutant.

(b)    When the applicable Nonattainment Area Implementation Plan contains a Reasonable Further Progress Schedule, the Permit Board must determine that, by the time the stationary source is to commence operation, total combined allowable emissions of the applicable air pollutant from existing sources in the area, the proposed new stationary source, and all other new facilities in the area shall be no greater than the total allowable emissions for the nonattainment area which represents reasonable further progress for attaining the standard as defined in the applicable Nonattainment Area Implementation Plan Reasonable Further Progress Schedule.

(c)    The owner or operator of the proposed new stationary source must demonstrate that all major stationary sources which are owned or operated by such person (or by any entity controlled by, or under common control with such person) in the state are subject to emission limitations and are in compliance, or on a schedule for compliance, with all applicable emission limitations contained in any Applicable Rules and Regulations.

(d)    Exceptions will be made to the inclusion of fugitive emissions in the determination of whether a new stationary source is a major stationary source or major modification to the extent that those exceptions are made in the Offset Policy.

(e)    At such time that a particular source or modification becomes a major stationary source or major modification solely by virtue of a relaxation in an enforceable limitation on the capacity of the source or modification otherwise to emit a pollutant, the requirements of these Regulations shall apply to the source or modification as though construction had not yet commenced.

11-MAC- Part 2-2

(f) When the Reasonable Further Progress Schedule in an applicable Nonattainment Area Implementation Plan is determined to have become inapplicable due to consumption of all available growth allowance under such Schedule, the stationary source must meet the conditions of Rule 2.5.E(4) below.

(4) A new major stationary source which proposes to locate in or near an area where an air quality standard is being or will be exceeded but for which no nonattainment area implementation plan has been adopted shall be subject to the following:

(a) The stationary source shall be subject to the Offset Policy if:

(1) The stationary source is a major stationary source or major modification for the pollutant for which the standard is or will be exceeded; and

(2) The stationary source is within or has significant impact in the area where the standard is or will be exceeded.

(b) In addition to the requirements of the Offset Policy, the stationary source shall not be granted a construction permit or a State Operating Permit unless the owner or operator demonstrates that:

(1) emissions reductions to offset the new stationary source emissions will compensate for the adverse ambient impact caused by the new stationary source; and

(2) the emissions reductions have been achieved.

(5) The granting of a Permit shall not relieve the source of the responsibility to comply with other applicable requirements of this Regulation or with any other applicable Regulation or Law.

---

|  | Date Submitted to EPA | Date Approved by EPA | Federal Register |
|---|---|---|---|
| Original Reg: | JUN 14, 1991 | SEP 15, 1994 | 59 FR 47258 |
| 1st Revision | JAN 26, 1994 | MAY 2, 1995 | 60 FR 21442 |
| 2nd Revision | AUG 10, 2005 | JULY 10, 2005 | 71 FR 38773 |
| 3th Revision | NOV 21, 2016 | JUN 14, 2017 | Letter Notice |
| 4th Revision |  | FEB 21, 2020 | 85 FR 10070 |
| 5th Revision | FEB 28, 2024 | OCT 31, 2024 | 89 FR 86751 |

**Rule 2.6.**     **COMPLIANCE TESTING**

A.     Where compliance testing is required in any permit it shall be performed as provided herein. The Permit Board may require in any permit the installation of sampling ports with safe access and the installation, maintenance and use of monitoring equipment.

B.     Requirements.

    (1)     The emissions sampling and analysis will be performed in accordance with EPA Test Methods and with any continuous emission monitoring requirements, if applicable, unless otherwise approved by the Permit Board and the EPA. The Permit Board may establish an appropriate method for deviation from a test method.

    (2)     In the event there is no applicable EPA Test Method or method required by Applicable Rules and Regulations, the Permit Board may specify an appropriate test method, taking into consideration any test methodology proposed by the applicant.

    (3)     The results of the emissions sampling and analysis shall be expressed both in units consistent with the emission standards as set forth in any Applicable Rules and Regulations and in units of mass per time.

    (4)     Compliance testing will be performed at the expense of the applicant.

    (5)     The Permit Board may monitor compliance tests and perform compliance tests. Proper notification of compliance tests shall be provided to the Permit Board in accordance with Applicable Rules and Regulations or as specified in the applicable permit.

