# ATTACHMENT 28

**SOUTHERN
ENVIRONMENTAL
LAW
CENTER**

1033 Demonbreun Street, Suite 205
Nashville, TN 37203

Telephone 615-921-9470
Facsimile 615-921-8011

April 9, 2026

*Via Email and Certified Mail:*
Chris Wells
Executive Director
Mississippi Department of Environmental Quality
P.O. Box 2261
Jackson, MS 39225
CWELLS@mdeq.ms.gov

**RE:** **Petition for Hearing on Prevention of Significant Deterioration Permit to Construct No. 0680-00119 for MZX Tech, LLC.**

Executive Director Wells:

Pursuant to 11 Code Miss. R. Pt. 1, R. 6.5(A), the National Association for the Advancement of Colored People ("NAACP"), Young, Gifted & Green, and the Safe and Sound Coalition (together, "Petitioners") hereby petition for a formal evidentiary hearing regarding Prevention of Significant Deterioration ("PSD") Permit No. 0680-00119 (the "PSD Permit") for MZX Tech, LLC ("MZX"), issued by the Permit Board on March 10, 2026.

Petitioners intend to raise significant permit deficiencies that render the PSD Permit unlawful, including but not limited to the following material defects and errors:

1. Mississippi Department of Environmental Quality ("MDEQ") violated Mississippi law by failing to require emissions offsets that would mitigate MZX's major emissions in an area failing to meet EPA's ambient air quality standards;

2. MDEQ unlawfully issued the PSD Permit despite inadequate and deficient PSD air dispersion modeling; in particular, MDEQ acted contrary to law and arbitrarily and capriciously by, among other issues:
   a. Allowing MZX to omit numerous nearby polluting sources from its modeling, thereby underestimating pollution impacts, and,
   b. Allowing MZX to utilize less-than-maximum emission rates from the largest nearby emitter, thereby underestimating pollution impacts.

   As a result, MZX failed to satisfy core PSD requirements and the public and Permit Board lacked adequate information concerning whether MZX will cause unacceptable violations of air quality standards.

3. MDEQ violated the Clean Air Act and Mississippi law by failing to consider cleaner turbines under the Act's Best Available Control Technology requirements, meaning MZX's largest turbines would be allowed to emit some pollutants at twice the rate of cleaner turbines.

Charlottesville    Chapel Hill    Atlanta    Asheville    Birmingham    Charleston    Nashville    Richmond    Washington, DC

MDEQ
April 9, 2026
Page 2

    4.   The MDEQ Permit Board violated the Mississippi Open Meetings Act by failing to follow appropriate procedures, including failing to describe with sufficient specificity the basis for going into executive session during deliberation of the PSD Permit decision.[1]

## Brief Background

This Petition challenges MDEQ's development and issuance of the PSD Permit for MZX that would authorize 41 permanent turbines at the site located at 2875 Stanton Road, Southaven, Mississippi. The turbines would constitute the second largest fossil fuel-fired power plant in Mississippi and one of the largest emitters in the Memphis Metropolitan Area, an area which MDEQ's own permit documents confirm is violating EPA's National Ambient Air Quality Standard ("NAAQS") for ozone, also known as smog.[2]

Despite the scale of the MZX proposal and the region's poor existing air quality, MDEQ issued the PSD Permit in an extremely hurried fashion. MZX submitted its initial application on August 22, 2025, and revised application on January 14, 2026; MDEQ then released a draft permit and draft Preliminary Determination for public notice and comment on January 16, 2026. MDEQ denied multiple requests from community members seeking an extension due to the complexity of the permit and Winter Storm Fern, which heavily impacted North Mississippi and Memphis.

