**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

| | | |
|---|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE and MISSISSIPPI STATE CONFERENCE OF THE NAACP, | § § § § § | |
| | § | |
| *Plaintiffs*, | § | Case No. 3:26-cv-00074-DMB-JMV |
| v. | § | |
| | § | |
| X.AI CORP. and MZX TECH LLC, | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

Daniel W. Van Horn (MS Bar No. 102105)
BUTLER SNOW LLP
6075 Poplar Ave., Suite 500
Memphis, TN 38187
(901) 680-7331
danny.vanhorn@butlersnow.com

P. Ryan Beckett (MS Bar No. 99524)
Keri E. Herrington (MS Bar No. 106815)
BUTLER SNOW LLP
1020 Highland Colony Pkwy., Suite 1400
Ridgeland, MS 39157
(601) 948-5711
(601) 948-5177
keri.herrington@butlersnow.com
ryan.beckett@butlersnow.com

Patrick D. Traylor*
Jeremy C. Marwell*
VINSON & ELKINS LLP
2200 Pennsylvania Ave. NW
Suite 500 West
Washington, D.C. 20037
(202) 639-6500
ptraylor@velaw.com
jmarwell@velaw.com

Michael B. Buschbacher*
James R. Conde*
Taylor M. Myers*
Walker Fortenberry*
BOYDEN GRAY PLLC
800 Connecticut Ave. NW, Suite 900
Washington, D.C. 20006
(202) 955-0620
mbuschbacher@boydengray.com
jconde@boydengray.com
tmyers@boydengray.com
wfortenberry@boydengray.com

*Attorneys for X.AI Corp. and MZX Tech LLC*

*\*Pro Hac Vice*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ...................................................................................................................1

ARGUMENT ...........................................................................................................................1

I. The NAACP Sues on Behalf of Its Members, Which Is Not "On [Its] Own Behalf." .........................................................................................................................1

II. Plaintiffs' Permit Counts (1 and 2) Fail to State Claims. ......................................5

    A. The Portable Turbines Are Exempt under the State Implementation Plan. ............5

    B. Defendants Lacked Fair Notice. ...........................................................................8

III. The Citizen-Suit Provision Violates Article II and the Private Nondelegation Doctrine ....................................................................................................................10

CONCLUSION ......................................................................................................................16

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acheson Hotels, LLC v. Laufer*,
601 U.S. 1 (2023)........................................................................................................14

*In re Aiken County*,
725 F.3d 255 (D.C. Cir. 2013) ....................................................................................16

*Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*,
389 F.3d 536 (6th Cir. 2004) .........................................................................................2

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler*,
178 F.3d 350 (5th Cir. 1999) .........................................................................................3

*Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc.*,
299 F.3d 1007 (9th Cir. 2002) .......................................................................................8

*Carter v. Carter Coal Co.*,
298 U.S. 238 (1936)......................................................................................................11

*CFTC v. EOX Holdings, LLC*,
90 F.4th 439 (5th Cir. 2024) .......................................................................................10

*CleanCOALition v. TXU Power*,
536 F.3d 469 (5th Cir. 2008) .........................................................................................8

*Coho Salmon v. Pac. Lumber Co.*,
30 F. Supp. 2d 1231 (N.D. Cal. 1998) ..........................................................................4

*CSX Transp., Inc. v. Ala. Dep't of Revenue*,
562 U.S. 277 (2011)........................................................................................................7

*DeSoto County v. T.D.*,
160 So. 3d 1154 (Miss. 2015).........................................................................................8

*Doe v. X Corp.*,
821 F. Supp. 3d 632 (N.D. Tex. 2026) .......................................................................6, 7

*Ellis v. Gallatin Steel Co.*,
390 F.3d 461 (6th Cir. 2004) ...................................................................................11, 13

*Env't Conserv. Org. v. City of Dallas*,
529 F.3d 519 (5th Cir. 2008) .........................................................................10, 11, 12, 13

ii

Case: 3:26-cv-00074-DMB-JMV Doc #: 100 Filed: 07/24/26 4 of 25 PageID #: 3067

*EPA v. City of Green Forest*,
921 F.2d 1394 (8th Cir. 1990) ...................................................................................11, 12

*ExxonMobil Pipeline Co. v. DOT*,
867 F.3d 564 (5th Cir. 2017) ...........................................................................................9

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012).........................................................................................................9

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024).....................................................................................................3, 4

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000)...........................................................................................11, 14, 15

*FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd.*,
146 S. Ct. 1546 (2026)...................................................................................................12

*Gates & Fox Co. v. OSHRC*,
790 F.2d 154 (D.C. Cir. 1986) ........................................................................................9

*Gen. Elec. Co. v. EPA*,
53 F.3d 1324 (D.C. Cir. 1995) ........................................................................................9

*Graham Cnty. Soil & Water Conserv. Dist. v. United States ex rel. Wilson*,
559 U.S. 280 (2010).........................................................................................................7

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
484 U.S. 49 (1987).........................................................................................................12

*Heckler v. Chaney*,
470 U.S. 821 (1985).......................................................................................................16

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977).........................................................................................................3

*Inhance Techs., LLC v. EPA*,
96 F.4th 888 (5th Cir. 2024) ...........................................................................................6

*Little Hocking Water Ass'n, Inc. v. E.I. du Pont de Nemours & Co.*,
91 F. Supp. 3d 940 (S.D. Ohio 2015) .............................................................................2

*Mayor of Georgetown v. Alexandria Canal Co.*,
37 U.S. (12 Pet.) 91 (1838)...........................................................................................15

