**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

| | |
|---|---|
| NAACP and NAACP MISSISSIPPI STATE CONFERENCE, | |
| Plaintiffs, | Case No. 3:26-cv-00074-DMB-JMV |
| v. | |
| X.AI and MZX TECH LLC, | |
| Defendants. | |

**REPLY MEMORANDUM IN SUPPORT OF THE UNITED STATES'
AMENDED MOTION FOR INTERVENTION AND DISMISSAL**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................1

ARGUMENT ...................................................................................................................1

I.      Consistent with Article II, the United States' right to intervene in this Clean Air Act enforcement action includes a right to dismiss the entire action..................................................................................................................1

          A.      The Clean Air Act supports the United States' interpretation ................................2

          B.      Constitutional avoidance favors the United States' interpretation .........................8

II.     The United States may dismiss this entire case pursuant to Rule 41................................16

CONCLUSION................................................................................................................16

## TABLE OF AUTHORITIES

**Cases**                                                                                          Pages(s)

*Atl. States Legal Found., Inc. v. Eastman Kodak Co.*,
   933 F.2d 124 (2d Cir. 1991)................................................................................ 5

*Bostock v. Clayton County*,
   590 U.S. 644 (2020) ....................................................................................... 6

*Chesapeake Bay Found., Inc. v. Bethlehem Steel Corp.*,
   652 F. Supp. 620 (D. Md. 1987) ..................................................................... 10

*Clark v. Martinez*,
   543 U.S. 371 (2005) ....................................................................................... 14

*Confiscation Cases*,
   74 U.S. 454 (1868) ......................................................................................... 13

*Cox v. City of Dallas*,
   256 F.3d 281 (5th Cir. 2001)........................................................................... 11

*Dep't of Transp. v. Ass'n of Am. R.R.*,
   575 U.S. 43 (2015) ........................................................................................... 9

*Env't Conservation Org. v. City of Dallas*,
   529 F.3d 519 (5th Cir. 2008)........................................................................... 11

*Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*,
   123 F.4th 309 (5th Cir. 2024).......................................................................... 4, 9

*EPA v. City of Green Forest*,
   921 F.2d 1394 (8th Cir. 1990).......................................................................... 5, 7

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
   528 U.S. 167 (2000) ....................................................................................... 9, 10

*Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*,
   146 F.4th 1080................................................................................................ 1

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
   484 U.S. 49 (1987) ....................................................................................... 2, 4, 6

*Henrikson v. Guzik*,
   249 F.3d 395 (5th Cir. 2001)........................................................................... 4

ii

*In re Aiken Cnty.*,
   725 F.3d 255 (D.C. Cir. 2013) ................................................................................ 6

*Jennings v. Rodriguez*,
   583 U.S. 281 (2018) ....................................................................................... 8, 9

*Lockett v. EPA*,
   319 F.3d 678 (5th Cir. 2003) ................................................................................. 6

*Lozano v. Montoya Alvarez*,
   572 U.S. 1 (2014) ............................................................................................... 2

*Negusie v. Holder*,
   555 U.S. 511 (2009) ............................................................................................ 3

*North Carolina ex rel. Cooper v. Tenn. Valley Auth.*,
   615 F.3d 291 (4th Cir. 2010) ............................................................................... 11

*S. River Watershed All., Inc. v. Dekalb Cnty.*,
   69 F.4th 809 (11th Cir. 2023) ................................................................................ 4

*Seila Law LLC v. CFPB*,
   591 U.S. 197 (2020) ....................................................................................... 8, 9

*Sierra Club v. EPA*,
   60 F.4th 1008 (6th Cir. 2023) .............................................................................. 11

*Sierra Club v. Tenn. Valley Auth.*,
   430 F.3d 1337 (11th Cir. 2005) ............................................................................ 13

*Sierra v. City of Hallandale Beach*,
   996 F.3d 1110 (11th Cir. 2021) ............................................................................ 12

*SPIRG of N.J., Inc. v. Monsanto Co.*,
   600 F. Supp. 1474 (D.N.J. 1985) .......................................................................... 10

*Taylor v. U.S. ex rel. U.S. Drug Enf't Admin.*,
   2015 WL 5971188 (N.D. Miss. Oct. 14, 2015) ........................................................... 8

*Torres v. Lynch*,
   578 U.S. 452 (2016) ............................................................................................ 3

*Trump v. Hawaii*,
   585 U.S. 667 (2018) ............................................................................................ 7

iii

*Trump v. Slaughter,* 609 U.S. —,
2026 WL 1855612 (June 29, 2026)...................................................................... 14, 15

