**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

| | |
|---|---|
| NAACP and NAACP MISSISSIPPI STATE CONFERENCE,<br><br>Plaintiffs,<br><br>v.<br><br>X.AI and MZX TECH LLC,<br><br>Defendants. | Case No. 3:26-cv-00074-DMB-JMV |

**MEMORANDUM IN SUPPORT OF THE UNITED STATES'**
**<u>MOTION TO STAY ALL PROCEEDINGS PENDING APPEAL</u>**

# Table of Contents

INTRODUCTION ........................................................................................................1

BACKGROUND ........................................................................................................2

ARGUMENT ........................................................................................................3

I. The Court should exercise its inherent discretion to stay the proceedings pending appeal ........................................................................................4

II. A stay is warranted under the standard for a stay of an order pending appeal ........5

1. The United States is likely to succeed on the merits ..................................6

2. The United States will be irreparably harmed absent a stay........................8

3. The balance of harms and public interest tip strongly in favor of a stay ........................................................................................10

CONCLUSION........................................................................................................12

# Table of Authorities

## Federal Cases

*Ams. United for Separation of Church and State v. City of Grand Rapids*, 922 F.2d 303 (6th Cir. 1990) .......... 6

*Boyd v. Am. Heritage Ins. Co.*, 282 F. Supp. 2d 502 (S.D. Miss. 2003) .......... 5

*DeOtte v. State*, 20 F.4th 1055 (5th Cir. 2021) .......... 7

*Esquivel v. Mullin*, No. 1:26-cv-02000, 2026 WL 2322821 (W.D. Tex. Aug. 10, 2026) .......... 4

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000) .......... 7

*Greco v. Nat'l Football League*, 116 F. Supp. 3d 744 (N.D. Tex. 2015) .......... 5

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49 (1987) .......... 7, 9

*In re Fort Worth Chamber of Commerce*, 100 F.4th 528 (5th Cir. 2024) .......... 6

*Jennings v. Rodriguez*, 583 U.S. 281 (2018) .......... 9, 10

*Karr v. Hefner*, 475 F.3d 1192 (10th Cir. 2007) .......... 9

*Lucas v. McKeithen*, 102 F.3d 171 (5th Cir. 1996) .......... 6

*Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173 (5th Cir. 1999) .......... 4

*Seila Law LLC v. CFPB*, 591 U.S. 197 (2020) .......... 7

*Texas v. EPA*, 829 F.3d 405 (5th Cir. 2016) .......... 5

*United States v. Texas*, 181 F.4th 548 (5th Cir. 2026) .......... 7

## Federal Statutes

42 U.S.C. § 7604(c)(2) .......... 6

## Constitutional Provisions

U.S. Const. Art. II, § 1 Cl. 1 & § 3 .......... 11

## Administrative and Executive Materials

Exec. Order No. 14156, 90 Fed. Reg. 8433 (Jan. 20, 2025) .......... 11

Exec. Order No. 14179, 90 Fed. Reg. 8741 (Jan. 23, 2025) .......... 11

## INTRODUCTION

Three months ago, the United States filed a motion to intervene in this citizen suit and to dismiss Plaintiffs' claims. With a declaration from the Department of War, the motion detailed the grave threat that Plaintiffs' requested preliminary injunction would pose to national security. The motion also identified serious statutory and constitutional arguments that the United States has an unequivocal right to intervene and a unilateral right to dismiss the suit. The United States filed an amended motion more than two months ago.

Since then, this Court has held three status conferences where it discussed the United States' amended motion, the fully briefed motion to dismiss, and the fully briefed motion for preliminary injunction. And three times the Court has denied the United States' request to participate. At the most recent conference on August 24, the Court stated—again without the United States' presence—that it intends to deny the United States' motion for intervention and dismissal and intends to hold a hearing on Plaintiffs' motion for a preliminary injunction in October. The United States promptly moved for entry of a written order by September 10.

Allowing these proceedings to continue while the United States' appeal is pending renders its statutory right to intervene meaningless. On September 18, the United States filed a notice of appeal from this Court's constructive denial of its motion to intervene and dismiss. This Court is accordingly divested of jurisdiction over all issues raised in the intervention motion until the Fifth Circuit's decision and remand. In the meantime, continuing with the preliminary injunction hearing and potentially shutting down a facility that enables effective targeting of enemy positions for the Department of War would cause serious harm to the United States.

