**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

**NAACP and NAACP MISSISSIPPI STATE CONFERENCE**

**Plaintiffs,**

**v.**

**X.AI CORP. and MZX TECH LLC**

**Defendants.**

**No. 3:26-cv-00074-DMB-JMV**

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO UNITED STATES' MOTION TO STAY ALL PROCEEDINGS PENDING APPEAL**

**TABLE OF CONTENTS**

INTRODUCTION ..... 1

HISTORY AND PROCEDURE ..... 2

ARGUMENT ..... 4

I. This Court still has jurisdiction over the United States' intervention, and it should resolve the United States' role in the first instance. ..... 5

A. The United States' notice of appeal is premature. A stay at this juncture will waste judicial resources. ..... 5

B. The United States cannot establish this Court's ongoing consideration constitutes an "effective denial" of its Motion for Intervention. ..... 6

II. The United States' request for a stay of all proceedings should be denied. ..... 8

CONCLUSION ..... 13

## INTRODUCTION

The Colossus Gas Plant's unpermitted air pollution threatens the health and welfare of NAACP's nearby members and other fenceline communities. Staying all proceedings before this Court will force the communities to endure increased risks of disease and premature death with each passing day. Though it now professes an interest in any Preliminary Injunction hearing held by this Court, the United States never acknowledges the ongoing harm discussed on nearly every page of the preliminary injunction briefing. Instead, claiming concern that it will not be allowed to participate in a hearing that has not been scheduled, the United States seeks to stay all district court proceedings while it appeals an order that has not been issued. *See* Dkt. No. 124. As it stands, the United States has nothing to appeal and the Fifth Circuit has nothing to review.

The issue plaguing the United States' intervention effort is *how* the Government could participate in this case, not *whether* the United States can participate at all. As NAACP has already noted: "The United States can likely establish *some* basis on which it may participate in this case to *some* extent." Dkt. No. 83 at 6. But the United States has created a procedural morass by failing to follow basic legal principles at every step. Now its effort to bypass the District Court entirely threatens further delay at the community's expense.

In its Motion to Strike the United States' intervention papers, NAACP expressed its preference to resolve the nature of and basis for the United States' participation *before* the Government was admitted into this case. *See id*. But the Court could also resolve the matter *afterward*. For example, though the United States' filings cannot support its purported "Plaintiff" status, the Court could consider granting the United States' motion to intervene conditioned on

the Government's realignment as a defendant.[1] Then, prior to any PI hearing, the Court could set appropriate limitations on the United States' participation to match its limited interests.[2]

In light of the United States' latest maneuvers, resolving *whether* the United States can participate in this case and then turning to the question of *how* would obviate any need for the Government's requested stay and serve the interests of judicial efficiency. Whatever its role, though, the United States' requested stay of all proceedings would irreparably harm NAACP members and other frontline communities exposed to the Colossus Gas Plant's illegal pollution. The United States' Motion should be denied.

**HISTORY AND PROCEDURE**

The United States' effort to enter and participate in this case has been confusing from the beginning and riddled with procedural missteps throughout.

On February 13, 2026, NAACP notified the United States of their intent to sue xAI and MZX Tech ("xAI") for violations of the Clean Air Act at its unpermitted Colossus Gas Plant. On April 14, NAACP filed the Complaint. *See* Dkt. No. 1. Just three weeks later, on May 6, NAACP

[1] *See* Dkt. 83 at 5-6 (discussing party alignment). Such an approach may best serve judicial efficiency in light of the United States' hollow appeal effort. Granting the United States' motion to intervene in the near-term—even subject to conditions to follow—should close any lingering question whether the United States has brewed itself an appealable order. *See*, *e.g.*, *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 378–79 (1987) (holding in a case where a party was granted permissive intervention subject to conditions that, because it, "during post-trial review, can challenge the limitations on its participation," the order granting limited participation was not immediately appealable).

[2] Courts may condition intervention "on such terms as will be consistent with the fair, prompt conduct" of the litigation. *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 710 (11th Cir. 1991); *see also* Fed. R. Civ. P. 24, 1966 Advisory Committee Notes (noting that intervenors as of right "may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.").

filed a motion for a preliminary injunction because xAI's illegal power plant causes irreparable harm to its members with each day of operation. *See* Dkt. Nos. 20 (Motion) & 21 (Memo).[3]

On May 26, this Court set a hearing on NAACP's Motion for Preliminary Injunction for August 24, 2026. *See* Dkt. No. 42.

