**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

| | |
|---|---|
| NAACP and NAACP MISSISSIPPI STATE CONFERENCE,<br><br>Plaintiffs/Cross-Defendants,<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>X.AI and MZX TECH LLC,<br><br>Defendants. | Case No. 3:26-cv-00074-DMB-JMV |

**UNITED STATES' COMPLAINT FOR DECLARATORY RELIEF**

## INTRODUCTION

1. Pursuant to Federal Rules of Civil Procedure 7(a)(1) and 13(g), Plaintiff-Intervenor the United States hereby asserts in this complaint a crossclaim against Plaintiffs/Cross-Defendants the NAACP and NAACP Mississippi State Conference (collectively, "NAACP") and allege as follows.[1]

2. Through a citizen suit under the Clean Air Act, NAACP seeks to enforce federal law, including by obtaining civil penalties payable solely to the United States Treasury. In doing so, NAACP threatens American national, economic, and energy security by seeking to shut off the power supply for Super Intelligence innovation that is essential to the Department of War's military operations.

3. The power to execute federal law belongs to the Executive Branch. Accordingly, under its proper statutory construction, the Clean Air Act affords the United States primacy over citizen-enforcers when it comes to enforcement discretion—as Article II of the Constitution requires. That includes the discretion to decide when such an enforcement action is unwarranted or inconsistent with federal enforcement priorities, and an interpretation that undermines that discretion would raise serious Article II concerns. NAACP should not be permitted to pursue this Clean Air Act enforcement action over the United States' objection.

4. Article II of the Constitution compels that construction of the Clean Air Act by vesting the power to seek civil penalties and enforce federal permitting regimes on behalf of the United States conclusively and preclusively in the Executive Branch.

[1] The Court directed EPA to file a pleading to meet the requirements of Federal Rule of Civil Procedure 24(c). Dkt. No. 135 at 20, 21. Because the United States did not intervene as a defendant, and NAACP's claims and allegations are asserted against xAI, the United States is not required to state defenses to the NAACP's claims or admit or deny allegations asserted against xAI. Fed. R. Civ. P. 7(b)(1).

5. The Court should issue declaratory relief that the best construction of the Clean Air Act citizen-suit provision's authorization of federal intervention includes the United States' right to dismiss a citizen suit.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the claims in this Complaint in Intervention under 28 U.S.C. §§ 1331 and 1345.

7. The Court may order the declaratory relief requested under 28 U.S.C. §§ 2201 and 2202.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because all Defendants maintain an office and conduct their operations within this judicial district and a substantial part of the events or omissions giving rise to this action occurred within this judicial district.

## PARTIES

9. Plaintiff-Intervenor the United States of America is suing on its own behalf, on behalf of its citizens, on behalf of its executive department, and on behalf of the Administrator of the U.S. Environmental Protection Agency, Lee M. Zeldin.

10. Plaintiffs/Cross-Defendants NAACP and NAACP Mississippi State Conference are non-profit organizations who filed the instant citizen suit.

11. Defendant x.AI Corporation is a corporation incorporated in the state of Nevada with a principal place of business in California.

12. MZX Tech is a subsidiary of x.AI Corporation and owns and operates the power source located at 2875 Stanton Road South in Southaven, Mississippi, which powers x.AI Corporation's data center that supports America's national security.

## FACTUAL ALLEGATIONS

13. This case concerns temporary power sources that Defendants x.AI and MZX Tech LLC (collectively, "xAI") use to power data centers that support the Grok artificial-intelligence platform.

14. The Mississippi Department of Environmental Quality determined that the State's State Implementation Plan ("SIP") did not require Clean Air Act permits for the turbines that help power Grok.

15. Grok's continued operation and availability "is a matter of paramount national security." Dkt. No. 58, Ex. A ¶ 8. Grok is "one of only four proprietary state-of-the-art" AI models that can support "national security applications," and "one of just three" suitable to support "mission-critical operations across Secret and Top-Secret classified networks." *Id.* ¶ 4.

16. The Department of War relies on xAI's "Grok Gov Model," which offers features "found in no other frontier AI model." *Id.* ¶ 5. For example, during Operation Epic Fury, Grok "enabled U.S. forces to deploy over 2,000 munitions to 2,000 distinct targets within 96 hours . . . , a testament to the greatly increased operational efficiency made possible by the Grok Gov Model." *Id.* ¶ 6.

17. "If Grok Gov Model cannot be deployed, refined, and upgraded" across the Department to support future operations, "due to either limitations in energy supply or limited reserve compute capability, such as those requested by [the NAACP] in this matter," that would "severely impact[]" "many tools" used by the Department's military and civilian personnel. *Id.* ¶ 10.

