**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

| | | |
|---|---|---|
| **NAACP and NAACP MISSISSIPPI STATE CONFERENCE,** | § | |
| *Plaintiffs/Cross-Defendants,* | § | |
| **UNITED STATES OF AMERICA,** | § | |
| *Intervenor-Plaintiff,* | § | |
| v. | § | **Case No. 3:26-cv-00074-DMB-JMV** |
| **X.AI Corp. and MZX Tech LLC,** | § | |
| *Defendants.* | § | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND STAY PENDING APPEAL**

*(Counsel listed following page)*

Patrick D. Traylor* (D.C. Bar No. 449350)
Jeremy C. Marwell* (D.C. Bar No.1000299)
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, D.C. 20037
(202) 639-6500
ptraylor@velaw.com
jmarwell@velaw.com

Christopher V. Popov* (TX Bar No. 24032960)
VINSON & ELKINS LLP
845 Texas Avenue
Suite 4700
Houston, TX 77002
(713) 758-2636
cpopov@velaw.com

Daniel W. Van Horn (MS Bar No. 102105)
BUTLER SNOW LLP
6075 Poplar Ave., Suite 500
Memphis, TN 38187
(901) 680-7331
danny.vanhorn@butlersnow.com

P. Ryan Beckett (MS Bar No. 99524)
Keri E. Herrington (MS Bar No. 106815)
BUTLER SNOW LLP
1020 Highland Colony Pkwy.
Suite 1400
Ridgeland, MS 39157
(601) 948-5711
(601) 948-5177
ryan.beckett@butlersnow.com
keri.herrington@butlersnow.com

Michael B. Buschbacher*
James R. Conde*
BOYDEN GRAY PLLC
800 Connecticut Ave. NW,
Suite 900
Washington, D.C. 20006
(202) 955-0620 (MB)
(646) 266-4011 (JC)
mbuschbacher@boydengray.com
jconde@boydengray.com

* *pro hac vice*

*Counsel for X.AI Corp. and MZX Tech LLC*

# TABLE OF CONTENTS


TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

BACKGROUND .......... 4

- A. Factual background .......... 4
- B. Procedural background .......... 6

ARGUMENT .......... 7

I. Legal standard .......... 7

II. The question of Plaintiffs' statutory standing under the Clean Air Act supports certifying the Order for immediate appeal. .......... 9

- A. Reasonable jurists could disagree about whether an association suing on behalf of its members can be deemed to bring suit "on [its] own behalf" under the Clean Air Act. .......... 9
- B. The statutory-standing question is a controlling issue of law, the resolution of which would terminate the litigation. .......... 11

III. The "mobile source" question supports certifying the Order for immediate appeal. .......... 12

- A. Reasonable jurists could disagree on the mobile-source question. .......... 12
- B. The mobile-source question is controlling for two of Plaintiffs' three claims, and its resolution would significantly narrow the scope of this case. .......... 14

IV. The question whether the Clean Air Act's citizen-suit provision is constitutional supports certification of the Order for immediate appeal. .......... 16

- A. Reasonable jurists could disagree on the constitutionality of the Clean Air Act's citizen-suit provision, given recent separation-of-powers precedents from the Supreme Court and Fifth Circuit. .......... 16
- B. The constitutional question is controlling, and its resolution would materially advance the termination of the litigation. .......... 18

V. A stay pending resolution of any interlocutory appeal is appropriate. .......... 19

CONCLUSION .......... 21

CERTIFICATE OF SERVICE .......... 23

# TABLE OF AUTHORITIES

## Cases

*Adams v. Walker*,
No. 2:20-cv-02794, 2022 WL 457821 (E.D. La. Feb. 15, 2022)........................................ 9, 15

*Adkinson v. Int'l Harvester Co.*,
975 F.2d 208 (5th Cir. 1992) ........................................................................................ 12

*Asis Internet Servs. v. Active Response Grp.*,
No. 07-cv-6211-TEH, 2008 WL 4279695 (N.D. Cal. Sept. 16, 2008).................................... 19

*Blanchard 1986, Ltd. v. Park Plantation, LLC*,
553 F.3d 405 (5th Cir. 2008) ........................................................................................ 11

*Castellanos-Contreras v. Decatur Hotels, LLC*,
622 F.3d 393 (5th Cir. 2010) ........................................................................................ 8, 11

*Cazorla v. Koch Foods of Miss., LLC*,
No. 3:10-cv-00135-DPJ-FKB, 2015 WL 3970606 (S.D. Miss. June 30, 2015)......... 8, 9, 19, 20

*CFPB v. All Am. Check Cashing, Inc.*,
33 F.4th 218 (5th Cir. 2022) ........................................................................................ 11, 18

*CFPB v. All Am. Check Cashing, Inc.*,
952 F.3d 591 (5th Cir. 2020) ........................................................................................ 17

*CFPB v. All Am. Check Cashing, Inc.*,
No. 3:16-cv-356-WHB-JCG, ECF No. 240 (S.D. Miss. Mar. 27, 2018) ................................ 17

*Coates v. Brazoria Cnty., Tex.*,
919 F. Supp. 2d 863 (S.D. Tex. 2013) ........................................................................... 9

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010) ........................................................................................ 8

*Doe v. X Corp.*,
821 F. Supp. 3d 632 (N.D. Tex. 2026) ........................................................................... 14

*FCC v. Consumers' Rsch.*,
606 U.S. 656 (2025)...................................................................................................... 16

*Ferring B.V. v. Allergan, Inc.*,
343 F. Supp. 3d 284 (S.D.N.Y. 2018) ........................................................................... 12

*Fisher v. Halliburton*,
667 F.3d 602 (5th Cir. 2012) ........................................................................................ 10

*Fox Corp. v. Arroyo Rodriguez*,
No. 4:25-cv-4650, 2026 WL 1734870 (S.D. Tex. June 16, 2026) ........................................... 20

*Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*,
95 F.3d 358 (5th Cir. 1996) .......................................................................................... 10

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ........ 4, 17

*Gonzalez v. CoreCivic, Inc.*,
986 F.3d 536 (5th Cir. 2021) ........ 14

*Goree v. City of Verona*,
No. 1:17-cv-00093-SA-DAS, 2020 WL 6051258 (N.D. Miss. Oct. 13, 2020) ........ 7, 12

*Greinstein v. Granite Servs. Int'l, Inc.*,
No. 2:18-CV-208-Z-BR, 2023 WL 5167606 (N.D. Tex. June 28, 2023) ........ 8

*Hadjipateras v. Pacifica, S.A.*,
290 F.2d 697 (5th Cir. 1961) ........ 7, 8, 15

*Hawaii ex rel. Louie v. JP Morgan Chase & Co.*,
921 F. Supp. 2d 1059 (D. Haw. 2013) ........ 19