    (6)     The emissions sampling and analysis report shall include but not be limited to the following:

        (a)     detailed description of testing procedures;

        (b)     sample calculation;

        (c)     results; and

        (d)     comparison of results to all Applicable Rules and Regulations and to emission limitations in the permit.

    (7)     Unless otherwise specified in Applicable Rules and Regulations or by a condition of a permit issued by the Permit Board, compliance testing must be performed when the stationary source is operating at capacity and is otherwise operating normally. In the event that a demonstration of compliance by testing is performed at less than capacity, the Permit Board may modify the permit to limit capacity of the stationary source to the rate at which compliance was demonstrated if the Permit Board determines the rate was not representative of the normal operation of the stationary source or compliance with Applicable Rules and Regulations was not demonstrated. In the event that the stationary source is not operating or being operated normally during a demonstration of compliance by testing, the results of such testing will not

be accepted by the Permit Board as representative of normal operation and will be considered inadequate.

C.    Compliance testing will be required of all facilities for which there is an applicable New Source Performance Standard or National Emission Standard for Hazardous Air Pollutants in accordance with the methods and time frames allowed by the applicable standard codified at 40 CFR Parts 60, 61, and 63 and the Federal Act.

---

|  | Date Submitted to EPA | Date Approved by EPA | Federal Register |
|---|---|---|---|
| Original Reg: | JUN 14, 1991 | SEP 15, 1994 | 59 FR 47258 |
| 1st Revision: | JAN 26, 1994 | MAY 2, 1995 | 60 FR 21442 |
| 2nd Revision | AUG 10, 2005 | JULY 10, 2006 | 71 FR 38773 |
| 3th Revision | NOV 21, 2016 | JUN 14, 2017 | Letter Notice |
| 4th Revision |  | FEB 21, 2020 | 85 FR 10070 |

**Rule 2.7        EMISSIONS EVALUATION REPORT**

Where emissions evaluation reporting is required in any permit, acceptable mathematical methods to demonstrate control adequacy shall include but not be limited to the following:

A.        an emission inventory including:

    (1)        location and description of control equipment at each point source;

    (2)        determination of all possible pollutants at each point source (characteristics, conditions, particle size distribution, etc.);

    (3)        listing of all stack parameters at each point of emission, and

    (4)        detailed description of input material (e.g., percent sulfur content, percent moisture, average BTU heating value, input rate, etc.); and

B.        a detailed engineering report including:

    (1)        sufficient calculations to demonstrate uncontrolled emissions;

    (2)        sufficient calculations to support or show design efficiency of control equipment;

    (3)        sufficient calculations to demonstrate controlled emissions; and

    (4)        comparison of calculated controlled emissions with the applicable emission standards as set forth in Commission Regulation Miss. Admin. Code, Title 11, Part 2, Chapter 1.

| | Date Submitted to EPA | Date Approved by EPA | Federal Register |
|---|---|---|---|
| Original Reg: | JUN 14, 1991 | SEP 15, 1994 | 59 FR 47258 |
| 1st Revision: | JAN 26, 1994 | MAY 2, 1995 | 60 FR 21442 |
| 2nd Revision | AUG 10, 2005 | JULY 10, 2006 | 71 FR 38773 |
| 3rd Revision | NOV 21, 2016 | JUN 14, 2017 | Letter Notice |
| 4th Revision | | FEB 21, 2020 | 85 FR 10070 |

**Rule 2.8**      **PROCEDURES FOR RENEWAL OF STATE PERMIT TO OPERATE**

A.      A State Permit to Operate shall expire five (5) years from the effective date of said permit or within any shorter period of time deemed appropriate by the Permit Board and stated in the State Permit to Operate when issued.

B.      Not less than one hundred and eighty (180) days prior to the expiration date of the State Permit to Operate, the applicant shall make application for renewal of a State Permit to Operate if the applicant desires to continue operation of that stationary source. If the applicant submits a timely and complete application pursuant to this paragraph and the Permit Board, through no fault of the applicant, fails to act on the application on or before the expiration date of the existing permit, the applicant shall continue to operate the stationary source under the terms and conditions of the expired permit which shall remain in effect until final action on the application is taken by the Permit Board.