Even MDEQ's own staff recognized the rushed nature of the process and commented on the pressure they were under to issue this permit in an extremely expedited manner. In particular, on December 22, 2025, MDEQ's Air 1 Branch Chief wrote to EPA that "the directive from my upper management is that this permit needs to be at public notice by January 15th of [2026]."[3] EPA staff, meanwhile, commented in a separate thread about the "rush to get this permit finalized," going so far as to say that certain discrepancies with the PSD modeling "can be resolved during the public comment period."[4]

Most remarkably, just *thirteen business days after the close of the comment period*, MDEQ informed Petitioners that the agency had already decided to put the final permit issuance to a vote before MDEQ's Permit Board at a meeting to be held five days later.[5] This was despite

---

[1] As of the date of the filing of this Petition, the minutes from the March 10, 2026 Permit Board meeting have not been published on the Permit Board website. Petitioners' allegations regarding the Permit Board's actions at the March 10, 2026 meeting are therefore based upon information and belief.

[2] MDEQ, Pre-Construction Review and Preliminary Determination for Approval for MZX Tech LLC, Facility No. 0680-00119, at 18 (Mar. 5, 2026) (*see* chart titled "10 Year Ozone Monitoring Trends at all Mississippi Sites").

[3] Email from Jeffrey Bland, MDEQ, to Lorinda Shepard, Env't Prot. Agency, titled "MZX Draft and Preliminary Determination" (Dec. 22, 2025) (on file with author).

[4] Email from Sunday Gotvald, ENV'T PROT. AGENCY REGION 4, to Rodney Cuevas, MISS. DEP'T OF ENV'T QUALITY, titled "MZX Tech Modeling Files and Air Quality Analysis (AQA)" (Jan. 14, 2026) (on file with author).

[5] Email from Jaricus Whitlock, MDEQ, to Patrick Anderson, Southern Env't Law Center (Mar. 6, 2026).

MDEQ
April 9, 2026
Page 3

receiving hundreds of pages of complex legal and technical comments and supporting documents from Petitioners,[6] along with hundreds of other public comments (both written and oral comments: more than three hundred people attended MDEQ's hearing on the draft permit, and all public commenters opposed the permit). Despite the voluminous comments opposing the permit and identifying significant and numerous deficiencies, MDEQ purportedly had considered and responded to all of these in less than three weeks.

The Permit Board's meeting was likewise hasty and conducted in a manner contrary to public participation. The meeting at which the Permit Board considered the MZX permit was announced just five days prior to the hearing (which was held in Jackson, three hours from Southaven, and on a statewide election day, no less). Moreover, the Board apparently only received the 1,600-page permit record, including public comments and MDEQ's responses, on a Saturday three days before the hearing.[7] Finally, after hearing from numerous Southaven and Memphis residents who had made the journey to speak out against issuance of the permit, the Permit Board deliberated behind closed doors in an improper Executive Session before promptly voting to issue the final PSD permit.

In its rush to draft a PSD permit, consider and respond to public comments, and ultimately to issue MZX a final PSD permit, MDEQ erred in numerous, significant ways.

### Petition for Hearing

Under 11 Code Miss. R. Pt. 1, R. 6.5(A), "[a]ny interested party aggrieved by the Permit Board's issuance . . . or other permit action may request a formal evidentiary hearing in writing within 30 days after the date the Permit Board takes action upon permit issuance[.]" The petition for a hearing "should be brief and concise" and must contain: "a statement of the matter upon which action of the Board is desired; a statement of the petitioner's interest in the matter; a statement of how the petitioner is so situated that he or she will be affected by the action; and a statement of the relief sought." *Id.* at 6.5(E). This information is provided below.

### I.        Statement of the Matter Upon Which Action of the Board Is Desired.

---

[6] *See* Community Groups' Comments on the Mississippi Department of Environmental Quality's Draft Air Pollution Control and Prevention of Significant Deterioration (PSD) Authority Construction Permit (Air Ref. No. 0680-00119) for MZX Tech, LLC (Feb. 17, 2026). These comments were submitted by the Southern Environmental Law Center, the National Association for the Advancement of Colored People (NAACP), Memphis Community Against Pollution (MCAP), Young, Gifted & Green, Sierra Club, Safe and Sound Coalition, and the Climate Reality Project: Memphis and Mid-South Region Chapter. (hereafter, "Petitioners' Comments"). Petitioners' Comments are incorporated herein.