*Medina v. Planned Parenthood South Atlantic*,
606 U.S. 357 (2025).......................................................................................................12

iii

*Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*,
    453 U.S. 1 (1981)................................................................................................11

*Miller v. BAC Home Loans Servicing, L.P.*,
    726 F.3d 717 (5th Cir. 2013) ..............................................................................8

*Nat'l Parks & Conserv. Ass'n, Inc. v. TVA*,
    502 F.3d 1316 (11th Cir. 2007) ..........................................................................11

*Nev. Emps.' Ass'n, Inc. v. Bryan*,
    916 F.2d 1384 (9th Cir. 1990) ............................................................................5

*United States ex rel. Polansky v. Exec. Health Res., Inc.*,
    599 U.S. 419 (2023)....................................................................................14, 15

*Pope v. Brock*,
    912 So. 2d 935 (Miss. 2005).............................................................................8

*Reed v. Marshall*,
    142 F.4th 338 (5th Cir. 2025) .............................................................................4

*Residents of Gordon Plaza, Inc. v. Cantrell*,
    25 F.4th 288 (5th Cir. 2022) ..............................................................................10

*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020)....................................................................................10, 11

*Sierra Club v. Aluminum Co. of Am.*,
    585 F. Supp. 842 (N.D.N.Y. 1984)....................................................................4

*Sierra Club v. Franklin Cnty. Power of Ill., LLC*,
    546 F.3d 918 (7th Cir. 2008) ..............................................................................13

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)............................................................................................15

*StarLink Logistics, Inc. v. ACC, LLC*,
    101 F.4th 431 (6th Cir. 2024) .............................................................................10

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)..........................................................................................1, 2

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    600 U.S. 181 (2023)........................................................................................2, 16

*Texas v. EPA*,
    690 F.3d 670 (5th Cir. 2012) ..............................................................................5

*Trump v. Slaughter*,
   609 U.S. __, 2026 WL 1855612 (2026)................................................................13, 16

*United Food & Commercial Workers Union, Local 1564 v. Albertson's, Inc.*,
   207 F.3d 1193 (10th Cir. 2000) ................................................................................4, 5

*United States v. Cinergy Corp.*,
   623 F.3d 455 (7th Cir. 2010) ......................................................................................7

*United States v. Hoechst Celanese Corp.*,
   128 F.3d 216 (4th Cir. 1997) ...............................................................................9, 10

*United States v. Minor*,
   121 F.4th 1085 (5th Cir. 2024) ...................................................................................6

*United States v. Students Challenging Regul. Agency Procs.*,
   412 U.S. 669 (1973)...................................................................................................15

*United States v. Texas*,
   599 U.S. 670 (2023)...................................................................................................16

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
   529 U.S. 765 (2000)...................................................................................................14

*Warth v. Seldin*,
   422 U.S. 490 (1975).....................................................................................................3

*Webster v. Fall*,
   266 U.S. 507 (1925).....................................................................................................4

*Weiler v. Chatham Forest Prods.*,
   392 F.3d 532 (2d Cir. 2004)........................................................................................8

**Statutes**

15 U.S.C. § 15(a) ..............................................................................................................15

42 U.S.C. § 2000e-5..........................................................................................................15

42 U.S.C. § 7604(a) ......................................................................................................1, 13

42 U.S.C. § 7604(a)(3).................................................................................................12, 13

42 U.S.C. § 7604(b)(1)(A)................................................................................................12

42 U.S.C. § 7604(b)(1)(B)................................................................................................12

42 U.S.C. § 7604(c)(3)......................................................................................................12

42 U.S.C. § 7604(g) ...............................................................................................................12

**Regulations**

40 C.F.R. § 51.50 ...................................................................................................................6

40 C.F.R. § 51.165(a)(1)(iii) ..................................................................................................8

40 C.F.R. § 51.165(a)(1)(viii) ................................................................................................8

40 C.F.R. § 52.01 ...................................................................................................................6

40 C.F.R. § 52.21 ...................................................................................................................6

40 C.F.R. § 52.21(b)(18) ........................................................................................................7

11 Pt. 2 Ch. 2 Miss. Code R. 2.13(D)(3) ...............................................................................5

11 Pt. 2 Ch. 2 Miss. Code R. 2.13(D)(5) ...............................................................................7

11 Pt. 2 Ch. 2 Miss. Code R. 2.13(D)(6) ...............................................................................7

11 Pt. 2 Ch. 2 Miss. Code R. 2.13(D)(7) ...............................................................................7

11 Pt. 2 Ch. 2 Miss. Code R. 2.13(D)(12) .............................................................................7

11 Pt. 2 Ch. 2 Miss. Code R. 2.13(D)(13) .............................................................................7

11 Pt. 2 Ch. 2 Miss. Code R. 2.13(D)(15) .............................................................................7

11 Pt. 2 Ch. 5 Miss. Code R. 5.2 ...........................................................................................6

**Other Authorities**

2B Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes and Statutory Construction* (7th ed. Nov. 2025 update).................................................................................6

Fed. R. Civ. P. 23(a) ..............................................................................................................4

S. Rep. No. 91-1196 (1970).....................................................................................................2

## INTRODUCTION

Plaintiffs seek to interfere with the permitting and enforcement decisions of the government bodies that Congress charged with administering the Clean Air Act. They have no right to do so. According to Plaintiffs, their wishes overcome the federal government's determination that this suit is not in the public interest. Their perspective overrides the Mississippi Department of Environmental Quality's ("MDEQ's") determination that Defendants' temporary mobile generators are not stationary sources that require air permits under the Mississippi State Implementation Plan ("SIP"). In Plaintiffs' telling, Defendants had to follow their wishes and somehow get permits no matter what MDEQ said. These practical problems demonstrate the core defect with Plaintiffs' suit—Plaintiffs wish to sue on behalf of others, whether for their members or by stepping into the shoes of the government itself. Neither the statute nor Article II allow them to do so.