*United States v. Am. Elec. Power Serv. Corp.,*
137 F. Supp. 2d 1060 (S.D. Ohio 2001)...................................................................... 10

*United States v. Hansen,*
599 U.S. 762 (2023) ...................................................................................................... 8, 9

*United States v. Telluride Co.,*
146 F.3d 1241 (10th Cir. 1998)...................................................................................... 11

*Wisconsin Cent. Ltd. v. United States,*
585 U.S. 274 (2018) ........................................................................................................ 3

**Statutes**

18 U.S.C. § 1514A(b) ......................................................................................................... 4

18 U.S.C. § 1514A(c) ......................................................................................................... 4

42 U.S.C. § 7412(i)(4) ......................................................................................................... 5

42 U.S.C. § 7418(b) ............................................................................................................ 5

42 U.S.C. § 7604................................................................................................................. 3

42 U.S.C. § 7604(a) .......................................................................................................... 13

42 U.S.C. § 7604(a)(1)....................................................................................................... 13

42 U.S.C. § 7604(a)(2)....................................................................................................... 13

42 U.S.C. § 7604(b)(1)(B) .................................................................................................. 5

42 U.S.C. § 7604(c)(2)............................................................................................... 2, 5, 14

42 U.S.C. § 7604(e) .......................................................................................................... 11

42 U.S.C. § 7604(g) ...................................................................................................... 8, 12

Pub. L. No. 99-562, § 3, 100 Stat. 3153 (1986).................................................................. 3

**Rules**

Fed. R. Civ. P. 41............................................................................................................... 16

Fed. R. Civ. P. 41(a)(1)(A) ......................................................................................................... 16

**Other Authorities**

S. Rep. No. 91-1196 (1970) .......................................................................................................... 11

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*,
    96 (2012) ............................................................................................................................... 2

Nitisha Baronia, et al., *Private Enforcement at the Founding & Article II*,
    114 Calif. L. Rev. 131 (2026) ......................................................................................... 10, 12

**Constitutional Provisions**

U.S. Const. art. II, § 1 Cl. 1 .................................................................................................... 15

U.S. Const. art. II, § 1 Cl. 3 .................................................................................................... 15

## INTRODUCTION

The United States, acting on behalf of the Administrator of the Environmental Protection Agency (EPA), Lee M. Zeldin (together, the "United States"), intervenes as of right in this Clean Air Act citizen suit to dismiss it.  The dispositive factor is that the Clean Air Act, consistent with Article II of the Constitution, does not license private attorneys general to substitute their enforcement decisions for those of the Executive Branch.

The NAACP opposes the United States' intervention and dismissal motion on the ground that the Clean Air Act entitles it to enforce the statute's federal permitting regime—and exact monetary penalties from private parties, payable solely to the United States Treasury—over the United States' opposition.  Dkt. No. 92 at 1-2 ("NAACP Mem.").  For the reasons discussed here and in our motion, the Court should reject the NAACP's argument and grant dismissal.

## ARGUMENT

**I.      Consistent with Article II, the United States' right to intervene in this Clean Air Act enforcement action includes a right to dismiss the entire action.**

"Citizen suits" are "enforcement actions."  *Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*, 146 F.4th 1080, 1091 (11th Cir. 2025) (Pryor, C.J., concurring).  The United States, in its Amended Memorandum in Support of Intervention and Dismissal, explained why the Clean Air Act does not authorize private enforcers to seek relief that federal enforcers choose to forgo. Any other interpretation would render the federal government's express intervention right meaningless in cases where it determines that a civil enforcement action is against public policy.  Dkt. No. 86 at 10-17 ("U.S. Am. Mem.").  Stripping the Executive Branch of its preclusive discretion not to enforce the statute would also raise serious questions about the citizen-suit provision's consistency with Article II.  *Id.* at 17-23.  While the NAACP disagrees, it misconstrues the Clean Air Act and the nature of Article II.

**A.      The Clean Air Act supports the United States' interpretation.**

The Clean Air Act's structure, allocation of enforcement authority, and purpose make clear that environmental regulation and enforcement is primarily left to the federal government. Yet, the NAACP attempts at best to ignore the Act's text and interpreting decisional law. NAACP Mem. at 14-15. The NAACP also attacks the United States' reasons for disagreeing with its attempted enforcement of federal law. *Id.* at 22-24; *see also Gwaltney*, 484 U.S. at 61 (stating citizens may not seek relief that government enforcers deliberately choose "to forgo"). NAACP's arguments are unavailing. Statutory text and structure, along with the pertinent precedent, confirm that private citizens' decisions about when and how to enforce the Clean Air Act cannot override those of federal enforcers.