The United States now moves to stay all proceedings while the Fifth Circuit addresses the critical issue of the United States' involvement in this case. Staying this case will serve the interests of judicial economy by avoiding parallel proceedings in this Court and the Court of Appeals,

and by allowing the Fifth Circuit to provide clarity and establish governing law. There is no need to expend judicial resources and party resources on a preliminary injunction hearing until the Fifth Circuit rules. Once it does, the Court can decide whether a hearing is necessary and, if so, whether the United States must be allowed to participate. Staying the case will avoid irreparable harm to national security and infringement of the United States' exclusive authority to enforce federal law. A stay will not unfairly prejudice Plaintiffs, as Plaintiffs themselves will conserve resources by not preparing for an unnecessary preliminary injunction hearing. Given the upcoming preliminary injunction hearing, the United States requests an order staying all proceedings no later than September 28.

## BACKGROUND

In April 2026, Plaintiffs filed citizen suit against Defendants x.AI Corp. and MZX Tech LLC alleging violations of the Clean Air Act. Dkt. No. 1. Two months later, Plaintiffs filed a motion for preliminary injunction. Dkt. No. 51. Defendants responded with a motion to dismiss. Dkt. No. 55.

The United States filed a motion to intervene and to dismiss the complaint on June 15, Dkt. No. 59, and filed an amended motion on July 7, Dkt. No. 86. The motion explained that the United States possesses an unqualified statutory right to intervene in a citizen suit under the Clean Air Act. Dkt. No. 86 at 7. It also explained that, based on the Executive Branch's preeminent responsibility for enforcement of federal law, the Clean Air Act's citizen suit provision must be interpreted to allow the United States to dismiss any complaint brought by a private citizen. *Id.* at 8. The motion explained that the United States has determined, in an exercise of its exclusive enforcement authority, that no claim should be prosecuted against Defendants in this

matter. *Id.* Indeed, this citizen suit poses grave national security threats because an injunction would significantly harm the Department of War's battlefield capabilities. *Id*. at 6.

Also on the docket is Plaintiffs' motion to strike the United States' motion to intervene and dismiss. Dkt. No. 82. All motions are fully briefed.

The United States requested permission to participate in all three status conferences where this Court discussed with the parties the United States' amended motion to intervene and the United States' potential participation in this case. This Court denied all three requests. In the August 24 conference, this Court stated that it will deny the United States' amended motion for intervention and dismissal and deny Defendants' motion to dismiss. Dkt. No. 118 at n.1; Ex. A. The Court also stated that it plans to proceed with an October preliminary injunction hearing and requested dates of availability from the Parties for a hearing in October, again sidelining the United States. *Id*.

After learning this from the transcript of the hearing, the United States filed a motion for entry of written order on its amended motion by September 10. Dkt. No. 118. That date passed without any written ruling. *Id*. The Court appears to be preparing for a preliminary injunction hearing in late October without allowing the United States to participate and despite an unequivocal statutory right to intervene. This is causing clear prejudice to the United States' interests and rights.

On September 18, the United Sates filed a notice of appeal from this Court's constructive denial of its motion to intervene and dismiss.

**ARGUMENT**

This Court should hold this case in abeyance pending resolution of the United States' appeal to the Fifth Circuit. First, the court should exercise its inherent discretion over its docket to

stay the proceedings in the interests of judicial economy. Second, a stay is alternatively warranted based on the standard for staying an order pending appeal.

## I. The Court should exercise its inherent discretion to stay the proceedings pending appeal.

This Court should not insulate its denial of the United States' amended motion for intervention and dismissal by proceeding with the preliminary injunction hearing. A district court should hold matters in abeyance "when a higher court will soon resolve an issue pending" before it. *Esquivel v. Mullin*, No. 1:26-cv-02000, 2026 WL 2322821, at *2 (W.D. Tex. Aug. 10, 2026). Here, the United States has now appealed, and the Fifth Circuit will soon resolve the scope of the United States' right to intervene and dismiss. This Court now lacks jurisdiction over the intervention issue, which has been transferred to the Fifth Circuit. "A district court loses all jurisdiction over matters brought to the court of appeals upon the filing of a notice of appeal." *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 190 (5th Cir. 1999).

Moving forward with preliminary injunction proceedings without the United States' participation is untenable, given the national security issues at stake, the unequivocal statutory right to intervene, and the serious constitutional issue the United States has raised about its Article II authority to enforce federal law. This Court should instead stay all proceedings and await instruction from the Fifth Circuit.