On June 15, the United States filed a "Motion for Intervention and Dismissal." Dkt. Nos. 58 (Motion) & 59 (Memo). Though the Government sought intervention "as a Plaintiff," it did not file a complaint or articulate a claim against xAI for the Court's adjudication. It did not address whether the Colossus Gas Plant violates the law or increases NAACP members' risk of disease and death. And it did not file a proposed response to NAACP's Motion for a Preliminary Injunction. Rather, the United States insisted, based on its assessment of "federal policy and public interest," that "*no* relief" should be ordered against xAI. Dkt. No. 59 at 15.

On July 1, NAACP moved to strike the United States' motion as it failed to satisfy the fundamental requirement of adversity[4] and indeed basic Federal Rules of Civil Procedure. *See* Dkt. Nos. 82. However, NAACP acknowledged that the United States could likely establish some basis on which it may participate in this case and identified *four* ways that the United States could correct its filings to participate in this case. *See* Dkt. No. 83 at 5–6.

On July 7, without seeking leave of the Court, the United States filed amended papers but did not correct their fundamental flaws. *See* Dkt. Nos. 85 (Motion) & 86 (Memo). The

---

[3] NAACP's Preliminary Injunction papers were later amended with this Court's leave to account for the increase in harmful emissions at the Colossus Gas Plant. *See* Dkt. Nos. 50 (Court's Order), 51 (Plaintiffs' Amended Motion), & 52 (Plaintiffs' Amended Memo).

[4] As another court recently noted, "more than a century" of Supreme Court precedent establishes "beyond cavil that adverseness between litigants is a constitutional minimum that must be satisfied in every federal case seeking judicial determination." *Trump v. IRS*, No. 26-20609 slip op. at 14-15 (S.D. Fla. July 13, 2026) (discussing *Lord v. Veazie*, 49 U.S. 251, 255 (1850), and *Muskrat v. United States*, 219 U.S. 346, 349 (1911)).

Government's amended papers identified no claim against xAI and failed to follow the Federal Rules' requirements for intervention. And the Government remained silent on the topics of xAI's liability under the Clean Air Act and the harm that its unpermitted Colossus Gas Plant operations have caused—and continue to cause—NAACP's members. *See id*. This motion was fully briefed on July 24, 2026. Dkt. 102.

On July 15, NAACP filed their Rebuttal Memorandum in Support of its Motion for a Preliminary Injunction, concluding the briefing on that motion. *See* Dkt. No. 97.

On August 20, this Court advised the parties that the Preliminary Injunction hearing scheduled for August 24 would be postponed. The United States had not sought a written order or participation in the Preliminary Injunction hearing at any time in anticipation of that hearing.

On September 2, the United States manufactured its own deadline for this Court, seeking "entry of a written order" on its Motion for Intervention and Dismissal by September 10, 2026. *See* Dkt. No. 117. In its motion, the United States announced its interest in participating in any hearing on NAACP's Motion for a Preliminary Injunction for the first time.

On September 18, with its Motion for Intervention still pending, the United States noticed its appeal. Dkt. No. 123.

On September 21, the United States filed this request to stay all proceedings in the district court—including any hearing on the Preliminary Injunction Motion—while it pursues the appeal of a decision this Court has yet to issue.

**ARGUMENT**

The United States hopes to take advantage of confusion of its own making. It failed to satisfy basic requirements for its participation in this case and now complains it is prejudiced by delay. It refused to address the substance of NAACP's Motion for a Preliminary Injunction but

now insists it must be allowed to participate in a hearing on it. The Government's continued gamesmanship prejudices NAACP members who are facing new pollution and new health risks with each passing day.

## I. This Court still has jurisdiction over the United States' intervention, and it should resolve the United States' role in the first instance.