18. The State of Mississippi has similarly determined that continued operation of xAI's data centers and turbines serves the State's interests. Dkt. No. 58, Ex. B. If xAI's turbines

are forced to shut down through this civil enforcement action, the State explained, that "would create an immediate and substantial disruption to the State's economy" and "disrupt the Clean Air Act's delicate balance of cooperative Federalism." *Id.*

19. NAACP filed this Clean Air Act citizen suit on April 14, 2026.

20. The complaint alleges that xAI is violating Mississippi's SIP, the Prevention of Significant Deterioration program, and EPA's hazardous pollutant regulations because the gas-fired turbines lack certain permits and approvals, and are allegedly not complying with emissions limits, employing certain pollution controls, or monitoring, reporting, and keeping records as necessary to ensure continued compliance.

21. Although the state regulator has determined that the SIP does not require permits for the turbines and has declined any enforcement, NAACP disagrees with that determination.

22. As relief, NAACP seeks civil penalties—payable to the United States Treasury—of $124,426 per day of violation, plus injunctive relief ordering xAI to stop operating its turbines "unless and until [xAI] obtain[s] the required permits," employs certain pollution controls allegedly mandated by the Clean Air Act, and takes other mitigating measures.

23. On June 15, 2026, the United States filed a motion for intervention and dismissal of the citizen suit.

24. In its motion, the United States stated its opposition to the citizen suit based on the United States' determination that action is inconsistent with federal policy and the public interest.

25. As this Court has recognized, the Clean Air Act's citizen suit provision states that "[i]n any action under this section, the Administrator [of the EPA], if not a party, may intervene as a matter of right *at any time in the proceeding*." 42 U.S.C. § 7604(c)(2) (emphasis added).

26. The fact that Congress authorized EPA to intervene at any time in the proceeding demonstrates Congress's intent that the views of EPA and the United States are relevant at all phases of this litigation. *See also Daimler Trucks N. Am. LLC v. EPA*, 745 F.3d 1212, 1218 (D.C. Cir. 2013) (recognizing EPA's ability under section 7604(c)(2) to intervene for the purpose of presenting its views on the propriety of imposing penalties). The statute and caselaw support a finding that the purpose of EPA's intervention in a citizen suit goes beyond merely asserting a claim or defending against a claim.

**COUNT I – CROSSCLAIM FOR DECLARATORY RELIEF**

27. The United States incorporates by reference all allegations stated above.

28. NAACP has impermissibly proceeded with this citizen suit against the United States' objection.

29. Such action is inconsistent with the Clean Air Act citizen suit provision as interpreted and the U.S. Constitution.

30. The Clean Air Act's structure and allocation of enforcement authority confirm that citizen suits may not override decisions made by the federal government.

31. The Clean Air Act allocates a diligent prosecution bar to the federal government such that, upon notice of a citizen suit, the federal government may sue and displace the citizen suit.

32. Under the Take Care Clause in Article II of the U.S. Constitution, the Executive Branch has the power to enforce federal law and take care that the laws are faithfully executed.

33. Interpreting the Clean Air Act's citizen suit provision to enable private citizens to usurp federal policy decisions would impermissibly encroach on the Executive Branch's authority under the Take Care and Vesting Clauses of Article II of the U.S. Constitution.

34. In order to avoid encroachment on Article II powers, and to adhere to the structure and allocation of the Clean Air Act, the United States should be granted declaratory relief sufficient to protect its Article II authority to enforce the Clean Air Act.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests that this Court:

A. Declare that the Clean Air Act citizen-suit provision's authorization for federal intervention includes the United States' right to dismiss NAACP's citizen suit, and that its citizen suit cannot proceed against the objection of the United States.

B. Award the United States its costs and disbursements in this action; and

C. Award such other and further relief as the Court may deem just and proper.

Date: October 23, 2026

Respectfully submitted,

STANLEY E. WOODWARD, JR.
Associate Attorney General
U.S. Department of Justice

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Energy and Natural Resources Division

JOHN K. ADAMS
Associate Deputy Attorney General
U.S. Department of Justice

MICHAEL WEISBUCH
Deputy Associate Attorney General
U.S. Department of Justice

ROBERT N. STANDER
Deputy Assistant Attorney General
Energy and Natural Resources Division

/s/ *Andrew M. Darlington*
ANDREW M. DARLINGTON, Lead Counsel
Counsel
Florida Bar No. 1018895
U.S. Department of Justice
Energy and Natural Resources Division
950 Pennsylvania Ave. NW
Washington, D.C. 20530
(202) 532-3365
Andrew.Darlington2@usdoj.gov

*Counsel for the United States*