*Hood v. JPMorgan Chase & Co.*,
No. 3:12-cv-565-WHB-LRA, 2013 WL 12092108 (S.D. Miss. Sept. 12, 2013) ........ 14

*Huddleston v. FBI*,
No. 4:20-cv-447, 2021 WL 1837548 (E.D. Tex. May 7, 2021) ........ 20

*In re Trump*,
874 F.3d 948 (6th Cir. 2017) ........ 15

*La. Patients Comp. Fund Oversight Bd. v. St. Paul Fire & Marine Ins. Co.*,
411 F.3d 585 (5th Cir. 2005) ........ 11

*La. State Conf. of NAACP v. Louisiana*,
495 F. Supp. 3d 400 (M.D. La. 2020) ........ 9, 12, 15

*LaFarge v. Kyker*,
No. 1:08-cv-00185-SA-JAD, 2009 WL 4110887 (N.D. Miss. Nov. 23, 2009) ........ 8, 13

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ........ 20

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ........ 11

*Liberty Mut. Fire Ins. Co. v. Fowlkes Plumbing, LLC*,
No. 1:17-cv-0010-GHD-DAS, 2018 WL 2107725 (N.D. Miss. May 7, 2018) ........ *passim*

*Malbrough v. Crown Equip. Corp.*,
392 F.3d 135 (5th Cir. 2004) ........ 11

*Melton Props., LLC v. Ill. Cent. R.R. Co.*,
No. 4:18-cv-00079, 2020 WL 7335018 (N.D. Miss. Dec. 14, 2020) ........ 8

*Morales v. OK Trans, Inc.*,
No. 2:19-cv-00094, 2024 WL 3223676 (S.D. Tex. June 18, 2024) ........ 19

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
178 F.4th 224 (5th Cir. 2026) ........ 3, 16

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 20

*O'Brien v. Avco Corp.*,
309 F. Supp. 703 (S.D.N.Y. 1969) .......... 19

*Overdam v. Tex. A&M Univ.*,
43 F.4th 522 (5th Cir. 2022) .......... 18

*Rebozo v. Wash. Post Co.*,
515 F.2d 1208 (5th Cir. 1975) .......... 12

*Rico v. Flores*,
481 F.3d 234 (5th Cir. 2007) .......... 7

*Ruiz v. Estelle*,
650 F.2d 555 (5th Cir. Unit A 1981) .......... 20

*Ryan v. Flowserve Corp.*,
444 F. Supp. 2d 718 (N.D. Tex. 2006) .......... 11

*Seila Law LLC v. CFPB*,
591 U.S. 197 (2020) .......... 16, 17

*Sierra Club v. La. Dep't of Env't Quality*,
100 F.4th 555 (5th Cir. 2024) .......... 2

*Silverthorne Seismic, LLC v. Sterling Seismic Servs., Ltd.*,
125 F.4th 593 (5th Cir. 2025) .......... *passim*

*Sparks v. Tex. Dep't of Transp.*,
144 F. Supp. 3d 902 (S.D. Tex. 2015) .......... 20

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......... 1, 10

*Total Ben. Servs., Inc. v. Grp. Ins. Admin., Inc.*,
No. 92-2386, 1993 WL 98675 (E.D. La. Mar. 25, 1993) .......... 20

*Travelers Prop. Cas. Co. of Am. v. Federated Rural Elec. Ins. Exch.*,
No. 3:08-cv-00083-DPJ-JCS, 2009 WL 2900027 (S.D. Miss. Sept. 3, 2009) .......... 8

*Trump v. Slaughter*,
609 U.S. 422 (2026) .......... 3, 16

*Trump v. United States*,
603 U.S. 593 (2024) .......... 3

*United States ex rel. Polansky v. Exec. Health Res., Inc.*,
599 U.S. 419 (2023) .......... 17

*United States v. Dawn Props., Inc.*,
No. 1:14CV224-LG-JCG, 2015 WL 13466028 (S.D. Miss. Nov. 18, 2015) .......... 8

*United States v. Minor*,
121 F.4th 1085 (5th Cir. 2024) .......... 14

*Watson v. Yolo Cnty. Flood Control & Water Conservation Dist.*,
No. 2:06-cv-01549-FCD-DAD, 2007 WL 4107539 (E.D. Cal. Nov. 16, 2007) ...................... 19

*Wellons, Inc. v. Sia Energoremonts Riga, Ltd.*,
No. 3:13-CV-05654, 2013 WL 5913266 (W.D. Wash. Nov. 4, 2013).................................... 19

**Statutes**

28 U.S.C. § 1292(b) ............................................................................................ *passim*

42 U.S.C. § 7407(a) ................................................................................................ 2

42 U.S.C. § 7604.................................................................................................... *passim*

42 U.S.C. § 7604(a) ............................................................................................ 1, 10

**Regulations**

11 Pt. 2 Ch. 2 Miss. Code R. 2.13(D) ................................................................ 13

11 Pt. 2 Ch. 2 Miss. Code R. 2.13(D)(3) ............................................................... 5

11 Pt. 2 Ch. 2 Miss. Code R. 6.7(A)(15) ............................................................... 5

40 C.F.R. § 51.50 ................................................................................................ 14

40 C.F.R. § 52.01 ................................................................................................ 14

40 C.F.R. § 52.21 ................................................................................................ 13

40 C.F.R. § 52.21(b)(18)...................................................................................... 14

**Other Authorities**

*Behalf*, BLACK'S LAW DICTIONARY (4th ed. 1968)................................................... 10

*In re MZX Tech LLC*, Miss. Comm'n Env't Quality, Order No. 7739-26 (Sept. 11, 2026),
https://perma.cc/2U72-FZ3L ................................................................................... 6

Wright, Miller & Cooper, *16 Federal Practice & Procedure* § 3930 (3d ed. Apr. 2026 update). 9,
15

## INTRODUCTION

As initial motions practice has made clear, this case presents several unsettled threshold legal questions of immense legal and practical importance on which the entire case may ultimately turn. They include whether Plaintiffs have a cause of action to proceed with this citizen enforcement suit, and whether the permit claims at the heart of Plaintiffs' case rest on a misreading of Mississippi law. Those questions have enormous practical significance, given the consequences of granting Plaintiffs their requested relief: massive business and operational harms to a company that made the largest private investment in Mississippi's history in reasonable reliance on guidance from State regulators; severe harms to frontier superintelligence ("SI") models being developed by Defendant X.AI Corporation ("xAI") and other companies such as Google and Anthropic; and grave U.S. national security risks, given the military's reliance on xAI's "Grok" SI tool. Not only are the stakes here extraordinarily high, but the questions presented are ones which reasonable jurists could debate. All that underscores why this Court's Order denying Defendants' motion to dismiss (Doc. 139) is a textbook candidate for immediate appeal, presenting at three independent issues worthy of certification under 28 U.S.C. § 1292(b).