C.      The application for renewal of a State Permit to Operate shall be substantiated with current emissions data, test results or reports, or other data as deemed necessary.

|  | Date Submitted to EPA | Date Approved by EPA | Federal Register |
|---|---|---|---|
| Original Reg: | JUN 14, 1991 | SEP 15, 1994 | 59 FR 47258 |
| 1st Revision: | JAN 26, 1994 | MAY 2, 1995 | 60 FR 21442 |
| 2nd Revision | AUG 10, 2005 | JULY 10, 2006 | 71 FR 38773 |
| 3th Revision | NOV 21, 2016 | JUN 14, 2017 | Letter Notice |
| 4th Revision |  | FEB 21, 2020 | 85 FR 10070 |

**Rule 2.9      REPORTING & RECORDKEEPING**

The Permit Board may require in any permit the maintenance of records relating to the operation of air contamination sources, and any authorized representatives of the Commission may examine and copy any such records pertaining to the operation of such air contaminant source.  Copies of such records shall be submitted to the Permit Board as required by Applicable Rules & Regulations or the permit or upon request.

| | Date Submitted to EPA | Date Approved by EPA | Federal Register |
|---|---|---|---|
| Original Reg: | JUN 14, 1991 | SEP 15, 1994 | 59 FR 47258 |
| 1st Revision: | JAN 26, 1994 | MAY 2, 1994 | 60 FR 21442 |
| 2nd Revision | AUG 10, 2005 | JULY 10, 2006 | 71 FR 38773 |
| 3th Revision | NOV 21, 2016 | JUN 14, 2017 | Letter Notice |
| 4th Revision | | FEB 21, 2020 | 85 FR 10070 |

**Rule 2.10**     **EMISSION REDUCTION SCHEDULE**

A.     In accordance with Commission Regulation APC-S-3, it is the responsibility of each and every stationary source with actual emissions in excess of 0.25 tons per day of total air contaminants, and other significant sources, to have a Commission-approved emissions reduction schedule which shall set forth preplanned abatement strategies in the event of an emergency episode.

B.     Required Information.

(1)     The emissions reduction schedule must have three (3) stages of reduction procedures: (1) alert level reduction; (2) warning level reduction; and (3) emergency level reduction.

(2)     Each level of reduction procedures must show the type and source of air contaminants, the amount of reduction of contaminants, the time required to reduce, and the manner in which reduction will be achieved.

C.     The emissions reduction schedule shall be subject to review and approval by the Commission.

D.     An unacceptable emissions reduction schedule shall be returned to the applicant along with the Commission's reasons for denial.

E.     The applicant shall have not more than thirty (30) days to amend a disapproved emissions reduction schedule to conform with the emission reduction standards as set forth by the Commission.

F.     Any person aggrieved by the requirements to amend an emissions reduction schedule shall be entitled to a hearing.

G.     Should an applicant fail to submit an emissions reduction schedule within the allowable time period or fail to submit an amended preplanned strategy, the Commission will establish or revise said plan to cause it to meet the standards as set forth by the Commission.

H.     Such established or revised preplanned strategies will thereafter be the preplanned strategies which the applicant will put into effect upon the issuance of an appropriate order by the Commission.

| | Date Submitted to EPA | Date Approved by EPA | Federal Register |
|---|---|---|---|
| Original Reg: | JUN 14, 1991 | SEP 15, 1994 | 59 FR 47258 |
| 1st Revision: | JAN 26, 1994 | MAY 2, 1995 | 60 FR 21442 |
| 2nd Revision | AUG 10, 2005 | JULY 10, 2006 | 71 FR 38773 |
| 3th Revision | NOV 21, 2016 | JUN 14, 2017 | Letter Notice |
| 4th Revision | | FEB 21, 2020 | 85 FR 10070 |

**Rule 2.11     GENERAL PERMITS**

The Permit Board may issue general permits to construct and operate as described below to classes of articles, machines, equipment, or other contrivances.  A general permit shall be issued for a period of time not to exceed five years.  The Permit Board shall establish the schedule for submittal of the notice of intent (NOI) and the information that shall be required in the NOI.  The Permit Board may choose, for certain types of operations, to confer automatic coverage under a general permit without requiring the submittal of an application or other request.  General permits to construct moderate sources, general permits to construct moderate modifications, general permits to operate a synthetic minor source, or general Title V Permits must require submittal of a NOI.  For any request for coverage under a general permit to construct a moderate source or moderate modification or for a general permit to operate a synthetic minor source, the public information procedures required by Rule 2.4.E or Rule 2.4.F of these regulations shall be followed.