[7] According to an email from Jaricus Whitlock, MDEQ, to Patrick Anderson, SELC, as of Thursday, March 5, 2026, MDEQ's response to comments was "being finalized," and would be shared "via a SharePoint link as soon as it's ready." The response to comments was only shared on Saturday, March 7, 2026. Email from Jaricus Whitlock, MDEQ, to Patrick Anderson, SELC, titled "Re: MDEQ Notice of Permit Board Meeting" (Mar. 5, 2026) (on file with author).

MDEQ
April 9, 2026
Page 4

Petitioners request a formal hearing regarding the Permit Board's March 10, 2026, issuance of the PSD Permit to Construct No. 0680-00119 to MZX Tech, LLC. The PSD Permit and supporting material were prepared by MDEQ. MDEQ erred in numerous, material ways, and the issuance of the PSD Permit is therefore contrary to Mississippi law and the Clean Air Act and/or arbitrary and capricious. Those errors include, but are not limited to:

1. MDEQ violated Mississippi law by failing to require emissions offsets that would mitigate MZX's emissions in an area failing to meet EPA's ambient air quality standards. Under Mississippi's federally approved State Implementation Plan ("SIP"), new major sources proposing to construct facilities in areas where ambient air pollution is exceeding the NAAQS must obtain emission offsets before MDEQ can issue a permit, among other requirements set out in Petitioners' Comments. *See* 11 Pt. 2 Ch. 2 Miss. Code R. 2.5(E)(4).[8] MZX is located within DeSoto County, which is violating the 8-hour ozone NAAQS based on air monitoring data from DeSoto County; MZX is also located within the Memphis Metropolitan Statistical Area, which is likewise violating the 8-hour ozone NAAQS based on both the DeSoto County data and on other EPA monitoring data.[9] Because MDEQ failed to require offsets before issuing this permit and otherwise failed to comply with 11 Pt. 2 Ch. 2 Miss. Code R. 2.5(E)(4), issuance of the permit contravened Mississippi's rules and SIP.

2. MDEQ unlawfully issued the PSD Permit despite inadequate and deficient PSD air dispersion modeling. Under Mississippi's SIP and the Clean Air Act, new major PSD sources must demonstrate that their emissions will not cause or contribute to violations of the NAAQS through computer modeling of pollution dispersion. The MZX turbines are a major source of nitrogen oxides, including nitrogen dioxide ("$NO_2$"), and MZX therefore had to model ambient impacts to demonstrate compliance with the $NO_2$ NAAQS. This modeling was fundamentally flawed in numerous ways, including:

    a. MZX improperly omitted numerous nearby sources of pollution located within the facility's Significant Impact Area ("SIA"), as identified in Petitioners' Comments. This is contrary to all EPA modeling requirements and contravenes Mississippi's

---

[8] *See* Petitioners' Comments, *supra* n. 6, at 7-9.

[9] The Shelby County NCORE monitor, known as the "Shelby Farms site," has a certified design value of 73 ppb (2024), exceeding the NAAQS of 70 ppb (*See* Env't Prot. Agency, *Air Quality Design Values*, AIR TRENDS (last updated Aug. 28, 2025), https://www.epa.gov/air-trends/air-quality-design-values ("Ozone Design Values, 2024"). That same monitor's 2025 ozone value (4th highest 8-hour concentration) is 74 ppb.

MDEQ
April 9, 2026
Page 5

   own modeling guidance.[10] Moreover, these omissions ran afoul of MZX's own description of its modeling, which claimed incorrectly that "[a]ll nearby sources of the pollutant within the Significant Impact Area (SIA) were included in the modeling regardless of the level of emissions."[11]

b.   MZX also utilized less-than-maximum emission rates from the largest nearby $NO_2$ emitter, Texas Gas Transmission, LLC, thereby underestimating pollution impacts. EPA requirements are clear that nearby sources must be modeled using the maximum permitted emission rate, especially when modeling for compliance with short-term NAAQS like the 1-hour $NO_2$ at issue here. MZX improperly utilized substantially lower emission rates, omitting hundreds of tons of emissions in the process.