## ARGUMENT

## I. The NAACP Sues on Behalf of Its Members, Which Is Not "On [Its] Own Behalf."

The Clean Air Act provides that "any person" can bring a citizen suit "on his own behalf." 42 U.S.C. § 7604(a). But "Plaintiffs sued because [Defendants' alleged] pollution interferes with how *their members* use *their* land and harms *their* health." Pls.' Opp. at 29, Doc. 90 (emphases added). Indeed, the NAACP admits that it is suing "*solely* as the representative of its members." Pls.' PI Reply at 4, Doc. 97 (emphasis added). Because the best reading of the Clean Air Act is that an association may "vindicate only its own interests as an organization, and not the interests of its individual members," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 n.6 (1998) (noting concern), Plaintiffs' representative suit must be dismissed.

Plaintiffs raise several counterarguments for why the statutory text does not mean what it says. None are persuasive. ***First***, Plaintiffs argue that the NAACP can sue on behalf of its members because the Clean Air Act defines "person" to include "association[s]." Pls.' Opp. at 14. But no

1

one disputes that associations are "persons" under the Act. The word "person" answers *who* may sue; the phrase "on his own behalf" answers *in what capacity* such a person may sue. The point is that no "person" can bring suit on behalf of someone else. An individual thus cannot bring a class action under the Clean Air Act even though he too is a "person." *See* S. Rep. No. 91-1196, at 38 (1970) (recognizing class actions are not allowed). The same is true for an association, which can sue "to vindicate only its own interests as an organization." *Steel Co.*, 523 U.S. at 104 n.6. This does not make the citizen suit provision "an empty promise," Pls.' Opp. at 2: associations can and often do bring environmental claims "on their own behalf" based on injuries to their property, their operations, or their informational interests.[1] And the members whose land use and health Plaintiffs seek to represent are themselves "person[s]" who remain free to sue "on [their] own behalf."

**Second**, Plaintiffs argue that the distinction between suits brought on behalf of an association's members and those brought on the organization's own behalf is a false dichotomy. Not so: "In cases like these, where the plaintiff is an organization, the standing requirements of Article III can be satisfied in two ways. Either the organization can claim that it suffered an injury in its own right or, alternatively, it can assert 'standing solely as the representative of its members.'" *Students for Fair Admissions, Inc.* ("*SFFA*") *v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023). According to Plaintiffs, however, when "an association sues to protect the interests of its members, it is protecting its own interests and therefore commencing an action on its 'own behalf.'" Pls.' Opp. at 14. This conflates two distinct concepts from associational standing under Article III: germaneness and injury. The "connection between an association's interest and the interests of its members," *id.* at 14, is *Hunt*'s germaneness prong, which asks whether the lawsuit's

---

[1] *See, e.g.*, *Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 540 (6th Cir. 2004) (informational injury); *Little Hocking Water Ass'n, Inc. v. E.I. du Pont de Nemours & Co.*, 91 F. Supp. 3d 940, 953 (S.D. Ohio 2015) (damage to the association's property).

subject relates to the organization's purpose. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). But germaneness has never meant that the members' injuries become the association's own. On the contrary, "[e]ven *in the absence of injury to itself*, an association may have standing solely as the representative of its members." *Warth v. Seldin*, 422 U.S. 490, 511 (1975) (emphasis added).

When an association "sue[s] on its own behalf," it must satisfy "the same [Article III] standing test" itself—the organization's members don't come into the analysis. *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 356 (5th Cir. 1999). Plaintiffs may have an ideo-logical interest in advancing the policy goals of their members. *See* Pls.' Opp. at 15. But they cannot sue on their own behalf based on the theory that a defendant has "'impaired' their 'ability to provide services and achieve their organizational missions.'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024).

***Third***, Plaintiffs argue that *Steel Co.* draws the line in the wrong place, offering two alter-native "functions" for the phrase "on his own behalf" that they say should be adopted over the text's plain and ordinary meaning. First, Plaintiffs suggest that "on his own behalf" merely ex-cludes suits on behalf of "the public at large." Pls.' Opp. at 15 (citing *Conserv. L. Found. of New England, Inc. v. Browner*, 840 F. Supp. 171, 175 (D. Mass. 1993)). Second, Plaintiffs argue that "on his own behalf" excludes only "class action suits." Pls.' Opp. at 15 (citing *Sierra Club v. Aluminum Co. of Am.*, 585 F. Supp. 842, 847–48 (N.D.N.Y. 1984)).

Defendants agree that the Clean Air Act does not allow either public suits generally or class actions. But Plaintiffs do not explain why the associational claims they bring are any different. If anything, class actions are less fraught than associational standing actions since at least there the named plaintiffs must themselves have a claim to bring on their own behalf *before* they can act

3

"on behalf of" others. Fed. R. Civ. P. 23(a); *cf. All. for Hippocratic Med.*, 602 U.S. at 402 (Thomas, J., concurring) (associational standing subverts class action requirements).