**1.** The NAACP's lead textual argument is that that the citizen-suit provision does not expressly state that the United States may dismiss a citizen suit. *Id.* at 14-18. That is not dispositive. "[T]he principle that what a text does not provide is unprovided[ ]must sometimes be reconciled with the principle that a text does not include not only what is express *but also what is implicit*." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 96 (2012) (emphasis added). For example, courts routinely construe statutes of limitations to contain implicit equitable-tolling exemptions because it is "part of the established backdrop of American law." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 11 (2014). So too here. Further, the NAACP does not dispute that the federal government's unconditional permission to "intervene" under 42 U.S.C. § 7604(c)(2) must necessarily encompass other procedural rights inherent in litigating a matter—for example, filing briefs and motions and appealing from adverse decisions. *See* NAACP Mem.; U.S. Am. Mem. at 10. And it offers no textual reason to distinguish those other procedural rights from the right to dismiss.

For similar reasons, the NAACP unpersuasively contrasts the citizen-suit provision with the False Claims Act provision allowing the United States to dismiss relators' qui tam actions. NAACP Mem. at 14-15. The NAACP invokes (at 15) the rebuttable presumption that variations in statutory language ordinarily convey different meanings. But nothing mandates that disparate parts of the U.S. Code use identical language across all statutes to do similar things. *See Negusie v. Holder*, 555 U.S. 511, 518-19 (2009) (rejecting a comparison between two statutes enacted for different purposes); *Wisc. Cent. Ltd. v. United States*, 585 U.S. 274, 279 (2018) (the variation presumption has force where "the same Congress" enacted the statutes "to handle much the same task").

Here, the presumption of consistent usage "readily yields" because the Clean Air Act's environmental-enforcement scheme is "unrelated" to the False Claims Act's fraud-enforcement scheme. *Torres v. Lynch*, 578 U.S. 452, 471-73 (2016) (statute required disregarding crime's jurisdictional elements in deportation proceedings, despite "omission of [such] statutory language," although an "unrelated law" "expressly" included a similar instruction). And while the NAACP says (at 15) that the False Claims Act shows "Congress knows" how to make the dismissal right express, the 1986 Congress that enacted that statute's dismissal provision was plainly not the same as the 1970 Congress that authorized federal intervention in citizen suits. *See* Pub. L. No. 99-562, § 3, 100 Stat. 3153, 3155 (1986); 42 U.S.C. § 7604. Nor was it the same as the 1990 Congress that amended the citizen-suit provision.

"The question, then, is not: Could Congress have indicated (or even did Congress elsewhere indicate) in more crystalline fashion" that the United States' right to intervene in a citizen enforcement action includes a right to dismiss? *Torres*, 578 U.S. at 472-73. The question is whether the citizen-suit intervention right is correctly read to include the dismissal right. *Id.* Our

3

Amended Memorandum (at 10-14) details why, in the context of Clean Air Act enforcement, the right to deny "support" and "consent" for the enforcement action must be implicit in the federal-intervention provision. *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 123 F.4th 309, 343 (5th Cir. 2024) (en banc) (Davis, J., concurring); *id.* at 375 n.32 (Jones, J., dissenting). "[P]ermitting citizen suits" to "second-guess" the federal government's (and state governments') balancing of the public interest in enforcement decisions is "improper." *S. River Watershed All., Inc. v. Dekalb Cnty.*, 69 F.4th 809, 825 (11th Cir. 2023). *But see* NAACP Mem. at 21 (doing precisely that).[1]

Our contention here is not a "[p]olicy argument." NAACP Mem. at 15. Considering "context" and statutory "structure" is "important." *Henrikson v. Guzik*, 249 F.3d 395, 398 (5th Cir. 2001). The United States' interpretation respects the statute's careful allocation of enforcement authority and effectuates the procedural constraints that prevent "intrusive," overzealous private enforcement. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 61 (1987); *see* U.S. Am. Mem. at 4 n.1, 13-14. Because the United States' interpretation is specific to the Clean Air Act, accepting it would not mean that the government has an implicit right to intervene and dismiss private actions under any other federal statute. The NAACP's contrary assertion (at 21) grossly mischaracterizes the United States' position. It also overstates other federal statutes' similarities to the Clean Air Act.[2]

---

[1] As in its motion-to-strike briefing (Dkt. No. 83), the NAACP illogically insists that if the United States opposes a citizen suit, intervening as a defendant allows the government "sufficient control." NAACP Mem. at 34. But if the United States determines that *no* civil enforcement is warranted, violations or not, it is unclear why it would subject itself to the citizen's litigation.