Staying this case is plainly the most efficient use of judicial resources. If the United States prevails on appeal, it will conclusively resolve the motion for intervention and dismissal and will provide clarity about the scope of the United States' right to intervene and dismiss a citizen suit. And if the United States does not prevail on appeal, it will likewise simplify the case on remand by excluding the United States from the case. Either way, there will be no need for the Court or the Parties to prepare for and hold a preliminary injunction hearing next month, and no

need to rule on the other pending motions at least until the Fifth Circuit remands the case. It is far better to wait until the Court of Appeals resolves the crucial questions presented by the United States' motion for intervention and dismissal.

On the other hand, proceeding on parallel tracks would create confusion by denying the United States the right to participate in preliminary injunction proceedings, which is precisely the issue the Fifth Circuit will soon be addressing. Barreling forward in this Court would likely result in Fifth Circuit motions practice and conflicting rulings between the two courts. These are circumstances where abeyance makes sense and is amply justified. *See Boyd v. Am. Heritage Ins. Co.*, 282 F. Supp. 2d 502, 503 (S.D. Miss. 2003) (granting abeyance of litigation because the pending legal issue in higher courts leave the district court case, "in a state of total confusion"); *Greco v. Nat'l Football League*, 116 F. Supp. 3d 744 (N.D. Tex. 2015) (granting stay pending appeal when the interests of the parties and conservation of judicial resources warrants awaiting the higher court ruling).

As discussed below, the equities, balance of harms, and public interest also strongly favor a stay of these proceedings. Plaintiffs will not be prejudiced by expending fewer resources litigating in this Court while the Court of Appeals resolves the controlling legal issues. Meanwhile, moving forward will severely prejudice the United States, who has not been allowed to participate thus far, and whose critical national security interests are at stake.

## II. A stay is warranted under the standard for a stay of an order pending appeal.

Alternatively, the Court should grant a stay pending appeal because (1) the United States will likely succeed on the merits, (2) the United States faces irreparable injury absent a stay, and (3) the public interest supports a stay. *Texas v. EPA*, 829 F.3d 405, 411 (5th Cir. 2016). Each of those factors is met here.

**1. The United States is likely to succeed on the merits.**

The United States is likely to succeed on the merits of its appeal. To begin, denial of intervention as of right is an appealable final order under 28 U.S.C. § 1291. *Lucas v. McKeithen*, 102 F.3d 171, 173 (5th Cir. 1996). And where "delay" in ruling on an intervention motion "is the practical equivalent of a denial," the movant-intervenor may appeal notwithstanding the lack of "a formal denial." *Ams. United for Separation of Church and State v. City of Grand Rapids*, 922 F.2d 303, 306 (6th Cir. 1990).

That is certainly the case here. With still no ruling on the United States' amended motion filed months ago, and the passing of September 10, this Court has constructively denied the United States motion to intervene and dismiss. The Court has excluded the United States from multiple status conferences directly bearing on its interests and plans to exclude the United States from the upcoming preliminary injunction hearing. And, in light of the United States' national-security interests threatened by the preliminary-injunction motion, the United States has shown that "swift review" of its motion for intervention and dismissal is necessary to protect those interests. *In re Fort Worth Chamber of Commerce*, 100 F.4th 528, 534-35 (5th Cir. 2024).

Next, the United States has demonstrated it should be granted intervention as of right to dismiss this case. There is no question the United States is entitled to intervene. A court shall grant intervention when a party has "an unconditional right to intervene," Fed. R. Civ. P. 24(a)(1), and the Clean Air Act mandates that the United States "may intervene as a matter of right at any time" in a citizen suit, 42 U.S.C. § 7604(c)(2).

There is no basis for denying intervention simply because the United States seeks to dismiss Plaintiffs' suit. The structure and allocation of enforcement authority of the Clean Air Act make clear that the United States' intervention right includes the right to dismiss a citizen suit.

"[A]llowing citizens to seek the relief the United States 'chose to forgo' … would 'curtail[] considerably' the government's 'discretion to enforce the Act in the public interest.'" Dkt. No. 86 at 10-17 (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 61 (1987)); *see Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 188 n.4 (2000) ("if the Executive Branch opposes a particular citizen suit," the United States may intervene to "bring the Government's views to the attention of the court"). This interpretation of the citizen suit provision is also required to avoid serious constitutional questions that would arise if citizen suits were allowed to usurp the Executive Branch's exclusive enforcement authority. For example, "punishing unlawful conduct through civil penalties payable to the Treasury on behalf of the United States is 'a quintessentially executive power.'" *Id*. at 17-23 (quoting *Seila Law LLC v. CFPB*, 591 U.S. 197, 219 (2020)). In short, because the United States is correct on the merits, intervention would not be "futile," and intervention must be granted. *United States v. Texas*, 181 F.4th 548, 554 (5th Cir. 2026).