With its notice of appeal docketed, the Government claims "[t]his Court now lacks jurisdiction over" the matter of its intervention, "which has been transferred to the Fifth Circuit." *See* Dkt. No. 125 at 4. The United States is wrong. The Government's motion for a written order did not "construct" an appealable ruling from silence, and its premature notice of appeal does not deprive this Court of jurisdiction. This Court can—and should—proceed to resolve the question of the United States' intervention in the first instance.[5]

### A. The United States' notice of appeal is premature. A stay at this juncture will waste judicial resources.

The United States' notice of appeal precedes any order from this Court settling its intervention or describing its role in this case. Although the Federal Rules of Appellate Procedure allow for premature notices of appeal in certain, limited instances, *see* Fed. R. App. P. 4(a)(2), even where a premature notice may suffice, appellate jurisdiction awaits the district court's ruling. "A premature notice of appeal does not ripen until judgment is entered. . . . [I]t permits a premature notice of appeal from [a] bench ruling to relate forward to judgment and serve as an effective notice of appeal" from the appealable judgment, once it is entered. *FirsTier Mortg. Co. v. Inv. Mortg. Ins. Co.*, 498 U.S. 269, 275 (1991); *see also Outlaw v. Airtech Air Conditioning &*

[5] As this court has not yet resolved the United States' Motion for Intervention, the caselaw and argument mustered by xAI in support of the United States' request for a stay (Dkt. No. 127 at 4–5) is inapposite.

*Heating, Inc.,* 412 F.3d 156, 159–60 (D.C. Cir. 2005).[6] The Court of Appeals should not entertain the United States' appeal unless and until this Court has resolved the question of its intervention in the first instance. Thus, a stay of all proceedings—including this Court's resolution of the United States' pending Motion for Intervention—will undermine the United States' ability to obtain the appellate review on which it asks this Court to wait.

On the other hand, even if the United States' notice of appeal effectively transferred jurisdiction on the issue of its intervention to the Fifth Circuit, the Fifth Circuit is likely to treat any order from this Court on the United States' intervention "as an indicative ruling." *See* Fed. R. Civ. P. 62.1(a), (c) (allowing remands to the district court to enter a decision on a motion if the district court has indicated the motion "raises a substantial issue"); Fed. R. App. P. 12.1(b) (same); *see also Moore v. Tangipahoa Par. Sch. Bd.*, 836 F.3d 503, 504 (5th Cir. 2016) (treating as an indicative ruling the district court's statement that it would determine whether a conflict of interest existed if the case were remanded, when a notice of appeal divested the district court's jurisdiction). Far from prejudicing the parties, an order from this Court regarding the United States' intervention would support all parties' interests in the case's swift and certain resolution.

**B. The United States cannot establish this Court's ongoing consideration constitutes an "effective denial" of its Motion for Intervention.**

Where, as here, a "motion to intervene has not yet been granted or denied," a would-be intervenor generally has "no standing to take an appeal or appear as a party." *Toronto-Dominion Bank v. Cent. Nat. Bank & Tr. Co.*, 753 F.2d 66, 68 (8th Cir. 1985). Having not yet been granted

[6] This rule, crafted "to protect the unskilled litigant who files a notice of appeal from a decision that he reasonably but mistakenly believes to be [an appealable] judgment," does not create appellate jurisdiction where it would not otherwise exist. *See FirsTier*, 498 U.S. at 276. Rather it allows a premature notice of appeal to satisfy the requirement for a timely notice "if immediately followed by the entry of judgment." *Id*.

or denied intervention, the United States attempts to "construct" its own appealable order by claiming the fact this Court did not rule on its preferred timeline constituted an "effective denial" of its intervention. But a constructive denial exists only where a delay in ruling "has the same effect on the interventor's interest as would an outright denial." *Ams. United for Separation of Church and State v. City of Grand Rapids*, 922 F.2d 303, 306 (6th Cir. 1990). As such, construing a district court's actions to be an "effective denial is contextual," and warranted only where there is a "legitimate basis for urgency." *In re Fort Worth Chamber of Commerce*, 100 F. 4th 528, 535 (5th Cir. 2024).

Here, the United States cannot describe such a basis for urgency. The Government suggests that, absent intervention, it may not be able to participate in a hearing on NAACP's Motion for a preliminary injunction. But that argument fails for two reasons.

**First**, that hearing has not been scheduled. Thus, there is no clock by which the United States can measure its purported prejudice and there remains time for the Court to resolve the United States' role in advance of such a hearing. *Cf. In re Fort Worth Chamber of Commerce*, 100 F. 4th at 535 ("the Final Rule's fast-closing window for compliance demanded faster review of the motion for a preliminary injunction").