**Statutory standing**. Plaintiffs, two voluntary associations, brought this case "to protect the interests of [their] members," notwithstanding that the Clean Air Act's citizen-suit provision authorizes a person to sue only "on his own behalf." 42 U.S.C. § 7604(a); *see* Doc. 139 at 7-8. Whether Plaintiffs have statutory standing is a pure and controlling question of law that dictates whether any of their claims can proceed. The Order recognizes that no court in this Circuit "ha[s] addressed" this statutory question. *See id*. The Court noted that the Supreme Court has described the statutory standing question in a similar context as "arguable." *Id.* at 9 (citing *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 104 n.6 (1998)). And the Court identified the analytical overlap—and seeming doctrinal tension—between analysis of statutory standing under the Clean

Air Act (where a plaintiff must sue "on his own behalf"), Article III associational standing (where Plaintiffs here chose to sue on behalf of their members), and class-action law. *See id.* at 10-11 & n.7. In Defendants' respectful view, the Court's reasoning shows that substantial grounds exist for disagreement on this question of first impression. Early and conclusive resolution of that issue on appeal would unquestionably advance the ultimate termination of the litigation. If the Fifth Circuit were to agree with Defendants, Plaintiffs' suit (at least as currently framed) must be dismissed, and the litigation would end. But even if the Fifth Circuit were to side with Plaintiffs on this point, that would resolve a critical threshold issue that would otherwise loom over all subsequent proceedings, with the specter of wasting the enormous expenditures of time and resources that will otherwise be involved in litigating the case to final judgment.

**Mississippi's "mobile source" exemption**. The Court next addressed whether the portable gas-fired turbines at Defendants' Stanton Road site are exempt from stationary-source permitting requirements as "mobile sources" under Mississippi's State Implementation Plan ("SIP"). *See* Doc. 139 at 12-13.[1] That question is strictly one of regulatory interpretation and, if Mississippi and Defendants' reading is correct, would be dispositive as to two of Plaintiffs' three claims. Interpreting what all agree is an undefined term in Mississippi's regulatory scheme, the Court rejected the considered view of the Mississippi Department of Environmental Quality about the meaning of "mobile source." The Court instead incorporated federal regulations into Mississippi's SIP via a series of textual cross-references. *See id.* at 14-15, 17-20. Whatever one's view of that interpretive question, substantial grounds for difference of opinion exist when a

[1] As the Court has recognized, States have "the primary responsibility" to ensure compliance with federal National Ambient Air Quality Standards ("NAAQS"). 42 U.S.C. § 7407(a). States generally exercise this responsibility through promulgation of SIPs, which are subject to EPA approval before taking effect. *See Sierra Club v. La. Dep't of Env't Quality*, 100 F.4th 555, 564-65 (5th Cir. 2024). Once approved, SIPs "have the force and effect of federal law." *Id.* at 564.

federal court rejects the formal position of state regulators charged by federal law with primary responsibility for adopting and administering a Clean Air Act implementation plan. If the Fifth Circuit were to sustain Mississippi's reading of the regulation, that holding would materially advance the litigation by eliminating the need for discovery, motions practice, and trial on two of Plaintiffs' three claims.[2]

**Constitutionality of Clean Air Act citizen suits**. Finally, the Court addressed whether the Clean Air Act's citizen-suit provision, 42 U.S.C. § 7604, "violates Article II of the Constitution and the private nondelegation doctrine." *See* Doc. 139 at 22. The argument presents a pure question of constitutional law, requiring no factual development, that would be controlling as to Plaintiffs' entire suit—if Defendants are right, Plaintiffs have no cause of action. Furthermore, the Court's Order acknowledges, at least implicitly, the daylight between older cases that have upheld the constitutionality of environmental citizen-suit provisions, *see id.* at 28 n.19 (noting distinction between public and private nondelegation theories), and recent separation-of-powers jurisprudence from the Supreme Court and Fifth Circuit regarding Article II and the private nondelegation doctrine, *see id.* at 24-27; *see also, e.g.*, *Trump v. Slaughter*, 609 U.S. 422, 455-56 (2026) (describing civil suits on behalf of the United States as "quintessentially executive"); *Trump v. United States*, 603 U.S. 593, 607, 620 (2024) (scope of Executive power over enforcement of federal law); *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 178 F.4th 224, 241 (5th Cir. 2026) (private nondelegation of civil enforcement authority). Put simply, the existing body of precedent on the constitutional question, some of which is decades old, does not and could not

[2] In attempting to show a likelihood of success on the merits, Plaintiffs' pending motion for a preliminary injunction relies exclusively on the two counts of the Complaint that must be dismissed if, as Mississippi and Defendants have argued, the portable turbines at issue are exempt "mobile sources." *See* Doc. 52 at 13-17.

grapple with these recent and significant doctrinal changes. And Justice Kennedy has specifically observed that citizen enforcement suits raise "[d]ifficult and fundamental questions" under "Article II of the Constitution." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 197 (2000) (Kennedy, J., concurring). Definitively resolving the constitutional question would again materially advance termination of this litigation: A ruling from the Fifth Circuit in Defendants' favor would end this case, while a ruling in Plaintiffs' favor would resolve a critical threshold issue that would otherwise loom over all further proceedings.

* * *

Immediate appeal is warranted to allow the Fifth Circuit to resolve these important threshold questions. However the Fifth Circuit decides those issues, all parties and the Court would benefit from prompt and definitive answers, given the extraordinary legal significance of those questions and the immense practical stakes of this case. And, if the Court grants certification, it should, consistent with usual practice, stay further proceedings pending the Fifth Circuit's resolution of these matters.

## BACKGROUND

### A. Factual background

xAI, a leading frontier SI developer, developed and runs the large-language model known as Grok. Doc. 55 at 2. Grok provides data analysis and reasoning capabilities to users globally to advance human comprehension and capabilities. *Id.* at 2-3; *see* xAI, *Grok: AI that is Useful for Everyone*, https://x.ai/grok (last visited Nov. 2, 2026).

Defendants have developed advanced computing facilities in the greater Memphis, Tennessee, area to meet customer and consumer demand, including for Grok's services. Doc. 55 at 3. Additionally, Defendant MZX Tech LLC ("MZX") acquired an existing industrial property in Southaven, Mississippi (the "Stanton Road site") that was previously the site of a gas

combustion turbine plant, to build a new power plant that will provide power to those advanced computing facilities. *Id*. MZX applied to the Mississippi Department of Environmental Quality ("MDEQ") for a permit for the future Stanton Road power plant. In March 2026, MDEQ issued a final Prevention of Significant Deterioration ("PSD") permit to begin construction on the proposed power plant. *Id.* at 3-4; *see generally* Doc. 51-27 (final PSD permit). Construction commenced in May 2026, Doc. 55 at 6, and the first permanent turbines recently came online.