A.     The applicant shall apply for coverage under an issued general permit in accordance with the schedule and requirements established in that general permit.

B.     If the proposed determination is to grant coverage under an issued general permit, the Permit Board's designee shall issue a certificate of coverage to the applicant.

C.     Any stationary source covered or eligible to be covered under a general permit may be required to obtain an individual permit at the discretion of the Permit Board. Any interested person may petition the Permit Board to take action under this paragraph.

D.     The Permit Board may revoke and/or modify a general permit or coverage under a general permit.

E.     Any stationary source covered by a general permit may request to be excluded from such coverage by applying for an individual permit. Coverage under the general permit is automatically terminated upon issuance of an individual permit.

F.     Any stationary source excluded from coverage under a general permit solely because it is already covered under an individual permit may request that the individual permit be revoked and that it be covered by the general permit.  Upon revocation of the individual permit by the Permit Board, coverage under the general permit may be granted to the stationary source if approved by the Permit Board.

G.     A general permit shall remain in force until it is either reissued, modified, or revoked by the Permit Board.  All coverages under the general permit continue until the general permit is reissued or as defined in the reissued general permit.  A stationary source may apply for coverage under any general permit that is currently in force.

H.     The granting of coverage under a general permit does not imply or express exclusion from the requirements of any emission-limiting regulation.

Date Submitted          Date Approved          Federal
11-MAC- Part 2-2

|  | to EPA | by EPA | Register |
|---|---|---|---|
| Original Reg: | JUN 14, 1991 | SEP 15, 1994 | 59 FR 47258 |
| 1st Revision: | JAN 26, 1994 | MAY 2, 1995 | 60 FR 21442 |
| 2nd Revision | AUG 10, 2005 | JULY 10, 2006 | 71 FR 38773 |
| 3th Revision | NOV 21, 2016 | JUN 14, 2017 | Letter Notice |
| 4th Revision |  | FEB 21, 2020 | 85 FR 10070 |

11-MAC- Part 2-2

**Rule 2.12    MULTI-MEDIA PERMITS**

    A.    The Permit Board may issue a multi-media permit incorporating a permit to construct air emissions equipment and/or a State Permit to Operate such equipment.

    B.    For purpose of these regulations, a multi-media permit incorporating a permit to construct shall be the same as a permit to construct. The procedures for applying for such a multi-media permit and the standards applicable to such a permit follow those for a permit to construct. These procedures and standards are found in Rules 2.1, 2.2, 2.3, 2.4, 2.5, 2.6, 2.7, 2.8, 2.9 and 2.10.

    C.    For purpose of these regulations, a multi-media permit incorporating a State Permit to Operate shall be the same as a State Permit to Operate. The procedures for applying for such a multi-media permit and the standards applicable to such a permit follow those for a State Permit to Operate. These procedures and standards are found in Rule 2.1 through 2.4, and 2.6.

    D.    For purpose or these regulations, a multi-media general permit incorporating a permit to construct and/or a State Permit to Operate combined with certificate of coverage shall be the same as a permit to construct and/or a State Permit to Operate. The procedures for applying for coverage follow those for a general permit to construct and operate. These procedures are found in Rule 2.5 and 2.11 of these regulations.

    E.    Any stationary source of facility obtaining a multi-media permit under these provisions is subject to the permitting requirements found in Rule 2.1.C of these regulations.

---

|  | Date Submitted to EPA | Date Approved by EPA | Federal Register |
|---|---|---|---|
| Original Reg: | AUG 10, 2005 | JULY 10, 2006 | 71 FR 38773 |
| 1st Revision | NOV 21, 2016 | JUN 14, 2017 | Letter Notice |
| 2nd Revision |  | FEB 21, 2020 | 85 FR 10070 |

**Rule 2.13 EXCLUSIONS**

A.  New Source Permit to Construct

Any new "Greenfield" stationary source must obtain a permit to construct except as excluded in D. or E.