   MDEQ arbitrarily and capriciously acted in contrary to law by approving the MZX modeling containing these and other deficiencies identified in Petitioners' Comments. As a result, MZX's modeling not only contravened PSD requirements, but failed to assess the full impact of the facility's emissions and likely masked unacceptable NAAQS violations.

   MDEQ's Response to Comments on these issues, moreover, hallucinated entire legal citations or otherwise wholly misstated applicable requirements in a manner that would mislead the Permit Board,[12] and thus MDEQ's defective Response to Comments is an independent ground to object to the permit issuance.

3.   MDEQ violated the Clean Air Act and Mississippi law by failing to consider cleaner turbines under the Act's Best Available Control Technology ("BACT") requirements. In particular, BACT must represent the "the maximum degree of reduction for each regulated" pollutant unless unique economic or other impacts dictate otherwise, and EPA has established a five-step process for identifying and selecting BACT. Step one of the BACT process must include identifying all "inherently lower-emitting processes/practices" as well as add-on pollution control technology for consideration in

---

[10] In particular, MDEQ hosts a website on PSD modeling that includes a discussion of "nearby sources," which in turn adopts North Carolina's rules on nearby sources by reference. *See* MDEQ, *NSR Air Quality Modeling*, https://www.mdeq.ms.gov/air/nsr-air-quality-modeling-2/ ("The 'North Carolina 20D Rule' can be applied to the emissions inventory to determine sources which are not expected to cause a significant concentration gradient."). North Carolina's PSD modeling requirements, meanwhile, state that "[a]ll nearby sources located within the significant impact area (SIA) shall be modeled for NAAQS." *See* North Carolina Department of Environmental Quality, *North Carolina Prevention of Significant Deterioration Modeling Guidance, Appendix D*, at 32 (July 1, 2020), https://www.deq.nc.gov/water-quality/aquifer-protection/afo/permits/mets/nc-psd-modeling-guidance-20200701/download.

[11] Trinity Consultants, *PSD Permit Application, Volume II – Modeling Report*, at 2-17 (Dec. 2025) (hereafter "MZX PSD Application Vol. 2").

[12] *See, e.g.*, MDEQ, *MDEQ Response to Comments* at 10-11 (2026) (MDEQ Response to Comments Nos. 6 and 7).

MDEQ
April 9, 2026
Page 6

the BACT determination.[13] MZX violated these requirements by failing to include lower-emitting turbines when conducting the BACT determination for eight of its largest turbines (the ProEnergy 50 MW turbines); these eight turbines are refurbished jet engines that are cheaper but dirtier than new turbines, and MZX failed to include new, lower-emitting turbines as an option in the BACT analysis. MDEQ's approval of MZX's BACT determinations for these turbines therefore run afoul of BACT requirements under the Clean Air Act and as incorporated into Mississippi's SIP.

4.  The MDEQ Permit Board violated the Mississippi Open Meetings Act, Miss. Code §§ 25-41-1, *et seq*., by improperly entering executive session to deliberate on the PSD Permit during the permit hearing on March 10, 2026. Under the Mississippi Open Meetings Act, all official meetings of any public body, such as a state agency, must always be open to the public unless an executive session is declared. Miss. Code § 25-41-5(1). "The reason for holding an executive session shall be stated in an open meeting…." Miss. Code Ann. § 25-41-7(3). An executive session may be called only for a limited list of reasons, and "may not be used to 'circumvent or defeat' the purpose of the Open Meetings Act, which is that public business be performed in an open and public manner, and that citizens be advised of and be aware of the performance of public officials and the deliberations and decisions that go into the making of public policy[.]" *Id.* § 24-41-7(3); *id.* § 25-41-1; *see also* <u>Gannett River States Pub. Corp. v. City of Jackson</u>, 866 So. 2d 462, 472 (Miss. 2004) (Dickinson, J., concurring) ("No doubt, some public bodies in this state, from time to time, may use the labels, 'executive session,' [] in artful attempts to circumvent the clear mandate of the Act. They shouldn't, and they should be on notice that this Court has a duty to ensure that the legislative intent of the Act is followed by rejecting such attempts, creative though they may be. We will.").