**Fourth**, Plaintiffs argue that this Court should ignore *Steel Co.*'s language as dicta and instead follow non-binding assertions in various lower court cases. Pls.' Opp. at 15–16. This is backwards. *Steel Co.*'s reading comports with the plain meaning of the statutory text.[2] And neither district court opinions nor out-of-circuit rulings bind this Court.

The only case Plaintiffs cite that actually engaged with *Steel Co.*'s analysis is *Coho Salmon v. Pacific Lumber Co.*, 30 F. Supp. 2d 1231, 1239 (N.D. Cal. 1998), but that case confused Article III standing with statutory standing. Statutory standing "has nothing to do with whether there is a case or controversy under Article III." *Reed v. Marshall*, 142 F.4th 338, 343 (5th Cir. 2025) (quoting *Steel Co.*, 523 U.S. at 97). "The question … of organizational standing generally is irrelevant in light of [a] specific statutory bar on representative actions." *United Food & Commercial Workers Union, Local 1564 v. Albertson's, Inc.*, 207 F.3d 1193, 1201 (10th Cir. 2000). *Coho Salmon* therefore provides no support for disregarding *Steel Co.*'s statement.

**Fifth**, the Tenth Circuit's decision in *Albertson's* read materially identical language in the Fair Labor Standards Act—"in behalf of himself"—to bar representational suits by unions, even though they also represent employees. 207 F.3d at 1200. Plaintiffs' argument that the holding rested on the word "employees" is incorrect. Pls.' Opp. at 17. The statute authorized suit "'by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.'" *Albertson's*, 207 F.3d at 1200 (quoting 29 U.S.C. § 216(b)). That phrase was written

---

[2] Indeed, most of the cases Plaintiffs cite in support (*Laidlaw*, *Decker*, *Texans United*, Pls.' Opp. at 16) say nothing about the "on his own behalf" limitation. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided." *Webster v. Fall*, 266 U.S. 507, 511 (1925). The few cases that do discuss the statutory text do not follow the text. *See, e.g.*, *Aluminum Co. of Am.*, 585 F. Supp. at 845 (dismissing the statutory argument as "hypertechnical").

specifically to foreclose "representative actions, including union actions." *Id.* In other words, "in behalf of" confers statutory standing on the entity named ("employees" in *Albertson's*; "any person" in the Clean Air Act), not some association. It likewise has nothing to do with the *constitutional* test for associational standing. *Id.* at 1201; *see also Nev. Emps.' Ass'n, Inc. v. Bryan*, 916 F.2d 1384, 1392 (9th Cir. 1990) ("[T]he issue of standing is irrelevant.").

The NAACP is not suing "on [its] own behalf," and it therefore lacks statutory standing. Because "on his own behalf" does not mean "on behalf of others," Plaintiffs' claims must be dismissed.

## II.     Plaintiffs' Permit Counts (1 and 2) Fail to State Claims.

### A.     The Portable Turbines Are Exempt under the State Implementation Plan.

Counts 1 and 2 should be dismissed because MZX's portable turbines are exempt "mobile sources" under Mississippi's SIP. 11 Pt. 2 Ch. 2 Miss. Code R. 2.13(D)(3). The ordinary meaning of "mobile source" includes MZX's portable turbines: trailer-mounted turbines designed and intended to move from site to site for temporary power generation needs. Defs.' MTD at 10–11, Doc. 55. MDEQ confirmed as much in its July 2025 letter. Compl., Ex. B-2, Doc. 1-2; *accord* Amicus Br. of State of Miss. at 4, 7, Doc. 81. And the Fifth Circuit has recognized the "measure of discretion" "enjoy[ed]" by states devising and implementing their SIPs. *Texas v. EPA*, 690 F.3d 670, 675–76 (5th Cir. 2012); *contra* Pls.' Opp. at 22 & n.15 (wrongly giving no weight to State's position). The plain meaning of "mobile source" therefore requires dismissal of Counts 1 and 2.

Plaintiffs' attempts to avoid the ordinary meaning of "mobile source" are unpersuasive. *First*, Plaintiffs argue that the undefined term "mobile source" in Mississippi's SIP is governed by a special federal definition in 40 C.F.R. § 51.50, which Plaintiffs suggest is implicitly incorporated into Mississippi's SIP. *See* Pls.' Opp. at 18, 20 & n.12. That theory of incorporation *without* reference is wrong. Rule 5.2 of the Mississippi SIP expressly incorporates a different set of regula-

5

tions: "the provisions of 40 CFR 52.21." 11 Pt. 2 Ch. 5 Miss. Code R. 5.2. This does not somehow incorporate any *other* federal regulations into the SIP. *See* Pls.' Opp. at 20 & n.12. Rule 5.2's reference to § 52.21 "in effect cuts and pastes the referenced [regulation] as it existed when the referring [regulation] was enacted" and nothing else. *United States v. Minor*, 121 F.4th 1085, 1090 (5th Cir. 2024) (citation omitted).[3] Since § 52.21 does not define "mobile source," the SIP's ordinary meaning controls. *See Inhance Techs., LLC v. EPA*, 96 F.4th 888, 893 (5th Cir. 2024) (undefined term given ordinary meaning).