[2] The one supposedly analogous statute that the NAACP cites—the Sarbanes Oxley Act—allows citizens to seek obviously individualized remedies (e.g., compensatory damages) to redress obviously individualized harms ("discharge or discrimination"). 18 U.S.C. § 1514A(b), (c).

4

The NAACP cites three contextual features that purportedly support its interpretation. None do.  The first is the diligent-prosecution bar; according to the NAACP, so long as government enforcers do not preclude the citizen's planned suit within 60 days of receiving notice, the citizen has unfettered discretion to sue.  NAACP Mem. at 16-17.  But governmental actors' "preeminent role" in enforcement does not shift to citizens merely because they wait out the 60-day clock.  *EPA v. City of Green Forest*, 921 F.2d 1394, 1404 (8th Cir. 1990) (federal enforcement decision "subsequent" to the citizen suit precluded the suit); *cf. Atl. States Legal Found., Inc. v. Eastman Kodak Co.*, 933 F.2d 124, 127 (2d Cir. 1991) ("disagree[ing]" that New York "forfeited the right to preclude citizen enforcement . . . in failing to bring an enforcement proceeding during the sixty-day statutory notice period").  Reinforcing the point, Congress made explicit that the federal intervention right exists "at any time" (without permitting citizens may intervene in government actions "at any time").  42 U.S.C. § 7604(b)(1)(B), (c)(2).  And the statute expressly preserves the United States' ability to influence the outcome of citizen suits after the 60-day notice period.  NAACP Mem. at 17 (conceding that citizens "may not resolve" their suits through consent judgments without allowing federal review).

Second, despite the Clean Air Act's clear assignment of primary enforcement authority, the NAACP confusingly stretches narrow exemptions to enforcement to suggest these are the only means for dismissal.  NAACP Mem. at 22-23.  This argument conflates two distinct questions:  One is when the statute requires "compliance" with its standards.  42 U.S.C. §§ 7412(*i*)(4), 7418(b) (exemption provisions).  The other is what actors have preeminent enforcement discretion to decide what, if anything, should be done about alleged noncompliance.  The United States' intervention concerns the second question, not the first.  Whether or not xAI has complied with the statute, the United States has intervened to dismiss this enforcement action

consistent with its "significant" "prosecutorial discretion not to take enforcement actions against" (alleged) "violators of a federal law." *In re Aiken Cnty.*, 725 F.3d 255, 262 (D.C. Cir. 2013) (Kavanaugh, J.); *see* U.S. Am. Mem. at 8-9.

Finally, NAACP utilizes a highly disfavored approach to statutory interpretation. NAACP Mem. at 17. The NAACP's surmise about why one amendment was offered and why Congress "declined to adopt [the] new legislation" is "particularly dangerous" "speculation" that the Supreme Court has repeatedly disfavored. *Bostock v. Clayton County*, 590 U.S. 644, 670 (2020). It is also plausible that Congress rejected the amendment as unnecessary. The government's statutory intervention right includes the dismissal right, consistent with how citizen suits were never intended to "supplant" governmental enforcement discretion. *Gwaltney*, 484 U.S. at 60.

**2.** A consensus of jurists—from the Supreme Court, the Fifth Circuit, and other courts— have repeatedly confirmed that citizen-suit plaintiffs cannot override federal enforcement discretion. U.S. Am. Mem. at 14-17. Yet, the NAACP insists that "courts have rejected [the] logic" of the United States' interpretation. NAACP Mem. at 18-21. Not so.

The NAACP cites no authority supporting the notion that citizen-suit provisions cede preclusive enforcement authority to third parties. The NAACP misreads decisional law to apply only to suits that "address past violations." NAACP Mem. At 18-19. But the Fifth Circuit does not share the NAACP's interpretation of *Gwaltney*: To the contrary, *Gwaltney* "made it clear" that citizen suits must "not supplant government action" even where citizens wish to enforce "ongoing violations" allegedly unaddressed by government action. *Lockett v. EPA*, 319 F.3d 678, 689 (5th Cir. 2003).

6

The NAACP also contests the United States' reliance on *Green Forest*. That case, the NAACP says (at 18), rejected the notion that EPA's decision "not to commence an action" against a defendant bound the citizens' ability to pursue one. But *Green Forest* concerned the government's decision to enforce against different defendants than the one the citizens chose. 921 F.2d at 1397, 1405. It did not address, as here, an Executive decision to affirmatively withhold consent for private enforcement.[3]

**3.** As the United States has already explained, it would be improper to probe the government's determination that civil enforcement in this case disserves the public interest and threatens national security. U.S. Am. Mem. at 9. Turning from the statute and precedent, the NAACP challenges the United States' determination that enforcement in this case would impair national interests. NAACP Mem. at 23-24. It invites the Court to require "extra briefing" on the United States' reasons for dismissal and to "question" the facts in the declaration of Cameron Stanley, the Department of War's Chief Digital and Artificial Intelligence Officer (CDAO). *Id.* This Court should decline to do so.