Plaintiffs' other argument for denying the United States' motion is that "the motion to intervene was not accompanied by a complaint in intervention" as required by Rule 24(c). Dkt. No. 82. This ignores the Fifth Circuit's "permissive interpretation" of Rule 24(c), which contemplates that it does not always make sense for an intervenor to file either a complaint or an answer, and allows intervenors to comply by filing a document that is appropriate for the circumstances. Dkt. No. 87 at 5 (quoting *DeOtte v. State*, 20 F.4th 1055, 1067 n.2 (5th Cir. 2021)). Indeed, motions to remove, opposition memoranda to a motion for summary judgment, and even memoranda that simply apprises a district court of the grounds for intervention are accepted. *Id.* at 5-6.

Here, the United States has sufficiently apprised this Court of its right to intervene and dismiss this citizen suit. More fundamentally, it would make no sense for the United States to file either a complaint or an answer, given that the United States seeks to intervene as a plaintiff but seeks to dismiss the suit. Dkt. No. 86 at 7-24. Like a qui tam action in which the United States intervenes as plaintiff to dismiss, the United States need not file a complaint or an answer to comply with Rule 24(c). *Id*. at 20 n.5 (discussing analogous circumstances in qui tam actions). Plaintiffs' primary argument not only ignores Fifth Circuit precedent, but it would lead to the absurd result of interpreting the Civil Rules as somehow preventing the United States government from exercising its unqualified statutory right to intervene.

**2. The United States will be irreparably harmed absent a stay.**

Continuing these proceedings while the United States' intervention rights are at issue, combined with the grave risk of shutting down an advanced Department of War targeting facility, tips the other stay factors strongly in favor of the United States. At issue in this present litigation are matters of grave significance. The Department of War "relies on xAI as a primary classified computer infrastructure provider" and the "ability to field its data facilities at massive scale" is both "critical" and "foundational to our modern defense posture." Dkt. No. 85-1 ¶ 9. "Any impediment" to its operations at issue in this case—and particularly shutting off those operations' power supply as Plaintiffs attempt to do at the upcoming hearing—is thus unacceptable. *Id*. Proceeding with the present litigation necessarily encroaches on clear Article II Executive authority and damages national security. And Plaintiffs suffer no substantial harm if these issues are paused pending appeal of this Court's denial of the United States' amended motion.

Plaintiffs' citizen suit seeks to shut down the power supply to a data facility that provides advanced targeting solutions to the U.S. Department of War. Dkt. No. 85-1 ("the Grok Gov

Model within [Department of War, the Grok Gov Model AI services from this facility] enabled U.S. forces to deploy over 2,000 munitions to 2,000 distinct targets within 96 hours during Operation Epic Fury"). If the power supply source at issue here is shut down, the AI services will be unable to support "DoW's ability to meet its national security mission and keep pace with adversaries." *Id.* at ¶ 8. Thus, the United States' ability to rapidly target enemy positions in support of federal foreign policy objectives will clearly, and irreparably, be harmed absent a stay of all proceedings in this matter.

Proceeding with the litigation also necessarily encroaches on the Executive Branch's enforcement authority under the Clean Air Act. Justices on the United States Supreme Court and Judges within the U.S. Fifth Circuit Court of Appeals have recognized such harm. Dkt. No. 86 at 14-15. For example, in *Gwaltney*, "the Supreme Court stressed the '*danger*' of allowing citizens to supplant federal enforcement decisions in the materially similar Clean Water Act." *Id*. (emphasis added) (citing *Gwaltney of Smithfield, Ltd.*, 484 U.S. at 60-61). In the Fifth Circuit, judges have recognized the danger of "effectively ced[ing] primary enforcement authority to citizens" which "inappropriately second-guesses" federal enforcement structures, or otherwise furthering some requirement that "an agency's prosecutorial strategy coincide with that of the citizen-plaintiff." Dkt. No. 86 at 14-15 (citing *Karr v. Hefner*, 475 F.3d 1192, 1197 (10th Cir. 2007)). As this litigation proceeds, it necessarily chips away at what Congress clearly intended to be the Executive Branch's primary, and unwavering, enforcement authority under the Clean Air Act.