**Second**, there is no reason to assume the United States will be entirely excluded from participating in a Preliminary Injunction hearing at this point. The Court may still grant the United States' intervention request.[7] And if the Court denied the United States' intervention request, it could still allow the Government to correct its errors or reformulate its request to participate and refile. In fact, this Court indicated it was still considering that very possibility at

[7] In the event its intervention is granted, the United States' participation in any preliminary injunction hearing should be limited commensurate with the limited attention it gave the issues in its filings: addressing the equities of NAACP's requested injunction.

the most recent status conference, as reflected in the transcript cited by the United States. *See* Dkt. No. 116 at 12:25–13:4.

Ultimately, the United States provides no reason this Court's ongoing consideration of its intervention prejudices its interests *now* or could be construed as a "constructive" denial. A party "cannot simply say they need an expedited ruling and then appeal by claiming effective denial when they don't get it on their preferred timeline." *In re Fort Worth*, 100 F. 4th at 535. The United States' notice of appeal in this case is a procedural misadventure. And staying all proceedings before this Court—including the Court's order resolving United States' intervention—is more likely to frustrate the judicial process than to facilitate it.

## II. The United States' request for a stay of all proceedings should be denied.

Because this Court can still structure the United States' participation without delaying proceedings, the Court should deny the United States' requested stay. But if this Court evaluates the United States' stay request on its own terms, it still fails.

The United States' request (joined by xAI) starts in the wrong place: by asking the Court to disregard the familiar four-step framework for stays pending appeal from *Nken v. Holder*, 556 U.S. 418 (2009), and to apply a *Landis*-like standard instead. Dkt No. 125 at 4 (citing *Esquivel v. Mullin*, Slip. Op. No., 2026 WL 2322821 (W.D. Tex. Aug. 10, 2026); Dkt. No. 127 at 2-3. But it is far from certain that *Landis* applies here: While the *Landis* framework plainly applies where there is a request to "stay one case pending *another case's* disposition," *Fox Corp. v. Arroyo v Rodriguez*, 2026 WL 1734870, at *2 (S.D. Tex. June 16, 2026) (emphasis added), courts are divided over whether *Nken* instead must apply when "determin[ing] whether to grant stay of

proceedings pending interlocutory appeal" in the same case. *Kuang v. U.S. Dep't of Def.*, 2019 WL 1597495, at *2 (N.D. Cal. Apr. 15, 2019).[8]

The Fifth Circuit, for its part, has applied the *Nken* framework when considering analogous requests to stay district court proceedings pending interlocutory review, further undermining xAI's claim (Dkt. No. 127 at 2-3) that *Landis* must apply to all such requests to stay proceedings. *Earl v. Boeing*, 21 F.4th 895, 898 (5th Cir. 2021) (evaluating stay of district court proceedings pending interlocutory class certification appeal); *Mi Familia Vota v. Ogg*, 2022 WL 23042551, at *1 (5th Cir. Oct. 7, 2022) (evaluating stay of proceedings pending interlocutory sovereign immunity appeal). Accordingly, this Court should be wary of accepting the United States' invitation to disregard *Nken*, particularly where its ultimate aim is to forestall this court from granting a preliminary injunction, a stay of which would be governed by *Nken*. *See United States v. Texas*, 97 F.4th 268, 272 (5th Cir. 2024); *see also id.* at 306-07 (Oldham, J., dissenting) (applying *Nken* to reach different result).

In any event, the Court should not dwell on this threshold question long, because the United States' request fails whether considered under *Nken* or *Landis*. Under *Nken*, a court should consider four factors (which include but expand on those listed in *Landis*): (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

---

[8] xAI obscured this uncertainty by cutting off the key part the quote from *Fox Corp.*—that *Landis* applies most plainly to requests to "stay one case pending *another case's* disposition." 2026 WL 1734870, at *2; *see* Dkt. No. 127 at 2-3.

***Likelihood of success on appeal***: As the Court has not issued an order resolving its intervention and the United States has no basis for "constructing" one, the Fifth Circuit has nothing to review, and the Government's appeal is unlikely to succeed. Even if the Court of Appeals were to take up the question of the United States' intervention, it would find a muddled intervention request that shirks Federal Rules and ducks constitutional minimums and likely will not succeed.