In the interim, Defendants have relied on temporary, portable gas-fired combustion turbines to power their computing facilities. *Id.* at 4-5, 6. Before deploying any of those temporary turbines, Defendants consulted with MDEQ regarding the turbines' regulatory status under Mississippi's SIP. The state agency, in turn, evaluated Defendants' proposed plans and the turbines' technical specifications. *Id.* at 4-5. On July 29, 2025, MDEQ issued a formal regulatory determination that the portable turbines constitute "mobile sources" exempt from stationary-source preconstruction permitting under Mississippi's SIP. *Id.* at 5; *see generally* Doc. 1-2 (MDEQ formal regulatory determination letter); 11 Pt. 2 Ch. 2 Miss. Code R. 2.13(D)(3) (mobile-source exclusion from preconstruction and operating permitting requirement); *id.* R. 6.7(A)(15) (mobile-source exclusion for PSD operating permit requirement).

In reliance on MDEQ's formal regulatory determination, Defendants deployed temporary, portable turbines at the Stanton Road site. Doc. 55 at 5. Defendants have maintained an ongoing dialogue with MDEQ regarding the turbines' deployment. *Id*. Recently, xAI, MZX, and MDEQ entered into a formal, enforceable administrative order setting a mandatory retirement schedule for each of the temporary turbines. And as mentioned, the facility is already transitioning to permanent, fully permitted power sources. As part of that process, nearly a dozen of the portable turbines at issue have already been shut down and removed from the site, and every other

remaining portable turbine has a definite shutdown date. *See* Doc. 127 at 6 & n.3 (citing Amendment to Agreed Order, *In re MZX Tech LLC*, Miss. Comm'n Env't Quality, Order No. 7739-26 (Sept. 11, 2026), https://perma.cc/2U72-FZ3L).

**B. Procedural background**

On April 14, 2026, Plaintiffs filed this "citizen enforcement" action, pursuant to Clean Air Act § 304. *See* 42 U.S.C. § 7604. Plaintiffs allege that Defendants installed and operated the temporary, portable turbines without first obtaining a preconstruction permit, Doc. 1 ¶¶ 224-27 (Claim 1), or a PSD permit, *id.* ¶¶ 238-44 (Claim 2), under Mississippi's SIP. Plaintiffs also allege that Defendants installed and operated the portable turbines without first obtaining a "major source" permit, pursuant to the National Emission Standards for Hazardous Air Pollutants ("NESHAP") program. *See id.* ¶¶ 251-53 (Claim 3).

Defendants moved to dismiss all claims, based on Plaintiffs' lack of statutory standing under the Clean Air Act and the unconstitutionality of citizen suits. Defendants also moved to dismiss Claims 1 and 2, arguing that Plaintiffs failed to state viable claims for relief because, as MDEQ had determined, the portable turbines are exempt from preconstruction permitting requirements as "mobile sources" under Mississippi's SIP. *See generally* Docs. 54, 55.

On October 30, 2026, the Court denied Defendants' motion to dismiss. Doc. 139 at 28. As to statutory standing, the Court acknowledged the absence of case law from this Circuit addressing "whether an association suing to protect the interests of its members has statutory standing in light of the 'on his own behalf' language in [42 U.S.C.] § 7604(a)." *Id.* at 7-8. The Court concluded, however, that Plaintiffs can be understood as pursuing this case "for their own benefit and interest" for purposes of statutory standing, even if Plaintiffs' theory of Article III standing rests on pursuing claims on behalf of their members. *Id.* at 7-12. As to the "mobile source" exception, the Court reasoned that although Mississippi's SIP does not define "mobile source," the "best reading" of

that regulatory framework "is that it incorporates the federal PSD regulations along with the definitions of the terms used in those regulations, including 'mobile source.'" *Id.* at 14-15. The Court acknowledged that its interpretation runs contrary to the considered position of the State of Mississippi, *id.* at 17-20. *See also id.* at 20-22 (rejecting Defendants' related fair-notice arguments based on reliance on MDEQ's determination letter). Finally, the Court concluded that Clean Air Act citizen suits are not "an impermissible exercise of executive power." *See id.* at 22-28.

## ARGUMENT

### I. Legal standard

A court may certify an order for immediate appeal where (1) it "involves a controlling question of law," (2) there is "substantial ground for difference of opinion" about that question, and (3) immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007). Certification is appropriate where it will avoid the "waste of precious judicial time while the case grinds through to a final judgment as the sole medium through which to test the correctness of some isolated identifiable point … of law … , upon which in a realistic way the whole case or defense will turn." *Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 703 (5th Cir. 1961); *see also Goree v. City of Verona*, No. 1:17-cv-00093-SA-DAS, 2020 WL 6051258, at *1 (N.D. Miss. Oct. 13, 2020) (avoidance of "protracted and expensive litigation" (citation omitted)).

"A controlling question of law must be one of law—not fact—and its resolution must materially affect the outcome of litigation in the district court." *Silverthorne Seismic, LLC v. Sterling Seismic Servs., Ltd.*, 125 F.4th 593, 598 (5th Cir. 2025) (citation omitted). "Controlling questions thus 'include…whether a claim exists as a matter of law, whether a defense that will defeat the claim is available, and questions of subject-matter jurisdiction, proper venue, personal

jurisdiction, and standing to maintain the action.'" *Id.* at 598-99. The issue need not be dispositive to be a "controlling question." *Hadjipateras*, 290 F.2d at 702 n.10.

A "substantial ground for difference of opinion" exists where the order presents a "question about which reasonable jurists can debate." *United States v. Dawn Props., Inc*., No. 1:14CV224-LG-JCG, 2015 WL 13466028, at *2 (S.D. Miss. Nov. 18, 2015) (quoting *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 399 (5th Cir. 2010)). Courts have found the standard met in at least two recurring circumstances: The first is when "novel and difficult questions of first impression are presented." *Melton Props*., *LLC v. Ill. Cent. R.R. Co.*, No. 4:18-cv-00079, 2020 WL 7335018, at *8 (N.D. Miss. Dec. 14, 2020) (Brown, J.) (quoting *Couch v. Telescope Inc*., 611 F.3d 629, 633 (9th Cir. 2010)); *see also Travelers Prop. Cas. Co. of Am. v. Federated Rural Elec. Ins. Exch.*, No. 3:08-cv-00083-DPJ-JCS, 2009 WL 2900027, at *8 (S.D. Miss. Sept. 3, 2009) ("Substantial ground for disagreement exists as most of the questions are issues of first impression under Mississippi law."); *LaFarge v. Kyker*, No. 1:08-cv-00185-SA-JAD, 2009 WL 4110887, at *2 (N.D. Miss. Nov. 23, 2009) (same). The second is when "[n]either the Fifth Circuit nor a Mississippi court has determined, in a binding, published opinion," the question the order decides. *Liberty Mut. Fire Ins. Co. v. Fowlkes Plumbing, LLC*, No. 1:17-cv-0010-GHD-DAS, 2018 WL 2107725, at *3 (N.D. Miss. May 7, 2018); *Cazorla v. Koch Foods of Miss., LLC*, No. 3:10-cv-00135-DPJ-FKB, 2015 WL 3970606, at *3 (S.D. Miss. June 30, 2015). In either circumstance, certification may be proper "even if the court is confident in its decision." *Greinstein v. Granite Servs. Int'l, Inc.*, No. 2:18-CV-208-Z-BR, 2023 WL 5167606, at *3 (N.D. Tex. June 28, 2023) (internal quotation marks and citation omitted).