B.  Compliance with Other Applicable Requirements

Exclusions from permit requirements does not exclude anyone from complying with all other applicable requirements and regulations.

C.  Maintenance of Emission Increase Records

Stationary sources excluded from the requirement for a permit to construct must maintain records of any emissions increases associated with any excluded activities and report that to DEQ upon request.  Indirect measurements of emissions increases are allowable for these recordkeeping requirements.

D.  Categorical Exclusions from Both Permit to Construct and Operate

The following are excluded from the requirement for a permit to construct or a permit to operate:

(1)  Residential heating, cooking, or cleaning devices.

(2)  Residential yard and garden equipment.

(3)  Mobile sources.

(4)  Air conditioning, space heating, or ventilating systems not uniquely designed or operated in a manner to remove air contaminants generated by or released from equipment.

(5)  Stationary sources, other than incinerators or CAFOs, which neither emit  nor have potential uncontrolled emissions of, 10 TPY or more of either $PM_{10}$, $SO_2$, $NO_x$, CO or VOC, nor 1.0 TPY of a HAP, nor 2.5 TPY of all HAPs.

(6)  Feed milling facilities which mill, formulate, or otherwise prepare animal feed products for direct local retail sale solely in prepackaged form and are not associated with a grain elevator.  Milling facilities engaged in preparing feed products for wholesale distribution and/or bulk sale are not included in this exclusion.

(7)  Sawmills/woodworking plants which do not have drying kilns onsite and process less than 25,000 board feet/day.

(8)  Any equipment used exclusively for preparation of food for direct retail sale at a restaurant, cafeteria, bakery, or food service.

(9)  Auto body shops with only one (1) paint spray booth and with substantial portions of business devoted to repainting entire vehicles or collision repairs.

(10)    Surface sand and/or gravel mining operations which do not utilize rock crushers, pneumatic conveyors, or dust collectors.

(11)    Recreational heaters.

(12)    Gasoline service stations with no more than 17 refueling positions.

(13)    Retail propane filling operations.

(14)    Outdoor kerosene heaters.

(15)    Refrigeration systems.

E.    Emission-Based Exclusion from Permit to Construct.

The following emissions units are excluded from the requirement for a permit to construct provided the unit is not a new major stationary source, major source of hazardous air pollutants, major modification or moderate modification nor a part of a new major stationary source, major source of hazardous air pollutants, major modification, or moderate modification.

(1)    Coal or residual oil-fired combustion devices or groups of devices with a total rated input capacity of less than 2,000,000 BTU/hr, clean wood waste boilers or groups of boilers with a total rated input capacity of less than 10,000,000 BTU/hr, distillate oil or combination distillate and gas-fired units or groups of units with a total rated input capacity less than 10,000,000 BTU/hr and natural gas fired and/or LPG fired devices or groups of devices with all individual rated input capacities of less than 10,000,000 BTU/hr and a total rated input capacity less than 25,000,000 BTU/hr.

(2)    Equipment used exclusively for oil and gas field production, gathering, storing, and transmission, including, but not limited to: Gas/oil separators, emulsion treaters, free water knockouts, compressors or group of compressors with a total rated capacity less than 500 brake horsepower, segregation basins, API oil/water separators, tank facilities, and crude oil loading equipment used solely for crude oil collected from production wells onsite. Continuous flaring of sour gas and/or combustion devices firing sour gas are not excluded from permitting.

(3)    Emergency safety relief systems, including pilot lights.

(4)    Sand blasting operations which use no more than 83 tons of sand in any given 365-day period.

(5)    Wood, plastic, and/or metal machining operations which are totally enclosed within a building, and which have no direct exhausts to the ambient air other than common building ventilation points.

(6)    Petroleum products storage facilities with no individual storage tank greater than 19,800 gallons and total storage capacity less than 55,000 gallons.

(7)     A compressor or groups of compressors firing either natural gas, gasoline, LPG and/or diesel fuel with a total rated capacity less than or equal to 500 brake horsepower.

(8)     Surface coating operations which utilize less than 50 pounds per day of all solvents and coatings.