Upon information and belief, here the MDEQ Permit Board went into executive session for an unspecified reason to deliberate regarding the PSD Permit decision. After the MDEQ Permit Board came back into open session, they announced that they had gone into executive session due to "pending litigation."[14] The Open Meetings Act authorizes the use of executive session for "[s]trategy sessions or negotiations with respect to prospective litigation, litigation or issuance of an appealable order when an open meeting would have a detrimental effect on the litigating position of the public body." *Id.* § 25-41-7(4)(b). However, the MDEQ Permit Board provided no specificity regarding any purported litigation that was pending or MDEQ's role in any such litigation. The MDEQ Permit Board's lack of specificity in invoking the need for executive session violates the Open Meetings Act. *See* Miss. Code § 25-41-7(3) ("The reason for holding an executive session shall be stated in an open meeting, and the reason so stated shall be

---

[13] EPA, *Draft NSR Workshop Manual*, at B-10 (Oct. 1990), https://www.epa.gov/sites/default/files/2015-07/documents/1990wman.pdf.

[14] As previously noted, as of the date of the filing of this Petition, the minutes from the March 10, 2026 Permit Board meeting have not been published on the Permit Board website. Petitioners' allegations regarding the Permit Board's actions at the March 10, 2026 meeting are therefore based upon information and belief.

MDEQ
April 9, 2026
Page 7

recorded in the minutes of the meeting."); *Hinds Cnty. Bd. of Sup'rs v. Common Cause of Mississippi*, 551 So. 2d 107, 113-114 (Miss. 1989) (holding that county board must provide a "meaningful reason of sufficient specificity" to justify entering executive session); *Grimes v. Madison County Board of Education*, Open Meetings Case M-22-007, ¶¶ 2.3, 2.22, 3.1 (Miss. Ethics Comm'n July 7, 2023) (finding that the board violated Open Meetings Act by providing only generalized "litigation" justifications for executive sessions rather than "inform[ing] the public of the actual matter to be discussed with sufficient specificity"). Further, due to the lack of specificity, Petitioners are unable to assess the validity of the Permit Board's claimed need for executive session. *See Hinds Cnty.*, 551 So. 2d at 114 ("A meaningful reason is of sufficient specificity that the audience will at some later date be able to check it out.").

## II.      Statement of the Petitioners' Interest in the Matter.

All three petitioners have an interest in reducing air pollution from MZX and in ensuring that the permit MDEQ has issued fully complies with all Clean Air Act and comparable protections under Mississippi law, and that the MDEQ Permit Board followed the appropriate procedures in reaching its decision—including complying with the Open Meetings Act. As discussed below, each Petitioner is a nonprofit organization that works to protect the health and well-being of its members and citizens within the Memphis Metropolitan Area. To this end, all three Petitioners filed written comments during the comment period urging MDEQ to remedy the issues discussed above. Each Petitioner also had members and supporters who submitted individual comments and/or gave oral comments opposing the permit at the public hearing, and each Petitioner also had members or representatives present to speak at the Permit Board's hearing.

Each Petitioner's interest is further discussed below:

**NAACP** is a 501(c)(3) nonprofit membership organization whose mission includes the goal to "accelerate the well-being, education, and economic security of Black people and all persons of color."[15] The NAACP consists of numerous units, including the DeSoto County, Mississippi branch and the Shelby County, Tennessee branch. Both branches have numerous members who live, work, and recreate within the Significant Impact Area, as determined by MZX's modeling (see below), and the NAACP therefore has an interest in ensuring these particular members are not forced to breathe excess pollution caused by MDEQ's unlawful issuance of the PSD Permit. Moreover, all of the DeSoto County and Shelby County NAACP members have an interest in ensuring the ongoing ozone NAAQS violation is not worsened by MDEQ's unlawful issuance of this permit.