To argue that "mobile source" is nevertheless a defined term, Plaintiffs attempt a sleight of hand, focusing not on § 52.21, but on a different rule, § 52.01. *See* Pls.' Opp. at 20 n.12. But Rule 5.2 does not incorporate § 52.01. *See Doe v. X Corp.*, 821 F. Supp. 3d 632, 638–39 (N.D. Tex. 2026) (a specific reference to a "limited aspect" of a statutory provision does not constitute a reference to the provision "as a whole," including its "definitions"). Worse, § 52.01 does not even define "mobile source." Instead, Plaintiffs next note that § 52.01 refers to terms defined "in [40 C.F.R.] parts 51 and 60." Pls.' Opp. at 20 n.12. From there, Plaintiffs finally locate their preferred definition of "mobile source" in 40 C.F.R. § 51.50—a subpart governing emissions reporting, not PSD permitting. Pls.' Opp. at 19–21. *See Doe*, 821 F. Supp. 3d at 638–39.

Plaintiffs' multi-step cross-reference approach is not just wrong on the law, it also makes no practical sense. Mississippi incorporated only specific portions of 40 C.F.R. § 52.21 in Rule 5.2. Section 52.21 uses the phrase "mobile source" once, to *exclude* from the concept of "secondary emissions" any "mobile source" emissions. 40 C.F.R. § 52.21(b)(18). Even if Rule 5.2's incorpo-

---

[3] *See also* 2B Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes and Statutory Construction* § 51.8 (7th ed. Nov. 2025 update) ("A statute of specific reference adopts only the particular parts of the statute to which it refers."); *id.* § 51.7 ("Where a statute refers specifically to another statute by title or section number, there is no reason to think its drafters meant to incorporate more." (cleaned up)).

6

ration of § 52.21 could justify reading § 52.21 according to a federal definition located via a chain of cross-references from § 52.01 to § 51.50, there is no reason to export that definition more broadly, to Rule 2.13 that has no express incorporation by reference.

***Second***, Plaintiffs argue that Rule 2.13(D)(3)'s mobile-source exemption should be read narrowly, in the context of a list of similar supposedly "small" exemptions. Pls.' Opp. at 21. But Rule 2.13(D) lacks a common throughline. There are categories based on emissions rate, *see* 11 Pt. 2 Ch. 2 Miss. Code R. 2.13(D)(5); facility footprint, *see id.* R. 2.13(D)(12); facility output, *see id.* R. 2.13(D)(7); and business purpose, *see id.* R. 2.13(D)(6). Not all items are plausibly viewed as "small": the list exempts retail propane filling operations and refrigeration systems without limitation on size or scale. *See id.* R. 2.13(D)(13), (15). This undercuts Plaintiffs' suggestion that the categories should be viewed as sources "of the same kind." *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 562 U.S. 277, 295 (2011); *see Graham Cnty. Soil & Water Conserv. Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 288 (2010) (refusing to apply *noscitur a sociis* canon where disjunctively listed items were "each quite distinct from the other").

Finally, Plaintiffs do not dispute that conduct consistent with an EPA-approved SIP cannot be sanctioned for Clean Air Act violations, even via a citizen suit. *E.g.*, *United States v. Cinergy Corp.*, 623 F.3d 455, 458–59 (7th Cir. 2010). Instead, they assert that the turbines are not "mobile sources" under federal regulations, and so not exempt under the SIP—an argument that fails for reasons given above. Pls.' Opp. at 22. For largely the same reasons, Plaintiffs' cited cases are off-point and not controlling.[4]

---

[4] *See Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc.*, 299 F.3d 1007 (9th Cir. 2002) (addressing whether district court had jurisdiction over Clean Water Act citizen suit, without addressing liability for conduct authorized by EPA-approved SIP); *Weiler v. Chatham Forest Prods.*, 392 F.3d 532 (2d Cir. 2004) (concluding that district court had jurisdiction over citizen-suit claims challenging a state's per-

*(footnote continued on next page)*

7

Plaintiffs also survey other states' regulations using the word "mobile." *See* Pls.' Opp. at 21. Most, however, involve "secondary emissions" calculations irrelevant here. *See* 40 C.F.R. § 51.165(a)(1)(iii), (viii).[5] Regardless, other states' SIPs are of little probative value in interpreting Mississippi's SIP. *See DeSoto County v. T.D.*, 160 So. 3d 1154, 1157 (Miss. 2015); *Pope v. Brock*, 912 So. 2d 935, 938 (Miss. 2005).

## B.    Defendants Lacked Fair Notice.

Plaintiffs incorrectly argue that Defendants' fair notice concerns are "not grounds for dismissal" and relate only to the choice of appropriate relief. Pls.' Opp. at 24. Fair notice is "a successful affirmative defense appear[ing] on the face of the pleadings." *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir. 2013). The Complaint and exhibits establish that Defendants reasonably relied on MDEQ's determination that the temporary portable turbines were exempt. *See* Compl. ¶¶ 132–33, Doc. 1; *id.*, Ex. B-1 (MZX asked State regulators if portable turbines needed permit); *id.* ¶ 186; *see id.*, Ex. B-2 (MDEQ response confirming exemption); *id.* ¶¶ 4, 136, 209 (MZX deployed mobile turbines only after receiving MDEQ response). Those pleaded facts support dismissal of Counts 1 and 2. *See United States v. Hoechst Celanese Corp.*, 128 F.3d 216, 225–26 (4th Cir. 1997) (entity who proactively seeks a determination from the agency responsible for interpreting and enforcing regulations is entitled to rely on the agency's response).

The fair notice doctrine is grounded in constitutional due process and relevant not only to the choice of remedies, but also to the imposition of liability. *See, e.g., Gen. Elec. Co. v. EPA*, 53

mitting decision, without approving liability for conduct consistent with EPA-approved SIP). Regardless, *Weiler* is not good law in this Circuit. *See CleanCOALition v. TXU Power*, 536 F.3d 469, 478–79 (5th Cir. 2008).