In any event, courts (and the NAACP) "cannot substitute [their] own assessment for the Executive's predictive judgments" on what "serve[s] national security interests." *Trump v. Hawaii*, 585 U.S. 667, 707-08 (2018). Plus, while the NAACP predicts (at 23-24) that its requested relief will not "impact[]" the Department's operations because xAI may "rent out" "excess compute power," CDAO Stanley averred that *any* "limitations in energy supply" would "severely impact[]" the Department's operations, Dkt. No. 85-1 ¶¶ 9-10.

---

[3] The NAACP distinguishes the United States' other cited cases (*see* U.S. Am. Mem. at 14-15) as either involving a federal enforcement decision to induce statutory compliance or a different type of Clean Air Act citizen suit than this one. NAACP Mem. at 19-20. The factual differences between those cases and this one are irrelevant. Each case confirmed the legal proposition that citizens' enforcement prerogatives cannot override those of the government.

Finally, this Court should disregard NAACP's suggestion without explanation that the declaration was improperly submitted. NAACP Mem. at 23. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Taylor v. U.S. ex rel. U.S. Drug Enf't Admin.*, 2015 WL 5971188, at *8 (N.D. Miss. Oct. 14, 2015) (Brown, J.) (cleaned up).

**B.     Constitutional avoidance favors the United States' interpretation.**

The United States' interpretation avoids conflict between the citizen-suit provision and the Executive Branch's preclusive Article II enforcement discretion. U.S. Am. Mem. at 17-23. Deciding to punish unlawful conduct by seeking civil penalties payable to the Treasury on behalf of the United States is "a quintessentially executive power." *Seila Law v. CFPB*, 591 U.S. 197, 219 (2020), and permitting the NAACP to seek civil penalties payable to the United States on terms to which the United States objects raises serious concerns under Article II.

The NAACP argues that there is no serious Article II problem in allowing private citizens to bring a Clean Air Act suit for civil penalties, payable entirely to the United States, if the United States wishes instead to dismiss the suit. NAACP Mem. at 32-35; *see* 42 U.S.C. § 7604(g). It is wrong.

**1.** The NAACP first accuses the United States of misunderstanding how constitutional avoidance works. NAACP Mem. at 24. Avoidance, the NAACP says, is only relevant where there are competing interpretations fairly supported by the text. *Id.* But the United States has plainly shown that its reading of the statute is "at least 'fairly possible'—so the canon of constitutional avoidance would still counsel [the Court] to adopt it." *United States v. Hansen*, 599 U.S. 762, 781 (2023) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018)); *see* U.S. Am. Mem. at 17. Indeed, even though the United States need not show that its reading is "the best one" for

avoidance to apply, *Hansen*, 599 U.S. at 781, the United States' interpretation is the only reasonable construction of the citizen-suit provision given the serious Article II considerations at play.

**2.** While the United States need only establish the citizen suit intervention rights to include dismissal, the NAACP's primarily argues that the Clean Air Act's citizen-suit provision is constitutional. NAACP Mem. at 24-25. This is incorrect. The United States need only establish—and has established—that interpreting the citizen-suit provision to authorize dismissal avoids "serious constitutional doubts." *Jennings*, 583 U.S. at 286.

**a.** The NAACP unpersuasively starts by citing out-of-circuit district courts that upheld citizen-suit provisions' constitutionality. NAACP at n.11. Yet, none asked the question that the United States' intervention presents—whether Article II questions regarding Clean Air Act citizen suits are at least "serious." *Jennings*, 583 U.S. at 286. Even if the NAACP's cited cases are relevant to that question, half predated *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000). So they had no opportunity to consider the fundamental Article II questions identified by Justices Kennedy, Scalia, and Thomas. *See* U.S. Am. Mem. at 17-18. All predated Justice Alito's 2015 opinion amplifying the concerns. *Dep't of Transp. v. Ass'n of Am. R.R.*, 575 U.S. 43, 62 (2015) (Alito, J., concurring). None had the chance (or reason, unlike this Court) to consider the concerns expressed by half of the en banc Fifth Circuit in *ExxonMobil*. *See* U.S. Am. Mem. at 18-19. All concerned citizen-enforcement actions to which the Executive acquiesced or supported, without finding the actions contrary to national interests. *Cf. id.* at 19 n.3. Finally, all predated recent Supreme Court cases—like *Seila Law*—confirming