When courts are to interpret statutes under the Constitution, they must "shun" any interpretation that would raise "serious constitutional doubts." *Id*. at 17 (citing *Jennings v. Rodri-*

*guez*, 583 U.S. 281, 286 (2018). As the present action seeks to exact penalties payable exclusively to the U.S. Treasury, it is highly doubtful resolving Article II's vesting of authority in the President can be interpreted to permit private citizens seeking such penalties when the Executive affirmatively declines consent. *Id*. at 19. Due to the grave constitutional doubts this citizen suit exposes, this litigation must be stayed.

The United States continues to suffer irreparable harm because this Court ignores the United States' rights and interests in this litigation. The United States has been placed in a twilight zone ever since it filed the initial motion for intervention and dismissal in June 2026. Dkt. No. 118 at 1-2. When Plaintiffs emailed this Court seeking guidance on how to respond to the United States' initial motion, this Court set a status conference yet denied the United States' participation. *Id*. When the Court set a status conference to address the United States' amended motion, the Court again denied via email the United States' ability to be heard. *Id*. The Court later conversed at length on August 24 with Plaintiffs regarding the amended motion, discussing whether the United States could cure the denial of the amended motion. *Id*. In that same conference where this Court announced its steadfast intention to proceed with a preliminary injunction in October regardless of the United States' interests. *Id*.

**3. The balance of harms and public interest tip strongly in favor of a stay.**

The balance of harms favors a stay. The United States will suffer severe prejudice if a preliminary injunction hearing moves forward without its participation. On the other hand, Plaintiffs and this court will conserve resources by avoiding the work of preparing for and attending a preliminary injunction hearing that unlawfully excludes the United States and that is entirely unnecessary given the United States' intent to dismiss this suit. Indeed, Plaintiffs will suffer no substantial prejudice from staying these proceedings because, given the United States'

right to dismiss this action, Plaintiffs have no cognizable interest in these proceedings moving forward. As for Defendants, they have already represented to the Court via email that they oppose scheduling a preliminary injunction hearing until the United States' intervention question is resolved.

The public interest also favors a stay. Article II of the U.S. Constitution vests the executive Power in a President "who 'shall take Care that the Laws be faithfully executed.'" Dkt. No. 86 (citing U.S. Const. Art. II, § 1 Cl. 1 & § 3). Consistent with that authority, "if the Executive Branch opposes a particular citizen suit, the United States may intervene to bring the Government's views to the attention of the court." *Id*. at 11-14 (citations omitted) (quotations omitted).

By maintaining their suit over the United States' objection, Plaintiffs usurp federal environmental enforcement authority, seeking remedies purportedly on behalf of the United States, but in reality seeking results that directly threaten national security. The United States benefits when the U.S. Department of War has the best technology on the battlefield enabling warfighters to accomplish results for the American people. The public interest is best served if the United States can continue to achieve results like Operation Epic Fury.

In addition, President Trump has issued executive orders seeking to unleash American energy and the development of artificial intelligence, so that we can best compete with adversaries across the globe. Exec. Order No. 14156, 90 Fed. Reg. 8433 (Jan. 20, 2025); Exec. Order No. 14179, 90 Fed. Reg. 8741 (Jan. 23, 2025). The State of Mississippi has likewise recognized the importance of those imperatives. Dkt. No. 85-2. Because allowing this litigation to proceed hinders federal policy, a stay is appropriate while the United States pursues its appeal.

## CONCLUSION

For the foregoing reasons, the Court should stay all proceedings pending United States' forthcoming appeal from this Court's constructive denial of intervention. The United States requests entry of a written order on this motion by September 28.

Respectfully submitted,

STANLEY E. WOODWARD, JR.
Associate Attorney General
U.S. Department of Justice

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Energy and Natural Resources Division

JOHN K. ADAMS
Associate Deputy Attorney General
U.S. Department of Justice

MICHAEL WEISBUCH
Deputy Associate Attorney General
U.S. Department of Justice

ROBERT N. STANDER
Deputy Assistant Attorney General
Energy and Natural Resources Division

JUSTIN D. HEMINGER
Acting Deputy Assistant Attorney General
Energy and Natural Resources Division

/s/ Andrew M. Darlington
ANDREW M. DARLINGTON, Lead Counsel
Counsel
Florida Bar No. 1018895
U.S. Department of Justice
Energy and Natural Resources Division
950 Pennsylvania Ave. NW
Washington, D.C. 20530
(202) 532-3365
Andrew.Darlington2@usdoj.gov

*Counsel for the United States*

September 21, 2026