***No injury to the United States absent a stay***: The United States premises its request for a stay on the notion that it will otherwise be excluded from all participation in this case. But as explained above, the nature of the United States' participation remains a matter pending before this Court and is one the Court can and should resolve before the case proceeds.[9]

The United States also suggests a stay is necessary to protect Department of War operations. *See* Dkt. No. 125 at 8. Its argument is inconsistent with the factual record—xAI has *excess* compute capacity at data centers not powered by the illegal turbines that it rents to competitors for more than a billion dollars a month. *See* Dkt. 92 at 23-24. In any event, the injury articulated presumes (1) this Court has already ordered xAI to immediately cease operation of its unpermitted turbines, *and* (2) xAI cannot service its Government contracts with its excess computing capacity. Should those circumstances arise, the United States can request a stay at that time.

[9] To the extent the United States alleges prejudice from its unsettled intervention status, it is a self-inflicted wound. The United States could have solved the quandary of its participation and presented its arguments to the Court at any time in any number of ways—even outside of its muddled intervention attempt. It could have re-filed as an intervenor-defendant, submitted an amicus, pursued limited party status under 28 U.S.C. § 2403, or even filed a notice of interest pursuant to 28 U.S.C. § 517.

Lastly, the United States claims that the case should be stayed "[d]ue to the grave constitutional doubts [it] exposes." Dkt. No. 125 at 9–10. The Government's arguments there retread its Motion for Dismissal. Though its request for dismissal shares a brief with its request to intervene, resolving the Government's intervention request is a necessary predicate for any decision on its Motion for Dismissal. The Government has not asked for an expedited ruling on the Motion for Dismissal, and denial of a Motion for Dismissal is not immediately appealable. *Thomas ex rel. D.M.T. v. Sch. Bd. St. Martin Par.*, 756 F.3d 380, 383 (5th Cir. 2014) (denial of motion to dismiss "ordinarily does not constitute an immediately appealable order"). Thus, these arguments do not support the Government's request for a stay here, and resolving any "doubts" the United States may have regarding the constitutionality of the Clean Air Act's Citizen Suit Provision remains squarely within the District Court's jurisdiction.

***No injury to xAI absent a stay***: Echoing the United States, xAI complains that, without a stay, the company will be "exposed to catastrophic financial, operational, and business harms." Dkt. No. 127 at 4. But, as with the United States' Department of War concerns, this injury presumes an injunction has been ordered: xAI is complaining about the "injury" of losing the Preliminary Injunction motion, not the injury of this Court's continued consideration of motions pending for its resolution. The financial catastrophe xAI fears is nothing but the natural consequence of its illegal conduct—*i.e.*, consequences it may face if this Court determines the company violated the Clean Air Act, that compliance with the law is an indelible cost of doing business, and that xAI must cease its operation of unpermitted turbines which are threatening the health and welfare of fenceline communities day in and day out. *See* Dkt. No. 97 at 8–9. Of course, the possibility that a court will enjoin unlawful conduct is not an "injury" that warrants staying all proceedings.

xAI also argues (Dkt. No. 127 at 3) that the proceedings will be duplicated or confused if this Court proceeds to resolve the pending motions and the Fifth Circuit later determines those decisions should have come in a different order or to a different end. Having the Fifth Circuit resolve this case in the first instance may seem more efficient to xAI, but it frustrates the ordinary course of justice and the invaluable role of district courts in administering it. *See*, *e.g.*, *Lone Star Nat. Bank, N.A. v. Heartland Payment Sys., Inc.*, 729 F.3d 421, 427 (5th Cir. 2013) ("[W]e decline to decide these complex issues as they are better addressed by the district court in the first instance."); *La. Env't Action Network v. City of Baton Rouge*, 677 F.3d 737, 749-50 (5th Cir. 2012) (concluding that the district court should determine in the first instance a complex question of law).

***Substantial injury of a stay to NAACP Members*:** The Colossus Gas Plant is far and away the largest industrial source of $NO_x$ in the 11-county Memphis Metropolitan Statistical Area, with the undisputed potential to emit thousands of tons of dangerous pollutants per year. Dkt. Nos. 51-43 at ¶ 51; 52 at 8; 94-4 at 7 tbl.1. With xAI running its now 59-turbine Colossus Gas Plant, regulators have issued ozone action alerts for 26 days through September 2026, compared to just 10 days in all of 2025. xAI's own air quality modeling for its permitted turbines shows significant impacts to surrounding air quality stemming from emissions significantly lower than those from the Colossus Gas Plant. Dkt. No. 52 at 10; Dkt. No. 51-17 (Trinity Modeling Report) at 28 (internal pagination 1-2).