Finally, immediate appeal "may materially advance the ultimate termination of the litigation" if it "would (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify

the trial, or (3) eliminate issues to make discovery easier and less costly." *Liberty Mut.*, 2018 WL 2107725, at *3 (quoting *Coates v. Brazoria Cnty., Tex.*, 919 F. Supp. 2d 863, 867 (S.D. Tex. 2013)). Immediate appeal need not "certainly advance the termination of the litigation"; rather, § 1292(b) "only requires such appeal *may* advance the ultimate termination of the litigation if permitted." *La. State Conf. of NAACP v. Louisiana*, 495 F. Supp. 3d 400, 413 (M.D. La. 2020) (emphasis in original).

The first and third criteria ("controlling question" and "materially advance") are "closely tied" and often considered together. *See* Wright, Miller & Cooper, *16 Federal Practice & Procedure* § 3930 (3d ed. Apr. 2026 update) ("Wright & Miller"); *Adams v. Walker*, No. 2:20-cv-02794, 2022 WL 457821, at *3 (E.D. La. Feb. 15, 2022) (observing same); *Cazorla*, 2015 WL 3970606, at *3 (same). Defendants thus address these criteria together in this motion.

Here, certification is appropriate because each of the § 1292(b) criteria is met: there exist substantial grounds for a difference of opinion regarding three unsettled yet controlling questions of law, resolution of any of which would either dispose of this case entirely or significantly narrow the issues going forward. And definitively resolving the questions at the core of this case via immediate appeal is especially prudent given the unprecedented nature of this suit and its extraordinary real-world importance to (among other things) Mississippi's economy and the United States' national security.

## II. The question of Plaintiffs' statutory standing under the Clean Air Act supports certifying the Order for immediate appeal.

### A. Reasonable jurists could disagree about whether an association suing on behalf of its members can be deemed to bring suit "on [its] own behalf" under the Clean Air Act.

Whether an association that asserts Article III standing by suing to vindicate its members' injuries can be deemed to sue "on [its] own behalf" for purposes of the Clean Air Act is a question

of first impression. Defendants have advanced a straightforward argument based on the ordinary meaning of the statutory phrase "on his own behalf": Plaintiffs, who pleaded no Article III injury to their organizations *qua* organizations, and who instead allege injuries solely to their non-party members, have not brought this suit "on [their] own behalf." *See* 42 U.S.C. § 7604(a); Doc. 55 at 7-9 (citing, e.g., *Behalf*, BLACK'S LAW DICTIONARY (4th ed. 1968)). The Fifth Circuit has used the phrase the same way, distinguishing an association's standing to sue "on its own behalf" from its standing "as a[] representational association" to "bring a suit on behalf of its members." *Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 360, 362 (5th Cir. 1996).

In reaching a different conclusion, the Court considered Plaintiffs' advocacy missions, Doc. 139 at 10, Clean Air Act § 304(a)'s legislative history, *id.* at 10-11, and district court decisions construing similar statutes, *id.* at 9, 11. All that led this Court to conclude that Plaintiff organizations are "simultaneously" suing to "benefit their members" while also "acting for their own benefit and interest." *Id.* at 10. In Defendants' respectful view, reasonable jurists could reach a different conclusion on this issue, given the seeming disconnect between how Plaintiffs chose to frame their Article III standing (suing on behalf of members) and their theory of statutory standing (organizations suing "on [their] own behalf"). The potential for disagreement only grows given that the Fifth Circuit has never weighed in on this textual question, and that the Supreme Court described as open and "arguable" whether a similar provision permits an organizational plaintiff "to vindicate only its own interests as an organization, and not the interests of its individual members." *See Steel Co.*, 523 U.S. at 104 n.6. The Fifth Circuit has accepted § 1292(b) appeals in comparable circumstances. *See Fisher v. Halliburton*, 667 F.3d 602, 613-14 (5th Cir. 2012) (permitting appeal on statutory question of first impression where all relevant case law came from other jurisdictions interpreting parallel statutes); *see also Silverthorne*, 125 F.4th at 602

(Higginson, J., dissenting) (describing question "certified for our review by a veteran district judge who felt compelled to adhere to case law that is out of step with more recent statutory text"). Certification is equally appropriate here.

**B. The statutory-standing question is a controlling issue of law, the resolution of which would terminate the litigation.**

The statutory-standing question is also a pure question of law. Statutory standing asks "whether or not a particular cause of action authorizes an injured plaintiff to sue," *Blanchard 1986, Ltd. v. Park Plantation, LLC*, 553 F.3d 405, 409 (5th Cir. 2008), and is resolved by applying the "traditional tools of statutory interpretation," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014). The Court resolved the question in just that way, through statutory interpretation and without relying on any disputed fact. Doc. 139 at 7-12. Its ruling thus presents precisely the kind of "threshold legal question" the Fifth Circuit should resolve under § 1292(b). *CFPB v. All Am. Check Cashing, Inc.*, 33 F.4th 218, 243 (5th Cir. 2022) (en banc) (per curiam) (Oldham, J., concurring in the judgment); *Malbrough v. Crown Equip. Corp.*, 392 F.3d 135, 136 (5th Cir. 2004); *see also La. Patients Comp. Fund Oversight Bd. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 585, 588 (5th Cir. 2005) (reviewing under § 1292(b) whether a statute provides a cause of action); *Castellanos-Contreras*, 622 F.3d at 398-99 (a "threshold question" of whether a category of expenses is reimbursable under a statute "is a legal question that can properly be the subject of interlocutory review").