(9)     Fire training exercises and equipment.

(10)    Groundwater recovery/treatment facilities used for the remediation of motor fuel contamination addressed under the Underground Storage Tank Program when the facilities are located on the site of the contamination.

(11)    Temporary storage/aeration of soils contaminated with motor fuel which are produced as a result of a remedial response to a release from an underground storage tank when the storage/operation is on the site of the tank.

(12)    CERCLA/Superfund remediation or removal projects on the site of the contamination.

(13) Remediation of sites contaminated with hazardous constituents required under State authority on the site of the contamination.

(14) Portable TSCA treatment facilities permitted by EPA.

(15)    Wastewater collection and treatment facilities, other than CAFOs or those listed in 40 CFR 61, Subpart FF - National Emission Standard for Benzene Waste Operations and in 40 CFR 60, Subpart QQQ, - Standards of Performance for VOC Emissions from Petroleum Refinery Wastewater Systems, which have the potential to emit no more than 5 tons/year of Volatile Organic Compounds (VOC).

(16)    Surface coal mining operations for which a permit has been issued by the Permit Board pursuant to Miss. Code Ann.§§ 53-9-1, et seq. or by the Federal Office of Surface Mining pursuant to the Federal Surface Mining Control and Reclamation Act, 30 U.S.C.§§ 1201, et seq.  However, any rock crushers, pneumatic conveyors, and dust collectors at such operations may require permitting if they meet the definition of "stationary source".

(17)    Auto body shops.

(18) Dedicated fuel stations with total storage capacity less than 55,000 gallons and no individual tank greater than 19,800 gallons.

(19)    Subject to Rule 2.14, any existing or new animal feeding operation that is not a concentrated animal feeding operation (CAFO) and that does not incinerate animal carcasses or waste.  For the purpose of this paragraph, "animal feeding operation" means any facility where animals have been, are, or will be stabled or confined, or allowed to roam or graze within a fenced or otherwise restricted area. This definition includes, but is not limited to, aquatic animal production facilities, kennels, swine

growing operations, veal farms, chicken growing operations, cattle growing operations, and dairies.

(20) Initial field testing of oil and gas wells, after proper notification to the Commission provided such tests will not produce 100 tons per year or more of any pollutant.

F.  De minimis NSR Modification Exclusion from Permit to Construct. A de minimis NSR modification is excluded from the requirements for a permit to construct. This does not eliminate any requirement for modification of Title V permits or permits to operate for de minimis modifications. Any other modifications including modifications involving netting are subject to the requirements for permits to construct.

G.  Exclusion from Permit to Operate. Major Title V sources, other sources required to obtain a Title V Permit to Operate, synthetic minor sources, and significant minor sources are subject to the requirements for a permit to operate. Any other source is excluded from the requirement to obtain a permit to operate. Exclusion from the permit to operate requirement does not imply exclusion from any other requirements of these regulations including permit to construct requirements before construction and certification of construction requirements before beginning operation.

H.  General Permit May Supercede Exclusions

The Permit Board may issue a general permit which shall supercede the exclusions listed in D., E., and G. above.

---

|  | Date Submitted to EPA | Date Approved by EPA | Federal Register |
|---|---|---|---|
| Original Reg: | AUG 10, 2005 | JULY 10, 2006 | 71 FR 38773 |
| 1st Revision | NOV 21, 2016 | JUN 14, 2017 | Letter Notice |
| 2nd Revision |  | FEB 21, 2020 | 85 FR 10070 |

**Rule 2.14     CAFOs**

Concentrated animal feeding operations (CAFO's) are not excluded from the requirements for a permit or any other provisions of these regulations.  CAFO's issued a National Pollutant Discharge Elimination System permit or a state water pollution control permit prior to January 18, 2000, are required to submit an application for a permit to construct and/or operate or a multimedia permit  in compliance with the provisions  of these regulations at least 180 days prior to the expiration of the facility's NPDES permit or state water pollution control permit that was issued prior to the effective date of these regulations.  Multimedia permits may be issued by the Permit Board as new permits or as a modification of an existing National Pollutant Discharge Elimination System or state water pollution control permit but all provisions and procedures of these regulations are applicable.  The Permit Board on its own initiative or at the request of DEQ, may require any existing or new animal feeding operation or concentrated animal feeding operation to obtain a multimedia permit, including provisions regarding air emissions and/or odor control.