**Young, Gifted & Green** is a national 501(c)(3) nonprofit civil rights and environmental justice organization created to generate solutions to the nation's environmental and public health

---

[15] *We're on a Mission: Civil Rights and Social Justice for All,* NAACP, https://naacp.org/about/mission-vision (last visited April 8, 2026).

MDEQ
April 9, 2026
Page 8

crises, with a particular focus on environmental justice issues in Memphis.[16] Like NAACP, Young, Gifted & Green has supporters who live, work, and recreate within MZX's Significant Impact Area and within parts of Memphis that are violating the ozone NAAQS. Young, Gifted & Green thus has an interest in ensuring emissions from MZX are minimized or mitigated to the full extent required by law.

**Safe and Sound Coalition** is a Mississippi 501(c)(3) nonprofit organization comprising Mid-South residents raising concerns about the MZX power plant, including concerns about the impact of MZX's air pollution on the surrounding community's health and well-being. Like NAACP and Young, Gifted & Green, Safe and Sound Coalition has members who live, work, and recreate within MZX's Significant Impact Area and within parts of Memphis that are violating the ozone NAAQS. Safe and Sound Coalition therefore has an interest in ensuring emissions from MZX are minimized or mitigated to the fullest extent required by law.

Each Petitioner also has an interest in ensuring that the MDEQ Permit Board publicly deliberates regarding whether and on what conditions to issue the PSD Permit. Petitioners raised various concerns in their written and oral comments regarding the PSD Permit, and members and supporters of Petitioners traveled to Jackson to hear the Permit Board deliberate in public regarding the PSD Permit. By invoking executive session without explaining the basis for doing so with specificity, the MDEQ Permit Board deprived Petitioners of their right to have "the reason for holding an executive session [] be stated in an open meeting." Miss. Code § 25-41-7(3). Further, by deliberating behind closed doors, the MDEQ Permit Board deprived Petitioners of their right to deliberation of the "formation and determination of public policy." Miss. Code § 25-41-1.

### III.    Statement of How the Petitioner Is So Situated That He or She Will Be Affected by the Action.

Under the rules governing this Petition, "[a]ny interested party aggrieved by the Permit Board's issuance" of a permit may request a formal evidentiary hearing before the Permit Board within thirty days of the Board's action. 11 Code Miss. R. Pt. 1, R. 6.5(A); Miss. Code Ann. § 49-17-29(4)(b). As set out above, Petitioners qualify as an "interested party" and is so situated that they be "aggrieved" and "affected by the action" of the Permit Board issuing the PSD Permit.

Petitioners' members and supporters live, work, and recreate downwind from MZX and within the areas even MZX's own analysis has shown will experience a "significant impact"

---

[16] *Young, Gifted & Green*, https://www.younggiftedgreen.org/ (last visited April 8, 2026).

MDEQ
April 9, 2026
Page 9

from the facility's air pollution. MZX's projected Significant Impact Area is reproduced below, showing impacts extending to a large part of the Memphis Metropolitan area:[17]



Figure A-2. 1-Hour $NO_2$ SIL Results
(SIL = 7.5 µg/m³)

Some of Petitioners' members and supporters live close enough to hear the existing unpermitted turbines; while others live between a mile and ten miles from the facility, where secondary pollution impacts like ozone and secondary fine particulate matter pollution are likely to be heightened by MZX's emissions. All of these members and supporters, meanwhile, live

---

[17] MZX PSD Application Vol. 2, *supra* n. 11, at Appendix A: Figures, Figure A-2 (Dec. 2025; submitted to MDEQ Dec. 27, 2025). We note that this version of the SIA, which extends approximately 20 km from the site, is substantially smaller than the version of the SIA included in the same document submitted to MDEQ on December 23, which showed significant impacts extending to 49 km. The reason for the decreased size of the SIA is not apparent from the record available to Petitioners and we do not concede that the smaller version of the SIA is accurate.