[5] Pls.' Resp. in Opp. to MTD Ex. 1, Doc. 89-1 (Arkansas; Indiana; Kansas; Kentucky; Minnesota, as "insignificant activities"; Nevada, as part of determination of "major source" status; New Mexico; Rhode Island; Tennessee; Texas; Utah; Virginia; Washington; West Virginia, as "*de minimis* source"; and Wyoming).

F.3d 1324, 1328–29 (D.C. Cir. 1995) ("absence of notice" prohibits "imposing civil or criminal liability"). The Supreme Court has applied fair notice principles to shield a regulated party from a finding that it violated the law, even where regulators had forsworn efforts to enforce the rule or impose any near-term sanction. *See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 255–56 (2012).

Plaintiffs suggest that private warnings and threats gave Defendants constitutionally adequate notice that they needed a preconstruction permit. Pls.' Opp. at 24–25. Not so. Due process requires that "laws which regulate persons or entities must give fair notice of conduct that is forbidden or required," *Fox*, 567 U.S. at 253, and so the inquiry focuses on what the *government* has communicated. *See ExxonMobil Pipeline Co. v. DOT*, 867 F.3d 564, 578 (5th Cir. 2017). A private party's abandoned notice-to-sue letter about a different facility and a Tennessee permit appeal that opponents litigated and *lost* show "at most, that *some* person … read the regulation as [Plaintiffs now] suggest[ ]." *Gates & Fox Co. v. OSHRC*, 790 F.2d 154, 157 (D.C. Cir. 1986) (Scalia, J.) (emphasis in original). That is irrelevant to the fair notice inquiry.

The authoritative statement here came from MDEQ, the government entity responsible for interpreting and enforcing Mississippi's SIP. MDEQ determined in writing, before MZX deployed or operated any mobile turbine at Stanton Road, that the temporary portable turbines were mobile sources that do not need air permits. Given that determination, Defendants lacked fair notice that their conduct would trigger Clean Air Act liability. *See Hoechst Celanese*, 128 F.3d at 225–26. Plaintiffs identify no contrary statement or guidance from MDEQ that would have unsettled Defendants' reliance.[6]

---

[6] EPA's December 2024 notice of *proposed* rulemaking, *see* Pls.' Opp. at 24, at most addressed whether portable turbines are stationary sources under federal regulations—which as discussed above is not relevant

*(footnote continued on next page)*

**III.     The Citizen-Suit Provision Violates Article II and the Private Nondelegation Doctrine.**

As to Article II, Defendants agree with Plaintiffs on one thing: "the critical question here" is whether citizen suits should be "viewed as prosecuting a public offense." Pls.' Opp. at 33. The answer is yes. Citizen plaintiffs seek precisely the same kind of society-wide relief that the government can seek, including enormous civil penalties payable to the U.S. Treasury and generalized injunctive relief such as forcing defendants to get a permit. Because of this, courts have long recognized that environmental citizen suits under the Clean Air Act and similar statutes are not torts or individual causes of action. Rather, citizen plaintiffs "assume[ ] the role of private attorney general," *Env't Conserv. Org. v. City of Dallas*, 529 F.3d 519, 531 (5th Cir. 2008), and thereby "step into the government's shoes," *StarLink Logistics, Inc. v. ACC, LLC*, 101 F.4th 431, 447 (6th Cir. 2024). Because executive power "belongs to the President alone," however, the only persons who can step into the government's shoes are "lesser officers" within the executive branch and only if they remain "accountable to the President" they serve. *Seila Law LLC v. CFPB*, 591 U.S. 197, 213 (2020).

Plaintiffs attempt to claim they are not actually "exercising 'Executive power' in any sense." Pls.' Opp. at 33. Plaintiffs make three closely related arguments in support: (1) that they aren't exercising executive power because the Clean Air Act says that a citizen plaintiff sues "on his own behalf"; (2) that a private plaintiff with Article III standing categorically doesn't exercise

---

to interpreting Mississippi's SIP exemption for mobile sources. Regardless, the proposed rule merely "requested comment" on whether to create an express exemption—it did not state the agency's final view. *See Residents of Gordon Plaza, Inc. v. Cantrell*, 25 F.4th 288, 297–98 (5th Cir. 2022) (tentative positions subject to comment carry no force of law). And EPA's January 2026 final rule, *see* Pls.' Opp. at 24, was issued months after Defendants' conduct began, and could not retroactively furnish the fair *advance* notice due process requires. *See CFTC v. EOX Holdings, LLC*, 90 F.4th 439, 443 (5th Cir. 2024).

executive power; and (3) that citizen suits have historical precedent in public nuisance and *qui tam*. None are correct.

**First**, that the Clean Air Act says that citizen suits are brought by a plaintiff "on his own behalf" merely highlights the constitutional problem: citizen plaintiffs are acting as private "self-appointed mini-EPA[s]," not temporary deputies subject to federal direction. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 209 (2000) (Scalia, J., dissenting). "This is legislative delegation in its most obnoxious form; for it is not even delegation to an official or an official body, presumptively disinterested, but to private persons." *Carter v. Carter Coal Co.*, 298 U.S. 238, 311 (1936).

What matters is the nature of the power that private parties may use. And, as explained in Defendants' opening brief, Defs.' MTD at 15, the nature of the power claimed by citizen suits is "quintessentially executive." *Seila Law*, 591 U.S. at 219. That is why case after case describes citizen suits as "private attorney general actions."[7] Defendants are aware of no court that has ever embraced Plaintiffs' contrary claim that citizen suits are "just like any other private suit an individual can bring on his own behalf." Pls.' Opp. at 33 n.19. On the contrary, the Supreme Court has noted that citizen suits are "interstitial," designed "to supplement rather than to supplant governmental action." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60–61 (1987).