9

that deciding whether to pursue civil penalties solely payable to the United States for violations of federal law is a core Executive power.[4]

The NAACP next misreads *Laidlaw* as "binding" on the Article II question. NAACP Mem. at 33-34. *Laidlaw* resolved a question of Article III standing to seek civil penalties, and this Court should not extend *Laidlaw*'s Article III holding to Article II. U.S. Am. Mem. at 19 n.4. Insofar as the *Laidlaw* majority considered Justice Scalia's concerns about civil penalties "overdrawn," it relied on the key federal-consent factor that, once again, is absent here. 528 U.S. at n.4. The United States "endorsed" the *Laidlaw* "suit from the outset." *Id.*

If any persuasive value to the NAACP's cited cases remains, none considered the lack of historic evidence showing a Founding-era acceptance of citizen suits for penalties payable solely to governments. *See* U.S. Am. Mem. at 20-21. The cases thus don't help the NAACP.

**b.** While the NAACP's cited cases omit any historic analysis, the NAACP proffers a faulty one of its own. NAACP Mem. at 28-30, 34-35. It argues that a citizen suit for civil penalties resembles a common-law nuisance action. *Id.* at 28-30. The NAACP also relies heavily on a law review article positing that, around the time of the Founding, allowing private parties to "seek penalties for nuisances on behalf of the public" was accepted. *Id.* at 34 (citing Nitisha Baronia, et al., *Private Enforcement at the Founding & Article II*, 114 Calif. L. Rev. 131 (2026) (hereinafter *Private Enforcement*)). The NAACP mischaracterizes the history of private environmental enforcement.

---

[4] *E.g.*, *SPIRG of N.J., Inc. v. Monsanto Co.*, 600 F. Supp. 1474, 1478 (D.N.J. 1985) (U.S. amicus supporting plaintiffs); *Chesapeake Bay Found., Inc. v. Bethlehem Steel Corp.*, 652 F. Supp. 620, 625 (D. Md. 1987) (citing *SPIRG*); *United States v. Am. Elec. Power Serv. Corp.*, 137 F. Supp. 2d 1060 (S.D. Ohio 2001) (U.S. pursuing own enforcement). The United States' prior briefing in citizen suits that it did not oppose (*see* NAACP Mem. at 32) is similarly irrelevant.

10

First, the NAACP's attempted analogy to a common-law nuisance suit does not work. Even taking the NAACP's premise that nuisance law informed the Clean Air Act's development, it does not follow that Clean Air Act emission-control standards and the means of enforcing them are analogous to nuisance standards and remedies. "The contrast between the defined standards of the Clean Air Act and an ill-defined omnibus tort . . . could not be more stark." *North Carolina ex rel. Cooper v. Tenn. Valley Auth.*, 615 F.3d 291, 302 (4th Cir. 2010). Congress itself recognized that citizen suits enforcing those standards, unlike nuisance actions, enable private actors to secure societal benefits that go beyond redressing citizen-enforcers' harms. Nuisance suits are not a "substitute" for citizen suits because "[t]he two kinds of lawsuits have different goals and seek different remedies." *Sierra Club v. EPA*, 60 F.4th 1008, 1020 (6th Cir. 2023); *see* 42 U.S.C. § 7604(e) (describing "common law" actions as "other rights"); S. Rep. No. 91-1196, at 65 (1970) (citizen-suit provision does not "provide for damage or nuisance actions").

To understand the differences, this Court need not look further than *Cox v. City of Dallas*, cited by the NAACP (at 28). There, the Fifth Circuit explained that a "basic remed[y] . . . available in nuisance actions" is "damages" recoverable by the plaintiff. *Cox v. City of Dallas*, 256 F.3d 281, 291 (5th Cir. 2001) (citing Restatement (Second) of Torts § 821B cmt. *i* (1979)). For reasons the United States has already explained, the NAACP is wrong that compensatory damages are analogous to civil penalties that are payable solely to the United States Treasury. U.S. Am. Mem. at 20, 22-23. Such penalties are necessarily remedies that accrue "the public's interest, not an interest specific to [the NAACP] or its members." *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 531 (5th Cir. 2008); *see also United States v. Telluride Co.*, 146 F.3d 1241, 1246 & n.6 (10th Cir. 1998) (the ordinary meaning of "penalty" is "a sanction or punishment imposed for violating a public law which goes beyond compensation" or "making the

11

plaintiff whole"); *Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1133 (11th Cir. 2021) (Newsom, J., concurring) ("a fine to be paid into the treasury" "accrues to the public"). The fact that some personal interest may motivate the citizen to sue does not automatically mean the civil penalties statutorily authorized are "limited" to vindicating those personalized interests. NAACP Mem. at 27.