NAACP members are suffering directly, every day, from the health impacts of these unpermitted turbines. *See* NAACP Member Declarations, Dkt. Nos. 51-37 through 51-42; *see also* Dkt. No. 52 at 21–23. As Dr. Suh explains in uncontested testimony, even short-term increases in exposure to these pollutants elevate risks of heart disease, lung disease, and

premature death. *See* Dkt. Nos. 51–46 (Suh Decl.) ¶¶ 16-20, 61-68; Dkt. Nos. 51–50 (Suh. Suppl. Decl.) ¶¶ 3, 11. In reasonable fear of those effects, NAACP members have spent months skipping time outdoors and limiting visits from family members to avoid harmful exposure to xAI's unlawful pollution. Dkt. Nos. 51-3–51-42.

***Denying the stay serves the public interest.*** Congress enacted the Clean Air Act to "enhance the quality of the Nation's air resources" and to "promote the public health and welfare" of its citizens. 42 U.S.C. § 7401. Denying the Government's stay request and allowing this case to proceed is the best way to serve that public interest. A stay of all proceedings—including this Court's resolution of the United States' motion for intervention—would only delay justice and allow xAI's unpermitted turbines to continue to emit illegal pollution that puts the health of frontline communities at risk.

Further, the United States' stay tactic here, if successful, would set a dangerous precedent, allowing litigants to short circuit the orderly course of litigation. Litigants would be encouraged—at the first indication that a lower court might not rule in their favor—to (1) notice an appeal of the "constructive denial" of a deadline it manufactured for the Court; and then (2) claim they have unilaterally robbed the district court of jurisdiction over their motion in order to obtain a stay of "all proceedings" in the district court.

This Court retains jurisdiction over the quandary of the United States' participation, and there is no reason to suspend its consideration of pending motions with a stay of all proceedings. Whatever the United States' role in this case, staying all proceedings would further endanger NAACP members living under the illegal air pollution of xAI's Colossus Gas Plant.

## CONCLUSION

For the foregoing reasons, the United States' stay request should be denied.

Dated: September 28, 2026

Respectfully submitted,


/s/ Carroll Rhodes

Carroll Rhodes (MS Bar No. 5314)
MISSISSIPPI STATE CONFERENCE
OF THE NAACP
119 Downing St
Hazlehurst, MS 39083
crhode@bellsouth.net
Phone: 601-894-4323

/s/ Elias L. Quinn

Elias L. Quinn (CO Bar No. 42159)
(Pro Hac Vice) – Lead Counsel
Mary Rock (IL Bar No. 6332240)
(Pro Hac Vice)
EARTHJUSTICE
D.C. Regional Office
1250 I Street, 4th Floor
Washington, DC 20005
mrock@earthjustice.org
equinn@earthjustice.org
Phone: 202-667-4500

Lauren Godshall (LA Bar No. 31465)
(Pro Hac Vice)
Rebecca Ramirez (TX Bar No. 24126749)
(Pro Hac Vice)
EARTHJUSTICE
Gulf Regional Office
845 Texas Ave., Suite 200
Houston, TX 77002
lgodshall@earthjustice.org
rramirez@earthjustice.org
Phone: 773-828-0836

/s/ Benjamin Grillot

Benjamin Grillot (DC Bar. No. 982114)
(Pro Hac Vice) – Lead Counsel
SOUTHERN ENVIRONMENTAL LAW CENTER
500 New Jersey Ave., Suite 600
Washington, DC 20001
bgrillot@selc.org
Phone: 202-828-8382

Patrick Anderson (GA Bar No. 226260)
(Pro Hac Vice)
SOUTHERN ENVIRONMENTAL LAW CENTER
Ten 10th Street NW, Suite 1050
Atlanta, GA 30309
panderson@selc.org
Phone: 404-521-9900

Elizabeth Putfark (VA Bar No. 100358)
(Pro Hac Vice)
SOUTHERN ENVIRONMENTAL LAW CENTER
120 Garrett Street, Suite 400
Charlottesville, VA 22902
eputfark@selc.org
Phone: 434-977-4090


*Counsel for Plaintiffs*