The question is also controlling. In determining whether an issue is controlling, a court may consider "its potential to have some impact on the course of litigation," and whether it has "precedential impact for a large number of cases." *Liberty Mut.*, 2018 WL 2107725, at *2 (quoting *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006)). Each claim in Plaintiffs' Complaint rests on the Clean Air Act's citizen-suit provision, *see* Doc. 1 ¶¶ 224-27, 238-44, 251-

53, so a ruling that Clean Air Act § 304(a) does not authorize Plaintiffs to sue solely in a representational capacity would dispose of the entire action, *see Goree*, 2020 WL 6051258, at *1 (question is controlling where, if it was resolved in movants' favor, "this litigation would be terminated"); *La. State Conf.*, 495 F. Supp. 3d at 413 ("If reversal of an order terminates the action, it is clearly a controlling question of law."). In short, reversal by the Fifth Circuit on this question would require dismissal of the entire action. *See La. State Conf.*, 495 F. Supp. 3d at 416. Conversely, if the Fifth Circuit were to affirm the Court's ruling on this issue, having a prompt and definitive answer would avoid this key threshold question looming over the significant expenditure of party and judicial resources that will be involved with litigating this case to final judgment. Either way, certification is warranted. *See Ferring B.V. v. Allergan, Inc.*, 343 F. Supp. 3d 284, 291 (S.D.N.Y. 2018) (concluding that certification of standing question "could result in prompt termination of the action" and explaining that continuing a matter where justiciability "is in doubt … counsels strongly in favor of immediate appeal").

## III. The "mobile source" question supports certifying the Order for immediate appeal.

### A. Reasonable jurists could disagree on the mobile-source question.

Whether Mississippi's SIP incorporates the federal definition of "mobile source" is a question of first impression under state law. As the Court recognized, "'mobile source' is not defined anywhere in Mississippi's SIP," Doc. 139 at 14, and neither the parties nor the Court identified any controlling authority from the Mississippi Supreme Court, the Fifth Circuit, or any other court. The Fifth Circuit has accepted certified appeals to resolve similarly unsettled questions of state law. *See Adkinson v. Int'l Harvester Co.*, 975 F.2d 208, 211 (5th Cir. 1992) (accepting certified appeal where district court recognized the movant "had raised an issue of first impression under Mississippi law"); *Rebozo v. Wash. Post Co.*, 515 F.2d 1208, 1209 n.1, 1210 n.3 (5th Cir. 1975) (accepting § 1292(b) appeal requiring interpretation of state statutory provisions that "ha[d]

never been construed by state courts"); *see also Liberty Mut.*, 2018 WL 2107725, at *3; *LaFarge*, 2009 WL 4110887, at *2.

Certification is likewise appropriate here. To begin, whatever one's view of the merits of the underlying interpretative questions, it is undisputed that this Court rejected the position of MDEQ, the state agency responsible for administering the SIP. Before any portable turbine was deployed to the Stanton Road site, Defendants consulted with MDEQ, which formally determined that the turbines at issue "are exempt from permitting requirements pursuant to 11 Mississippi Administrative Code Part 2, Chapter 2, Rule 2.13.D." Doc. 139 at 4 (quoting Doc. 1-2). Although the Court acknowledged that "[t]here is no indication that MDEQ changed its position," and that a reversal by MDEQ "would create a [constitutional] fair notice issue," *id.* at 22 n.18, the Court nonetheless concluded that the State's interpretation "is not consistent with Mississippi's SIP." *Id.* at 20. Reasonable grounds for difference of opinion necessarily exist where, as here, a federal court has rejected the reading of state law adopted by the state agency with authority to adopt, interpret, and administer the rules at issue. The question also has immense practical significance beyond this case. As the State of Mississippi has explained, overruling the State's interpretation of its own SIP creates profound uncertainty about whether regulated parties can rely on MDEQ's guidance going forward, with unavoidable chilling effects on economic activity and investment in the State. *See* Doc. 81 at 12-13.

Looking to the details of the Court's reasoning confirms that the question admits more than one plausible answer. All agree that Mississippi's SIP does not explicitly define the term "mobile source." The Court agreed with Plaintiffs that a definition could be found via a series of "cross-references": from the provision in question (Rule 2.13) to the Chapter 5 definitions incorporated by Rule 2.1; to Rule 5.2's incorporation of the federal PSD regulations at 40 C.F.R. § 52.21; to the

use of "mobile source" in § 52.21(b)(18)'s definition of "secondary emissions"; to § 52.01's instruction that undefined Part 52 terms take their meaning from Part 51; and finally to 40 C.F.R. § 51.50—a definition located in a different subpart governing emissions reporting. Doc. 139 at 14-16.

Defendants, by contrast, offered an approach that instead relied on the ordinary, plain-English meaning of the words "mobile source." Doc. 55 at 10-11. In response to Plaintiffs' theory of incorporating a federal definition by reference, Defendants cited authority holding that a specific reference to one aspect of a provision does not automatically import all of its definitions, *see* Doc. 100 at 6 (discussing *Doe v. X Corp.*, 821 F. Supp. 3d 632, 638-39 (N.D. Tex. 2026), and *United States v. Minor*, 121 F.4th 1085, 1090 (5th Cir. 2024)). The Court ultimately distinguished those authorities, Doc. 139 at 15, but whether the SIP provision should be interpreted by its ordinary meaning or a series of cross-references that no agency or court has previously adopted is, indisputably, an issue on which reasonable jurists can disagree.

**B. The mobile-source question is controlling for two of Plaintiffs' three claims, and its resolution would significantly narrow the scope of this case.**

The mobile-source question is also a controlling question of law. It turns entirely on regulatory text and structure, not disputed facts, *see* Doc. 139 at 14-17, and is the kind of interpretive question that courts have treated as a pure question of law, *see Gonzalez v. CoreCivic, Inc.*, 986 F.3d 536, 538 (5th Cir. 2021) (certifying whether a statute "applies" to a category of activity); *Hood v. JPMorgan Chase & Co.*, No. 3:12-cv-565-WHB-LRA, 2013 WL 12092108, at *2 (S.D. Miss. Sept. 12, 2013) (question that "relates to the manner in which a federal regulation is to be interpreted … constitutes a controlling question of law"). And although a controlling question "need not … terminate an action," *Silverthorne*, 125 F.4th at 599 (internal quotation marks and citation omitted), it is controlling if its resolution on appeal "determines the future

course of the litigation," *La. State Conf.*, 495 F. Supp. 3d at 413 (internal quotation marks and citation omitted), or will "have a substantial impact on th[e] litigation," *Liberty Mut.*, 2018 WL 2107725, at *2; *see also Hadjipateras*, 290 F.2d at 702 n.10. The mobile-source question easily meets that standard because Claim 1 (preconstruction permitting) and Claim 2 (PSD permitting) both must be dismissed if the turbines in question are exempt "mobile sources." *See* Doc. 1 ¶¶ 227, 244. Reversal would extinguish those claims, leaving only Claim 3 and significantly narrowing the issues subject to discovery, summary-judgment motions practice, and trial. *See Adams*, 2022 WL 457821, at *3 (concluding that appeal on "legal sufficiency of Plaintiffs' allegations" "would simplify the issues before the Court"); *accord In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017) (concluding that if the panel "were to find the complaint fails to state a[] … claim … litigation would end").