|  | Date Submitted to EPA | Date Approved by EPA | Federal Register |
|---|---|---|---|
| Original Reg: | AUG 10, 2005 | JULY 10, 2006 | 71 FR 38773 |
| 1st Revision | NOV 21, 2016 | JUN 14, 2017 | Letter Notice |
| 2nd Revision |  | FEB 21, 2020 | 85 FR 10070 |

**Rule 2.15     OPTIONS**

A.     Plantwide Applicability Limitation (PAL). In accordance with 40 CFR 52.21(aa), any major stationary source may establish a plantwide applicability limitation based on baseline actual emissions (actuals PAL) for use in future NSR actions. The actuals PAL can be established in a PSD Permit to Construct, a Title V Permit, or a Permit to Operate a Synthetic Minor Source. The applicable permit to construct or permit to operate shall be referred to as a PAL permit and, in addition to the normal applicable procedures and requirements for the permit action, shall meet all the requirements for a PAL permit and issuance shall follow all procedures for a PAL permit as specified in 40 CFR 52.21(aa) except that the term "Administrator" as it appears in 40 CFR 52.21(aa) shall mean the Permit Board.

B.     Optional Pre-Permit Construction. Pre-permit construction approval is available for new moderate stationary sources, new minor stationary sources, minor modifications, and moderate modifications except those sources and modifications excluded from this provision in 9. below. The applicant may request the Permit Board for approval to commence construction or modification of qualifying sources before receiving the required permit to construct.  To obtain the Permit Board's pre-construction approval, the applicant shall satisfy the following requirements:

   (1)     The applicant shall apply for a permit to construct or optional Title V permit modification in accordance with D. below.

   (2)     The applicant shall submit a pre-permit construction approval application which must contain, but not be limited to (a) a letter requesting approval to construct before obtaining the required permit to construct, (b) a copy of the notice referenced in 4. below, (c) proof of eligibility, (d) process description(s), (e) equipment list(s), (f) proposed emission limits, (g) proof that buffer zone requirements in Rule 2.2.B.(14) are met, (h) certification that construction is at the applicant's own risk, and (i) certification that the applicant shall not contest the final permit to construct or Title V permit modification decision based on the fact that construction has already begun.

   (3)     An applicant seeking enforceable limitations on a source's potential to emit such as to qualify as a moderate stationary source or a moderate modification must describe in detail in the pre-permit construction application the proposed restrictions and certify that the applicant will comply with the restrictions, including any applicable monitoring and reporting requirements.

   (4)     The applicant shall provide notice to the public of the application for pre-permit construction approval by notice published in a newspaper of general circulation in the county(ies) in which the stationary source is or will be located.  The notice shall be in the format provided by DEQ and shall include (a) a general description of the proposed source or modification, (b) a statement that pre-permit construction approval is being requested from the Permit Board, (c) the location and address where additional information about the proposed source or modification and application may be obtained, (d) a statement that comments may be made to DEQ, and (e) DEQ's address where comments may be submitted; and shall provide at least ten (10) days for the public to comment to the Permit Board.  Notarized proof of

publication of the notice shall be included in the application for pre-permit construction approval.

(5)     After determination that all requirements have been met and after sufficient time for receipt of all public comments submitted during the ten-day public notice, the Permit Board may grant pre-construction permit approval.

(6)     Upon receipt of the pre-permit construction approval letter issued by the Permit Board, the applicant may begin construction at his own risk.  Upon issuance of the pre-permit construction approval letter, any and all potential to emit limitations addressed in the pre-permit construction application shall become enforceable.  The applicant cannot operate the new source or emissions units included in the proposed modification until issued the final permit to construct or Title V permit modification and until certification of construction in accordance with Rule 2.5.D. where applicable.  This provision applies even if the source is excluded from the requirement to obtain a permit to operate.