MDEQ
April 9, 2026
Page 10

within DeSoto or Shelby County, where EPA's certified monitoring data show violations of the ozone NAAQS.

Petitioners' members and supporters fear that increased emissions of ozone-precursors like $NO_x$ and VOCs from MZX will worsen the region's ongoing ozone problem. This will have negative impacts on Petitioners' quality of life by, for instance, causing more so-called "Code Orange" days in the greater Memphis area. The members and supporters are likewise fearful that significant increases of pollutants like nitrogen dioxide and, relatedly, fine particulate matter, will worsen air quality and threaten their health. Members and supporters are also concerned about exposure to carcinogenic formaldehyde. As a result of these concerns over MZX's emissions, Petitioners' members and supporters are further concerned that they will need to limit their outdoor recreation and take steps to protect their indoor air quality.

Given the foregoing, Petitioners are "aggrieved" and "affected by the action" of MDEQ's issuance of the permit without fully complying with relevant law meant to minimize emissions and otherwise safeguard public health.

Petitioners are also "aggrieved" and "affected by the action" taken by the MDEQ Permit Board to deliberate in executive session without describing the basis for doing so with sufficient specificity. As described in the Sections above, Petitioners participated in this permitting process in good faith to protect their health and well-being from excess pollution. Petitioners have identified several deficiencies in the PSD Permit. The MDEQ Permit Board's failure to explain the basis for entering executive session aggrieved Petitioners by depriving them of the right to evaluate whether that basis was proper, and to hear the Permit Board's deliberations that resulted in the issuance of the PSD Permit.

## IV.     Statement of the Relief Sought.

For each of the foregoing reasons, Petitioners request that the Board grant the following relief:

1.  Reverse the prior decision to issue the PSD Permit.
2.  Revoke or vacate the permit or stay its effectiveness until such time as:
    a.  MZX obtains emissions offsets required under law;
    b.  MZX conducts new PSD ambient air quality modeling free from the deficiencies set out above;
    c.  MZX conducts a new BACT analysis that includes all appropriate control measures, including inherently cleaner turbines;
    d.  MDEQ has conducted additional notice and comment on a revised permit and permit record reflecting the foregoing; and
    e.  The MDEQ Permit Board complies with the Open Meetings Act with respect to this PSD Permit.
3.  In the alternative, issue an Order finding that MDEQ's permit and permitting procedures were unlawful and/or arbitrary and capricious, reversing the prior

MDEQ
April 9, 2026
Page 11

decision to issue the PSD Permit, and vacating or remanding the permit to MDEQ to remedy the deficiencies discussed herein.

4. Any other relief the MDEQ Permit Board finds appropriate.

Respectfully submitted,

Carroll Rhodes
Law Offices of Carroll Rhodes
119 Downing St.
Post Office Box 588
Hazlehurst, MS 39083
601-894-4223
crhode@bellsouth.net

*/s/ Patrick J. Anderson*
Patrick J. Anderson*
Senior Attorney
Southern Environmental Law Center
Ten 10th Street, NW, Suite 1050
Atlanta, Georgia 30309
404-521-9900
panderson@selc.org

*/s/ Amanda Garcia*
Amanda Garcia**
Senior Attorney
Southern Environmental Law Center
1033 Demonbreun Street, Suite 205
Nashville, Tennessee 37203
615-921-9470
agarcia@selc.org

*\*Licensed in the State of Georgia*
*\*\*Licensed in the State of Tennessee*
*(Pro hac vice applications to be submitted)*

*Attorneys for National Association for the Advancement of Colored People and Young, Gifted & Green*

cc: Anderson Thomas, Representative for MDEQ Legal Department, athomas@mdeq.ms.gov