The structure of the Act confirms this. Ordinary private suits do not require giving the federal government notice of an intent to sue and notice about the terms of a proposed consent

---

[7] *See, e.g.*, *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 17 (1981); *EPA v. City of Green Forest*, 921 F.2d 1394, 1403 (8th Cir. 1990); *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 477 (6th Cir. 2004); *Nat'l Parks & Conserv. Ass'n, Inc. v. TVA*, 502 F.3d 1316, 1327 (11th Cir. 2007); *Env't Conserv. Org.*, 529 F.3d at 528.

judgment. *See* 42 U.S.C. § 7604(b)(1)(A), (c)(3). Ordinary private suits are not barred whenever the government has filed and is "diligently prosecuting" its own action. *See id.* § 7604(b)(1)(B). Ordinary private suits do not allow private parties to compel others to comply with permitting requirements or allow private parties to obtain civil penalties payable to the U.S. Treasury. *See id.* §§ 7604(a)(3), (g). Nor is there a separate "ordinary private suit" hiding beneath the federal claims—the claims are the same. *See City of Green Forest*, 921 F.2d at 1403. That is why government settlements moot citizen claims, even when the citizen plaintiff would like to seek more stringent penalties and injunctive relief. *See Env't Conserv. Org.*, 529 F.3d at 531.

That makes sense. To get additional personal relief, the plaintiff would need a statutorily created "private right." As *Medina v. Planned Parenthood South Atlantic* explains, statutes create individual rights only in "atypical cases." 606 U.S. 357, 368 (2025) (cleaned up). Nearly all federal legislation "seeks to benefit one group or another," but an enforceable private right exists only where Congress "clearly and unambiguously" uses "rights-creating terms" and displays "an unmistakable focus" on individuals like the plaintiff—"a 'stringent' and 'demanding' test." *Id.* (cleaned up). "Language that focuses on the person regulated rather than the individuals protected does not fit the bill." *FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd.*, 146 S. Ct. 1546, 1553 (2026) (cleaned up).

The provisions the NAACP sues under flunk that test. Preconstruction permitting requirements and emission standards are regulatory commands directed at pollution sources and owed to the public at large; they confer benefits on many people and rights on no one in particular. And § 7604(a) itself contains no rights-creating language at all—it is an enforcement authorization, empowering "any person" to sue "any person" alleged "to be in violation" of "an emission standard or limitation." 42 U.S.C. § 7604(a). The statute does not even require that the plaintiff be injured,

12

a limitation that courts had to graft on because of the constitutional limitations of Article III. Thus, a citizen plaintiff's "concrete interest in the outcome of the litigation was the public's interest, not an interest specific to [the plaintiff] or its members." *Env't Conserv. Org.*, 529 F.3d at 531; *accord Ellis*, 390 F.3d at 477 ("Citizens acting as 'private attorneys general' to enforce the Clean Air Act, as the phrase implies, seek relief not on their own behalf but on behalf of society as a whole.").

***Second***, Plaintiffs assert that citizen plaintiffs must be injured in order to sue. Pls.' Opp. at 27. But that answers a different question. An injury in fact is what Article III requires to open the courthouse door; it is necessary, not sufficient. Standing does not convert the business conducted inside a courthouse into private-rights litigation, just as crime victims are not prosecutors.

The remedies Plaintiffs seek confirm this analysis. Start with the civil penalties. The Supreme Court has explained that seeking civil penalties payable to the United States is "quintessentially executive." *Trump v. Slaughter*, 609 U.S. __, 2026 WL 1855612, at *15 (2026). The same enforcement authority cannot be quintessentially executive when the FTC seeks it and quintessentially private when an association does.

Plaintiffs' claims for injunctive relief fare no better, because the injunction this statute authorizes is a regulatory command, not the abatement of a private wrong. The relief sought here is that Defendants *obtain a permit*. *See* 42 U.S.C. § 7604(a)(3); *see, e.g.*, *Sierra Club v. Franklin Cnty. Power of Ill., LLC*, 546 F.3d 918, 922–23, 934–36 (7th Cir. 2008) (remedy enjoining construction until the developer obtains a PSD permit). In other words, Plaintiffs sue "not to enforce specific legal obligations whose violation works a direct harm" to the NAACP's members, "but to force [companies] to comply with" a federal permitting regime. *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 13 (2023) (Thomas, J., concurring in the judgment) (cleaned up). "Vindicating the

13

public interest" in regulatory compliance "is the function of Congress and the Chief Executive, however, not private plaintiffs." *Id.* (cleaned up).

This is so even if the plaintiff can meet the low bar of establishing Article III standing. Many separation-of-powers cases involved plaintiffs who had Article III standing. The CFPB director in *Seila Law* presumably had standing to enforce a civil investigative demand, yet the removal restrictions in that case infringed Article II. *Qui tam* relators likewise have Article III standing, *see Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772–74 (2000), yet "substantial arguments" remain "that the *qui tam* device is inconsistent with Article II," *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 449 (2023) (Thomas, J., dissenting); *id.* at 442 (Kavanaugh, J., concurring). And Justice Kennedy identified the "[d]ifficult and fundamental questions" that citizen suits raise under Article II in *Laidlaw* itself—even while agreeing that the plaintiffs had standing. 528 U.S. at 197 (Kennedy, J., concurring). Injury-in-fact and usurpation of executive power are different questions. Answering the first does not answer the second.