While the NAACP separately analogizes to Founding-era laws that enabled private parties to seek penalties payable to governments, like qui tam actions, that analogy is at least equally dubious. The NAACP does not cite a single historical analogue for private enforcement of nuisance law, or environmental law, generally, where monetary fines achievable were payable *solely* to the government. *Compare* 42 U.S.C. § 7604(g). Qui tam actions, consistent with history and tradition, enabled private plaintiffs to share in monetary recovery. U.S. Am Mem. at 20 n.5. The same was true for Founding-era environmental laws that enabled private citizens to "seek penalties . . . on behalf of the public," NAACP Mem. at 34, like Massachusetts' "restraints on roving livestock," "fishing and hunting regulations," and "limits on dirty industries," *Private Enforcement*, *supra*, at 160-61, 164-65 (citing, for example, 1692 Mass. Acts 59-60—an act to prevent "[c]ommon [n]uisances" from slaughterhouses and similar establishments, with one-third of the penalties payable to the citizen informer).[5] Other Founding-era states' laws on both environmental and nonenvironmental subjects similarly allowed "private damages awards" or included "qui tam provisions." *Private Enforcement*, *supra*, at 165 & n.207 (examples); *see also* An Act Concerning Public Roads §§ IX, XII (Oct. 1785), *in* 12 William Hening, Statutes at

---

[5] See also *Private Enforcement*, *supra*, at 160-61 nn.173-183, citing other examples such as 1757 Mass. Acts 27-28 (a four-shilling-per-animal penalty for cattle on beaches, with "one moiety thereof to be to the informer"), 1765 Mass. Acts 741-42 (fishing regulations, allowing the citizen informer "one half of the forefeiture"), and 1739 Mass. Acts 988-89 (ten-pound fine for illegally taking deer, one moiety to "him or them who shall inform and sue for the same").

12

Large; Being a Collection of All the Laws of Virginia, from the First Session of the Legislature, in the year 1619, at 179 (1823) (Virginia law "deemed a nuisance" the blocking of roads and streams, with "one moiety" of "penalties" "to the informer").

The NAACP discards these distinctions as not "meaningful." NAACP Mem. at 34. While the NAACP declines to say precisely why, its assertion appears premised on the view that the Clean Air Act authorizes citizens to sue exclusively on "their own behalf." *Id.* at 26-27. But the fact that citizens may sue in their own names rather than the United States' name does not cure the Article II concern. The penalties ultimately obtainable are for the "benefit of the United States," meaning enforcement actions to obtain them are subject to the United States' direction. *Confiscation Cases*, 74 U.S. 454, 457 (1868).

Relatedly, the NAACP argues that all Clean Air Act citizen suits must be exclusively on citizens' own behalf because some can be brought against the federal government. NAACP Mem. at 26. But the statutory text shows that section 7604(a)(2) citizen suits against the federal government are different in kind from citizen suits that exact public fines from private parties payable to the government. The statute "except[s]" those actions from civil penalties' availability. 42 U.S.C. § 7604(a). Similarly, section 7604(a)(1)'s authorization of certain suits against the federal government "does not necessarily carry over to the grant of power to federal district courts to impose civil penalties in citizen suits under the [A]ct." *Sierra Club v. Tenn. Valley Auth.*, 430 F.3d 1337, 1356 (11th Cir. 2005).[6]

---

[6] The NAACP also expresses concern about how the United States' interpretation would affect states' enforcement powers. NAACP Mem. at 27. That slippery-slope argument need not be taken serious. The NAACP does not dispute that history supports cooperative federalism.

13

**c.** Unable to muster historical support for its arguments regarding civil penalties, the NAACP pivots to arguing that there is at least historical support for private citizens seeking injunctions to abate environmental harms. NAACP Mem. at 31-32. That is irrelevant. Even if the NAACP is right that private citizens may seek Clean Air Act compliance injunctions consistent with tradition and Article II, *see Trump v. Slaughter*, 2026 WL 1855612, at *17 (describing federal law's enforcement through "injunctions" as an Executive function), any past tradition of private abatement injunctions does not magically erase the Article II concern with citizen suits for penalties.