Notably, Plaintiffs' pending motion for preliminary injunction attempts to show a likelihood of success by relying exclusively on Claims 1 and 2. *See* Doc. 52 at 13-17. Immediate appeal of the mobile-source question controlling of those Claims therefore may moot the need for the parties to litigate, and the Court to decide, that motion. It would also prevent Defendants and other interested parties from incurring significant harms if a preliminary injunction were granted and then later vacated following reversal by the Fifth Circuit on these threshold issues. *See* Doc. 127 ¶ 6 (Defendants describing irreparable harm from preliminary injunction); Doc. 94 at 29-32 (same); Doc. 125 at 8-10 (United States describing national-security and national-interest harms); Doc. 81 at 11-13 (State of Mississippi describing economic and state-sovereignty harms); *see also* Wright & Miller § 3930 ("The advantages of immediate appeal increase with the probabilities of prompt reversal, the length of the district court proceedings saved by reversal … and the substantiality of the burdens imposed on the parties by a wrong ruling.").

## IV. The question whether the Clean Air Act's citizen-suit provision is constitutional supports certification of the Order for immediate appeal.

### A. Reasonable jurists could disagree on the constitutionality of the Clean Air Act's citizen-suit provision, given recent separation-of-powers precedents from the Supreme Court and Fifth Circuit.

Whether the Clean Air Act's citizen-suit provision, 42 U.S.C. § 7604, is consistent with Article II and the private nondelegation doctrine is an unsettled constitutional question. Neither the Supreme Court nor the Fifth Circuit has decided it, individual Justices of the Supreme Court have identified the issue as difficult, and the precedents on which the Court relied are out-of-circuit district court opinions, mostly decades old. *See* Doc. 139 at 27-28 & n.19.

Those decisions predate recent doctrinal developments that have reshaped the legal landscape on separation-of-powers questions. The Fifth Circuit has held that "a private entity may wield government power only if it functions subordinately to an agency with authority and surveillance over it," *Nat'l Horsemen's*, 178 F.4th at 233 (internal quotation marks omitted), and that the powers "to sanction and sue are quintessentially executive functions," *see* Doc. 139 at 25 (quoting Doc. 55 at 15 (quoting *Nat'l Horsemen's*, 178 F.4th at 241)). The Supreme Court, in turn, has held that the power to seek penalties in "civil suits on behalf of the United States" is "quintessentially executive," *Slaughter*, 609 U.S. at 455, and that a law "violates the private nondelegation doctrine when it allows non-governmental entities to govern," *FCC v. Consumers' Rsch.*, 606 U.S. 656, 697 (2025). *See also Seila Law LLC v. CFPB*, 591 U.S. 197, 213, 219 (2020). The Court distinguished these decisions on the ground that citizen-suit plaintiffs "sue on their own behalf, in their own name, and seek penalties that redress harm to themselves." Doc. 139 at 27. But that distinction rests on premises neither the Supreme Court nor the Fifth Circuit has resolved in the citizen-suit context—including whether "the same enforcement authority" can be

"quintessentially executive when the FTC seeks it and quintessentially private when an association does." *Id.* at 26 (quoting Doc. 100 at 13).

To the extent any question remains about whether reasonable jurists could disagree on these issues, the existence of numerous separate writings by Justices of the Supreme Court shows that the answer is yes. *See Laidlaw*, 528 U.S. at 197 (Kennedy, J., concurring) (observing that "exactions of public fines by private litigants, and the delegation of Executive power which might be inferable from the authorization," raise "[d]ifficult and fundamental questions" under Article II); *id.* at 209 (Scalia, J., dissenting); *see also United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 442 (2023) (Kavanaugh, J., concurring); *id.* at 449 (Thomas, J., dissenting). And lower courts have recognized that a comparable, unresolved separation-of-powers challenge presented substantial grounds for difference of opinion sufficient to justify certification under § 1292(b). In *All American Check Cashing*, the district court certified whether the CFPB's single-director structure violated Article II, finding substantial ground for difference of opinion "as exhibited by the differences of opinion amongst the jurists" who had considered the issue. *CFPB v. All Am. Check Cashing, Inc.*, No. 3:16-cv-356-WHB-JCG, ECF No. 240 (S.D. Miss. Mar. 27, 2018). After the Fifth Circuit accepted the appeal, it described the issue as "both fundamental and contestable" and one that Fifth Circuit precedent had not "clearly answered." *CFPB v. All Am. Check Cashing, Inc.*, 952 F.3d 591, 593 (5th Cir. 2020), *vacated and remanded en banc*, 33 F.4th at 219-20 (applying the Supreme Court's decision in *Seila Law*). The question here—whether private parties may prosecute Clean Air Act enforcement actions at all—is similar in all material respects, and no less fundamental.

### B. The constitutional question is controlling, and its resolution would materially advance the termination of the litigation.

Defendants' constitutional challenge likewise presents a pure question of law: whether the Clean Air Act's citizen-suit provision is consistent with the Constitution. The challenge does not depend on any facts particular to this case, and the Fifth Circuit has accepted pure constitutional questions under § 1292(b). *See All Am. Check Cashing*, 33 F.4th at 220 (calling a certified Article II question a "pure question of law"); *Overdam v. Tex. A&M Univ.*, 43 F.4th 522, 525-26 (5th Cir. 2022) (per curiam) (reviewing on immediate appeal the "controlling question[] of law" of what "constitutional due process" requires). The question is also controlling because each of Plaintiffs' three claims arises from the citizen-suit provision, so a ruling that the provision is unconstitutional would dispose of Plaintiffs' entire suit. *See* 42 U.S.C. § 7604; *Silverthorne*, 125 F.4th at 598-99 ("whether a claim exists as a matter of law" is a controlling question); *All Am. Check Cashing*, 33 F.4th at 245 (Oldham, J., concurring in the judgment) (district court identified the structural challenge "as a dispositive, uncertain issue warranting immediate appeal"). And, as with the other two issues described above, prompt and definitive appellate resolution of this issue—even in Plaintiffs' favor—would remove a critical threshold issue that would otherwise loom over, and risk rendering unnecessary, the enormous expenditure of party and judicial resources that will inevitably be involved in litigating this case to final judgment.

In sum, each of the three questions identified above—statutory standing, the "mobile source" exemption under Mississippi's SIP, and whether the Clean Air Act's citizen-suit provision is constitutional—is a controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal of each may materially advance the ultimate termination of this litigation. The Court should certify its October 30 Order under § 1292(b).