(7)     Issuance of the pre-permit construction approval letter shall have no bearing on the issuance or denial of the final permit to construct or Title V permit modification.  If the final permit to construct is denied and/or the Title V permit modification is denied, the applicant must cease construction and follow the procedures allowed by law and regulations, for any appeal.  The fact that construction has already begun and that approval was granted for pre-permit construction shall not be a basis for appeal of the Permit Board's decision.

(8)     The Permit Board may deny the pre-permit construction approval application or revoke an existing pre-permit construction approval for any reason it deems valid including objection(s) from the public.  Denial/revocation of the pre-permit construction approval application shall have no bearing on the issuance or denial of a final permit to construct or Title V permit modification.

(9)     Pre-permit construction approval is not available for new major stationary sources, major modifications, medical waste incinerators or hazardous waste incinerators or any modification involving medical waste incineration or hazardous waste incineration, and new stationary sources or modifications meeting the definition of "constructing or reconstructing" a major source of hazardous air pollutants in Commission "Air Toxics Regulations," Miss. Admin. Code, Title 11, Part 2, Chapter 8, and 40 CFR Part 63, Subpart B and thereby requiring a case-by-case Maximum Achievable Control Technology (MACT) determination

C.     Optional Title V Permit Modification

For a modification of a source holding a valid Title V permit, a Permit to Construct may be issued as a modification of the Title V permit as an alternative to a new Permit to Construct. All requirements for a permit to construct are still applicable and the Title V permit modification must occur prior to beginning construction unless pre-permit construction approval is granted in accordance with C. above. If the applicant has been granted pre-permit construction approval, the Title V permit must be modified before beginning operation.

|  | Date Submitted to EPA | Date Approved by EPA | Federal Register |
|---|---|---|---|
| Original Reg: | AUG 10, 2005 | JULY 10, 2006 | 71 FR 38773 |
| 1st Revision | NOV 21, 2016 | JUN 14, 2017 | Letter Notice |
| 2nd Revision |  | FEB 21, 2020 | 85 FR 10070 |

**Rule 2.16      PERMIT TRANSFER**

A.      "Transfer" shall mean any sale, conveyance, or assignment of the rights held by the applicant in any permit issued pursuant to these Regulations which meets the conditions of both 1. and 2. below:

(1)      There is a change of more than 50 percent of the equity ownership of the permit holder over a sustained period which results in a new majority owner.  A new majority owner for purposes of this provision shall be an individual, partnership, company, or group of affiliated companies.

(2) The change in the ultimate ownership of the permit holder involves the parent, grandparent, or great grandparent company.

B.      A permit issued pursuant to these Regulations shall not be transferred except upon approval of the Permit Board.

C.      When requested by the Permit Board, an applicant for transfer approval shall submit information to demonstrate that it has the financial resources, operational expertise and environmental compliance history over the last five years to ensure compliance with the terms and conditions of the permit to be transferred except where this conflicts with State Law.

D.      The application for approval of the transfer may be combined with an early application for permit renewal.

| | Date Submitted to EPA | Date Approved by EPA | Federal Register |
|---|---|---|---|
| Original Reg: | JUN 14, 1991 | SEP 15, 1994 | 59 FR 47258 |
| 1st Revision: | JAN 26, 1994 | MAY 2, 1995 | 60 FR 21442 |
| 2nd Revision | AUG 10, 2005 | JULY 10, 2006 | 71 FR 38773 |
| 3rd Revision | NOV 21, 2016 | JUN 14, 2017 | Letter Notice |
| 4th Revision | | FEB 21, 2020 | 85 FR 10070 |

**Rule 2.17      SEVERABILITY**

If any provision, section, subsection, sentence, clause or phrase of any of these regulations, or the application of same to any person or set of circumstances is for any reason challenged or held to be invalid or void, the validity of the remaining regulations and/or portions thereof or their application to other persons or sets of circumstances shall not be affected thereby.

|  | Date Submitted to EPA | Date Approved by EPA | Federal Register |
|---|---|---|---|
| Original Reg: | JAN 26, 1994 | MAY 2, 1995 | 60 FR 21442 |
| 1st Revision | AUG 10, 2005 | JULY 10, 2006 | 71 FR 38773 |
| 2nd Revision | NOV 21, 2016 | JUN 14, 2017 | Letter Notice |
| 3rd Revision |  | FEB 21, 2020 | 85 FR 10070 |