***Third***, citizen suits are not saved from Article II concerns by analogy to historical public nuisance or *qui tam* cases. Congress invented the citizen suit device in the 1970 Clean Air Act, and Plaintiffs identify no Founding-era practice in which a private party could prosecute public regulatory offenses and exact penalties for the sovereign's coffers without executive control and supervision.

At common law, a private plaintiff could not sue on a public nuisance at all unless he "aver[red] and prove[d] some special injury"—damage different in kind from the public's, not merely in degree. *Mayor of Georgetown v. Alexandria Canal Co.*, 37 U.S. (12 Pet.) 91, 98–99 (1838). That demanding threshold bears no resemblance to modern standing doctrine, under which

"an identifiable trifle is enough," *United States v. Students Challenging Regul. Agency Procs.*, 412 U.S. 669, 689 n.14 (1973), including even "reasonable concerns" about pollution, *Laidlaw*, 528 U.S. at 183–84. The relief was different in kind, too. A nuisance plaintiff could recover damages for his special injury or a decree abating the nuisance as to him—not civil penalties payable to the government, and not an injunction ordering a defendant to obtain a permit. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 345–47 (2016) (Thomas, J., concurring).

Nor does an analogy to *qui tam* help. *See* Pls.' Opp. at 29. *Qui tam* survives, if at all, because the Executive retains control: the government may take over the relator's action, settle it, or dismiss it outright. *Polansky*, 599 U.S. at 430. Section 7604, on Plaintiffs' reading, has neither feature. Indeed, Plaintiffs argue that the government cannot "take over and dismiss the action." Pls.' Opp. to the U.S.'s Mot. to Intervene and Dismissal at 35, Doc. 92 (emphasis omitted).

Nor does it help Plaintiffs to analogize to other "private enforcement" regimes like antitrust or Title VII. *See* Pls.' Opp. at 27, 33 n.19. Those statutes create genuine private rights with genuine private remedies. Under the Clayton Act, for example, a person "injured in his business or property" recovers "threefold the damages *by him sustained*." 15 U.S.C. § 15(a) (emphasis added). Title VII awards backpay, reinstatement, and damages to the "person claiming to be aggrieved," 42 U.S.C. § 2000e-5. In each, the plaintiff sues on a claim he owns, for a remedy he keeps. Section 7604 has none of those features.

Plaintiffs' remaining arguments require little response. They invoke *Heckler v. Chaney*, 470 U.S. 821 (1985), for the proposition that citizen suits do not change the fact that the Executive retains discretion whether to enforce "in its own name." Pls.' Opp. at 34–35. But Article II does not turn on labels such as the nominal case caption. "The Constitution deals with substance, not shadows." *SFFA*, 600 U.S. at 230. Giving governmental power to private individuals and groups

15

undercuts executive authority by giving enforcement discretion to those outside of the Executive branch. Likewise, Plaintiffs' suggestion that the President's "preclusive" enforcement authority extends only to "crimes," Pls.' Opp. at 35 (cleaned up), cannot be squared with *United States v. Texas* and *Slaughter*, both of which dealt with civil enforcement power. 599 U.S. 670, 678–79 (2023); 2026 WL 1855612, at *17; *see also In re Aiken County*, 725 F.3d 255, 264 n.9 (D.C. Cir. 2013) (Kavanaugh, J.). And Plaintiffs' fallback—that "at a minimum, claims for injunctive relief should remain," Pls.' Opp. at 31—fails for the reasons already given: the injunction § 7604(a) authorizes is a regulatory command in aid of public enforcement, not the abatement of a private wrong.

## CONCLUSION

For these reasons, the NAACP's complaint should be dismissed with prejudice.

16

Dated: July 24, 2026

Patrick D. Traylor*
Jeremy C. Marwell*
VINSON & ELKINS LLP
2200 Pennsylvania Ave. NW
Suite 500 West
Washington, D.C. 20037
(202) 639-6500
ptraylor@velaw.com
jmarwell@velaw.com

Michael B. Buschbacher*
James R. Conde*
Taylor M. Myers*
Walker Fortenberry*
BOYDEN GRAY PLLC
800 Connecticut Ave. NW, Suite 900
Washington, D.C. 20006
(202) 955-0620
mbuschbacher@boydengray.com
jconde@boydengray.com
tmyers@boydengray.com
wfortenberry@boydengray.com

Respectfully submitted,

*/s/ Daniel W. Van Horn*
Daniel W. Van Horn (MS Bar No. 102105)
BUTLER SNOW LLP
6075 Poplar Ave., Suite 500
Memphis, TN 38187
(901) 680-7331
danny.vanhorn@butlersnow.com

P. Ryan Beckett (MS Bar No. 99524)
Keri E. Herrington (MS Bar No. 106815)
BUTLER SNOW LLP
1020 Highland Colony Pkwy., Suite 1400
Ridgeland, MS 39157
(601) 948-5711
(601) 948-5177
ryan.beckett@butlersnow.com
keri.herrington@butlersnow.com

*Attorneys for X.AI Corp. and MZX Tech LLC*

*\*Pro Hac Vice*

17

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2026, I filed the foregoing document with the Clerk of the U.S. District Court for the Northern District of Mississippi through the Court's CM/ECF system, which shall send notification of such filing to all parties of record in this case.

/s/ Daniel W. Van Horn
Daniel W. Van Horn