The NAACP also contends that if avoidance favors interpreting the Clean Air Act to authorize the United States' dismissal of citizen suits for penalties, the statute should not be read to authorize dismissal of citizen suits that also seek injunctions. NAACP Mem. at 31-32. But the federal-intervention right—the source of the dismissal right—is not contingent on the type of relief citizens seek. 42 U.S.C. § 7604(c)(2). And thus, the dismissal right cannot be contingent on the types of relief sought in any particular citizen suit. The NAACP's contrary position "fundamentally" "misconceives" the avoidance canon because it "would render [the] statute a chameleon," with "its meaning subject to change depending on the presence or absence of constitutional concerns in each individual case." *Clark v. Martinez*, 543 U.S. 371, 381-82 (2005).

**d.** The NAACP's remaining two arguments do not defeat the need for avoidance. First, the NAACP argues that citizen suits are on "firmer constitutional ground than qui tam suits," which "'raise the most direct constitutional questions.'" NAACP Mem. at 30 (citation omitted). That NAACP's suggestion of serious constitutional questions with qui tam suits is hard to reconcile with the NAACP's simultaneous assertion that the "Founders' comfort" (*id.* at 34) with qui tam actions supports citizen suits' constitutionality. The NAACP also concedes (at 30) that the

14

en banc Fifth Circuit rejected an Article II challenge to the False Claims Act. No binding precedent settles the serious Article II question as to the Clean Air Act or similar statutes.

Second, the NAACP disputes that deciding to seek penalties payable solely to the United States to induce compliance with federal law is inherently an exercise of Executive power. NAACP Mem. at 32-34. It acknowledges the Supreme Court's repeated and unequivocal statements that "seek[ing] daunting monetary penalties against private parties on behalf of the United States" is "quintessentially executive power." *Id.* at 33 (quoting *Seila Law*). But, as the NAACP sees it, what the Supreme Court *meant to say* is that the power to pursue such penalties is "quintessentially executive" when exercised by administrative agencies for past, rather than ongoing or future, violations of federal law. *Id.* at 33-34.

This argument need not distract the Court long. Civil penalties payable *entirely* to the United States do not cease to serve "the public interest more generally" (*id.* at 33) when citizens pursue them; they go to the same federal Treasury. As for the NAACP's contention that pursuing such penalties becomes not "quintessentially executive" for ongoing or future alleged violations, the Supreme Court has "long ago abandoned" the NAACP's assumption that an Executive power can be "only *partly* executive." *Slaughter*, 2026 WL 1855612, at *14. If deciding whether to pursue civil penalties payable solely to the United States is "quintessentially executive" in any sense (it is), Article II vests the authority to faithfully exercise that pursuit entirely in the President, regardless of when the alleged violations occur, such that private persons cannot maintain such a suit for penalties if the United States would prefer to dismiss it. U.S. Const. art. II, § 1, cl. 1 & § 3. Pure Executive powers are not vested in the President only after private actors choose to stop their allegedly unlawful conduct.

15

**II.**     **The United States may dismiss this entire case pursuant to Rule 41.**

For the reasons explained above, the United States maintains statutory litigating authority to dismiss this action in full. Fed. R. Civ. P. 41 ("Rule") extends the United States' dismissal authority as the Rule is "subject . . . to any applicable federal statute," Fed. R. Civ. P. 41(a)(1)(A), such as the Clean Air Act. None of the cases NAACP cite in their response disprove the statutory text of the Rule – not a single case cited is analogous to the United States intervening and dismissing an entire action pursuant to an "applicable federal statute" and the U.S. Constitution.

**CONCLUSION**

This Court should grant the United States' requested intervention and dismiss this case.

16

Respectfully submitted,

STANLEY E. WOODWARD, JR.
Associate Attorney General
U.S. Department of Justice

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Environment and Natural Resources Division

JOHN K. ADAMS
Deputy Associate Attorney General
U.S. Department of Justice

ROBERT N. STANDER
Deputy Assistant Attorney General
Environment and Natural Resources Division

JUSTIN D. HEMINGER
Acting Deputy Assistant Attorney General
Environment and Natural Resources Division

MICHAEL WEISBUCH
Senior Counsel to the Associate Attorney General

/s/ Andrew M. Darlington
ANDREW M. DARLINGTON, Lead Counsel
Counsel to the Assistant Attorney General
Florida Bar No. 1018895
KYLE GLYNN
Attorney
D.C. Bar No. 90005572
U.S. Department of Justice
Environment and Natural Resources Division
950 Pennsylvania Ave. NW
Washington, D.C. 20530
(202) 532-3365 (Darlington)
Andrew.Darlington2@usdoj.gov
(202) 598-9568  (Glynn)
Kyle.Glynn@usdoj.gov

*Counsel for the United States*

July 24, 2026

17