## V. A stay pending resolution of any interlocutory appeal is appropriate.

This Court has the power to, and should, stay further proceedings during the pendency of an interlocutory appeal. *See Cazorla*, 2015 WL 3970606, at *4 (granting stay pending interlocutory appeal); *see also, e.g.*, *Morales v. OK Trans, Inc.*, No. 2:19-cv-00094, 2024 WL 3223676, at *3 (S.D. Tex. June 18, 2024) ("inherent power" to stay proceedings pending interlocutory appeal); *Watson v. Yolo Cnty. Flood Control & Water Conservation Dist.*, No. 2:06-cv-01549-FCD-DAD, 2007 WL 4107539, at *2 (E.D. Cal. Nov. 16, 2007) (power to stay proceedings pending interlocutory appeal "inherent" and provided "by statute [i.e., 28 U.S.C. § 1292(b)]").

Here, a stay is warranted because resolution of the threshold statutory-standing and constitutionality questions "may dispose of the entire suit." *O'Brien v. Avco Corp.*, 309 F. Supp. 703, 705 (S.D.N.Y. 1969) (staying discovery pending interlocutory appeal on jurisdictional question); *accord, e.g.*, *Wellons, Inc. v. Sia Energoremonts Riga, Ltd.*, No. 3:13-CV-05654, 2013 WL 5913266, at *2 (W.D. Wash. Nov. 4, 2013) (same for personal-jurisdiction question); *Asis Internet Servs. v. Active Response Grp.*, No. 07-cv-6211-TEH, 2008 WL 4279695, at *4 (N.D. Cal. Sept. 16, 2008) (same for standing question). Furthermore, Plaintiffs' pending preliminary-injunction motion cannot prevail if Defendants are correct on any of these three questions. *See* Doc. 52 at 13-17 (preliminary motion relies only on Claims 1 and 2 to show a likelihood of success on the merits). Accordingly, absent immediate appeal, there exists a significant risk that if the Court proceeds to hold a hearing on, and adjudicate, Plaintiffs' preliminary-injunction motion, and otherwise advances the case, "the district court and the parties will have unnecessarily wasted significant time and resources" if the Fifth Circuit reaches a contrary conclusion. *See Hawaii ex rel. Louie v. JP Morgan Chase & Co.*, 921 F. Supp. 2d 1059, 1063, 1068 (D. Haw. 2013) (staying summary judgment proceedings pending interlocutory review of order denying remand to state court).

A stay pending appeal would be appropriate either pursuant to this Court's inherent, discretionary authority to control its docket, *see Landis v. N. Am. Co.*, 299 U.S. 248, 254-55, 258 (1936) (considering "hardship or inequity" for the moving party of being required to proceed with the action, prejudice to the non-moving party if a stay is granted, and interests of judicial economy), or the four traditional stay factors, *see Cazorla*, 2015 WL 3970606, at *4 (applying factors from *Nken v. Holder*, 556 U.S. 418, 426 (2009)).[3] The substantial grounds for disagreement on the questions supporting certification also show a "substantial case on the merits" in Defendants' favor. *See Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. Unit A 1981). Defendants, moreover, would suffer prejudice from having to expend the time and money to defend against claims that may face fatal threshold obstacles, and would risk catastrophic business and operational harms if the Court issued a preliminary injunction that took effect before later reversal by the Fifth Circuit, while Plaintiffs, for their part, would need to post a multi-billion dollar injunction bond that could later be forfeited. And pressing forward with Plaintiffs' preliminary-injunction motion and other case developments, before the Fifth Circuit has the opportunity to rule upon key threshold issues, would negate the entire purpose of the § 1292(b) mechanism—to allow appellate resolution of discrete legal issues when doing so would facilitate the ultimate termination of litigation. *See Total Ben. Servs., Inc. v. Grp. Ins. Admin., Inc.*, No. 92-2386, 1993 WL 98675, at *3 (E.D. La. Mar. 25, 1993). Such an outcome would also adversely and significantly impact Defendants' business operations, jeopardize national security, and ill-serve the broader public

[3] Because Defendants seek a stay of further judicial developments, rather than a stay of enforcement of a judgment, this Court should apply the *Landis* framework, 299 U.S. at 254-55, rather than the *Nken* factors. *See, e.g.*, *Sparks v. Tex. Dep't of Transp.*, 144 F. Supp. 3d 902, 905 (S.D. Tex. 2015); *Huddleston v. FBI*, No. 4:20-cv-447, 2021 WL 1837548, at *1 (E.D. Tex. May 7, 2021); *Fox Corp. v. Arroyo Rodriguez*, No. 4:25-cv-4650, 2026 WL 1734870, at *2 (S.D. Tex. June 16, 2026). Regardless, a stay is warranted under either framework.

interest. *See* Doc. 127 ¶ 6; Doc. 94 at 29-32; *see also* Doc. 125 at 8-10 (United States describing national-security and national-interest harms from preliminary injunction); Doc. 81 at 11-13 (State of Mississippi describing economic harms from preliminary injunction).

## CONCLUSION

The Court should certify its October 30 Order for immediate appeal pursuant to 28 U.S.C. § 1292(b) and stay all further proceedings in this Court pending the Fifth Circuit's resolution of the case.

Dated: November 6, 2026

Respectfully submitted,

*/s/ Daniel W. Van Horn*_____

Daniel W. Van Horn (MS Bar No. 102105)
BUTLER SNOW LLP
6075 Poplar Ave., Suite 500
Memphis, TN 38187
(901) 680-7331
danny.vanhorn@butlersnow.com

P. Ryan Beckett (MS Bar No. 99524)
Keri E. Herrington (MS Bar No. 106815)
BUTLER SNOW LLP
1020 Highland Colony Pkwy.
Suite 1400
Ridgeland, MS 39157
(601) 948-5711
(601) 948-5177
ryan.beckett@butlersnow.com
keri.herrington@butlersnow.com

Michael B. Buschbacher*
James R. Conde*
BOYDEN GRAY PLLC
800 Connecticut Ave. NW,
Suite 900
Washington, D.C. 20006
(202) 955-0620 (MB)
(646) 266-4011 (JC)
mbuschbacher@boydengray.com
jconde@boydengray.com

Patrick D. Traylor* (D.C. Bar No. 449350)
Jeremy C. Marwell* (D.C. Bar No.1000299)
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, D.C. 20037
(202) 639-6500
ptraylor@velaw.com
jmarwell@velaw.com

Christopher V. Popov* (TX Bar No. 24032960)
VINSON & ELKINS LLP
845 Texas Avenue
Suite 4700
Houston, TX 77002
(713) 758-2636
cpopov@velaw.com

* *pro hac vice*

*Counsel for X.AI Corp. and MZX Tech LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2026, I filed the foregoing document with the Clerk of the U.S. District Court for the Northern District of Mississippi through the Court's CM/ECF system, which shall send notification of such filing to all parties of record in this case.

*/s/ Daniel W. Van Horn*
Daniel W. Van Horn